Exhibit #1

U.S
Right of Way Authority
Land and Title Registry
Reading Company
Head Office: 40 Massachusetts Ave Washington D.C
Mailing address aka 425 1/2 north Broad Street Philadelphia, Pennsylvania 19123


A registered agent who is filling the legal form as required by states law to establish a business on behalf of the owner either individual "sole proprietorship" , "Partnership" if their is more than one person and or entity a "corporation" to whatever type of formation the clienttell had request for example a choice of : LLP, LLC , Corporation C. for profit or for non profit,.... that agent is authorized to act for or in place of another to register their business " there is no law statue ever pass by U.S Congress national or international granted the the permission of ownership to the registered person or and registered company, the ownership of the registered name is granted only for the owner who request the service of the registered agent " person and or company" and pay for that registered service and fee.        for example : legalZoom .com is a Registered Agent can registered your business for $99 plus the state filing fee. "Leagle Zoom.com is a regestered agent but not owner to the business they filled with any states "
 in Delaware Division of Corporation Require that a Legal entity incorporated, formed or registered in the State of Delaware must be represented by a Registered agent. Refer to as " listed agent" and require certain qualification and standards to be an agent
"Agent for services of process is a person or entity that is Authorized to Act for or in place of another to receive payment on behalf of a company"
Quit-claim deed is Void, not binding on or enforceable at law in equity against any the owner toward purchaser, mortgagee or holder of any interest in real property and unenforced against the Grantor especially from a Fraudulent transfer record as entered into false claim in connection with real property deed located in the State of Pennsylvania or the title to real property in any other states of the Union A private transfer fee obligation that is recorded or entered into in connection with real property is void and unenforceable before the effective date of Reading Company Recognition on 1987 is presumed invalid and unenforceable.
 Liability for violation. : "A person who records, or enters into, an agreement for imposing false and fraud private transfer fee obligation is liable for all damages resulting from the transfer of an interest in the real property, land and or equity in the real property, all attorney's fees, expenses and costs incurred to the transfer of deed, title or mortgagee of the real property in order to recover any fraud of private transfer to quiet title. When an agent acts on behalf of a principal to record or secure a private transfer fee obligation, liability must be assessed to the principal, real property and to the agent.


Those corporation
Penn Central Properties, Inc
Penn Central Corporation
American Premier Underwriters,Inc
plus any other related fraud corporation established by the Lindner is under Railroad police investigation.


all three Corporation started at Office location 245 Park Avenue, New York, New York 10167
 moved to Office location at 1700 Market Street, Philadelphia Pennsylvania 19103

all three corporation move together to one final location Office at One East Street, Cincinnati, Ohio 45202
the Authorized Official forge  the signature on the deed by acting in one time  as vice president of penn central properties,inc and in the same date in the same deed by the same notary public sign as vice president of penn central corporation too in the date of the deed to 1989 in which no corporation by the name penn central corporation ever registered in pennsylvania in that date is fraud and false claim crime .

Agent Name: CT Corporation system is assisting to establish shell company's and aid to commit fraud to bankruptcy Registry of corporation in which the Corporation Registry is protected by County, States, and Federal Law against any fraud and false claims.

In the matter of Penn Central Properties, Inc
a Pennsylvania Corporation dated file 2-27-1982 as filed in Pennsylvania Department of State Corporation Bureau file by c\o CT Corporation system the Same Corporation file agent of fraud There is no file by the name of Penn Central Properties,inc  ever reported to gov, SEC Edgar filing for Penn Central Properties Inc or report by the same Corporation for Federal income Tax filing , thereafter  Penn Central Properties,Inc is a shell Company Created to defraud Pennsylvania Railroad Properties under register name Reading Company the owner of Pennsylvania Railroad and other related Properties.
in the statement represented to recording office of deed in Dauphin County, PA where Penn Central Properties, Inc  claims the property owner and American Premier Underwriters,Inc is the holder of record title in order to secure the payment of the purchase price in the sale of property to the owner Penn Center Properties,Inc and  APU,Inc is Registered Agent does not have any right to sale or transfer properties which does not own as a registered sales agent.
Penn Central Properties,  registered Corporation  No713834 in the Department of  Pennsylvania State Corporation Bureau file dated to  is under the custody and ownership of Reading Company police force for criminal investigation for Fraud, and false claim as explain in details:
I- Penn Central Properties, Inc never granted the right to sale properties  where  Readin Company is the registered owner as the government file's  in Pennsylvania indicated in County of Philadelphia  and in Dauphin County proved that Pennsylvania Railroad Company is under Reading Company registry name as owner- Grantor,  Where the criminal fraud and false claim had taken Place as the investigation proceeding continue to prove  the criminal intend of all the shale company violation.
II-  Penn Central Properties, Inc claims the ownership to Pennsylvania Railroad Properties while the other two shell Company a- American Premier Underwriters,Inc and b-Penn Central Corporation in which both corporation a & b claim to be the record holder and Penn Central Properties, Inc is the Properties ownership as the file on record stated.
III-  no Pennsylvania corporation by the name  Penn Central Properties, Inc ever granted the right to own and or sale Properties from any Court order, or by any government approval from any States and or Federal Government without the permission of the owner  of deed of record in the County stated that the owner is Reading Company address in record of deed in County of Philadelphia office indicated.

In the matter of Penn Central Corporation:
Penn Central Corporation is the holder of record title thereto in order to secure the payment of the purchase prices in a sales of  said premises and other property in Pennsylvania by Penn Central Corporation to  Penn Central Properties, Inc

that is a clear indication by Penn Central Corporation as a registered agent only without any right to ownership to properties in which the properties are owned by another entity  Penn Center Properties,Inc claim the owner of the said premises is false, fraud and in violation to Readin Company private  property right

 In matter of American Premier Underwriters.Inc a Pennsylvania Corporation
the name of the company above is a shell Company created to commit fraud because it claim the ownership of Penn Central Corporation while  it is a registered agent of Corporation never granted the ownership in which the official record instated that Penn Central Properties, Inc is the owner to the Properties but not American Premier Underwriters.Inc is only regester agent and another violation in which stated that American Premier Underwriters,Inc is created from the non -rail assets of Penn Central and that American Premier Underwriters,Inc owned  shares  up to % 55 of Amtrak Common shares at the time it transferred passenger rail assets to Amtrak it is false because it is only shall company act as a registered agent no right grant to owned and had been created to deferred Reading Company the owner to Penn Central Company and Pennsylvania Company.

In matter of :  American Premier Underwriters.Inc registered in West Virginia 1922
West Virginia Business and Licensing
 1- Filing date was 9-5-1922 as Insurance Company does not match the Filling State  of" Pennsylvania as dated to 1998
2- the Registered Agent who Process the  Corporation file is CT Corporation System the Same registered Agent who help to Fraud and False Claim to  American Premier Underwriters,Inc and other Shell Company in Charleston, West Virginia , Philadelphia Pennsylvania and the Same Agent For America Financial Corporation in Connecticut.
3- the Type of Business of Insurance not match the type of business in Pennsylvania
4- Form S-8  on April 25, IRS  No. 23-6000765 American Premier Underwriters,Inc does not incorporat by the law of Pennsylvania in 1846 nor incorporated under the Law of West Virginia in 1922 it fraud and false claim for the shall Corp.
5-  American Premier Underwriters,Inc Corporation in Record dated to 1922 in West Virginia  not match American Premier Underwriters,Inc Corporation in Pennsylvania in 1995  as to the registered company on record which claim the ownership of Penn central corp. it is another false shall company created to defraud Reading Company assets under the right of way Authority open investigation and " all the transaction had been adverse against "1922 American Premier Underwriters.Inc" for all deed and title of Reading Company the owner of penn Central Transportation Company " Penn Central Company" and " Penn Central Holding Company file no 269313 dated to 4-1-1969  the owner is Reading Company
6-  there is no company in Pennsylvania State Corporation bureau file for a Company by the name American Premier Underwriters.Inc incorporated and registered in date of 1922 in violation to State's registration law and criminal intent  to defraud Reading Company the properties owner as the record submitted by  American Premier Underwriters.Inc to Chicago state department of record about the false identity of west virginia state registered on year of 1922  there is no Record at Pennsylvania Department of State Registered by the Name:  American Premier Underwriters.Inc
furthermore the 1922 west virginia company is an insurance company not an investment company, plus never granted the right to own a railroad unless there is government permission where 1922  American Premier Underwriters.Inc  never granted to own a railroad or to hold a railroad in which Reading Company own the Railroad in accordance to Government Registry deed on file in the Recorded deed offices in Counties and Statewide,  including and not limited to 2/20/1980 Merger Pennsylvania,

Baltimore, and Washington " WASHINGTON" Railroad Company, a Delaware Corp. not Equal in WV, with and into the penn Central Company the Survivor. Is a properties of Reading Company. the fraud is void and had Been adverse against any title, deed of record, assign and or agreement Between those party  As stated above,  In this cases, the third parties issuing the transaction appear to be working in conjunction with the scam artists. All these false assertions have been used  the record holder for defraud the registry of bankruptcy company and Corporation from old record deed and or land title  and  from County registry offices across the Union of the United States of America and its Federal Capital of the ten square miles Washington dc since 1791

In the Matter of Penn Central Corporation:
another Shell Company Created by  Carl H. Lindner for the false and fraud claim by Penn Central Corporation, a corporation duly organized and existing under the law of the Commonwealth of Pennsylvania ( hereinafter called the Company) party of the first part and the other party called the trustee ( Girard Mortgage, Marine Mortgage, Philadelphia Mortgage, United Mortgage and Boston Mortgage) for the required information concerning Mortgage to which the described property is subject and to which this release of Line Applies to above Mortgage and bank Meant to defraud the owner Pennsylvania Railroad under the Registered owner of deed Reading Company
on  the date of  10/24/1978 the change of name : name changed from Penn Central Transportation Company to Penn Central Corporation as filed is false and fraud because there is no Company Registered in Pennsylvania State's Corporation Bureau by that name of Penn Central Corporation in Pennsylvania as dated above its fraud and crime for all deed are Reversed to original owner Reading Company must be reversed.

In the Matter of American Financial Corporation
another Corporation Created to defraud the Railroad by false claims and fraud by the owner Mr. Carl H. Lindner the founder on July 4, 1988 was 31 Million in Red according to Barron's, American Financial Corp. took a loss of $162 million, writing off the entire value of its stock Interest and Mission Loans.
on January, 1991 the Penn Central Corporation completed the purchase of the American Financial Corporation's a non-standard auto insurance group for about $ 335 million , 1994 American Premier Underwriters,Inc acquire American Financial Corporation only but not American Finance Corporation and Penn Central Company the issue is America Premier Underwriter,Inc never granted the right to acquire both Company and take Penn Central Company for free and changed its name to Penn Central Corporation in 1994-1995 . when APU, Inc is a Registered agent as the record from Penn Central Properties indicated, where Penn Central and Pennsylvania Railroad under the registered owner of reading Company in Dauphin County, Pennsylvania registry deed of record .

the Matter of American Financial Enterprises, Inc Created by the fraud agent c\o CT Corporation System on date of August 28, 1980 in which ads stated that American Financial Enterprises Inc acquired the assets of the new york, new haven and Hartford Railroad Company.
On June 21, 1970 , Penn Central filed for Chapter 77 bankruptcy, On June 29, the Supreme Court determined that the total consideration to be paid by Penn Central for the assets received from the New Haven was equal to 174,635,899 and have been adjusted on 1971 to be 132,698,058 owned by Penn Central Company in which American Financial Corporation owned % 60 of the Pay out in will pay it in cash in exchange of the new corporation Stock,
Judge --- order the creation of a Corporation by the name of New Haven Corporation for the Purpose of mange the estate of new york, new haven, and hartford Railroad by issue established a Connecticut

Corporation as required to issue a 20.000.000 million shares the issue only happen for the time of one years only for 5000 shares in violation to judge order and the corporation dissolved in Sep 20, 1983. AFC & AFE,Inc never burch any Railroad property it only allowed to Keep the Shares of New haven in which no one ever get any payment in 1994 for the issue of new Haven Corporation shares because the company dissolved on Sep 20, 1983.

in the matter of BPI
43,000 acre in which American Premier UnderWriters,Inc sign a lease Agreement with BPI at Vancouver, BC, Feb 05, 2002 is Property of Reading Company.

the Quit-claim deed between the Borough of ELIZABETHVILLE and Penn Central Properties,Inc\ American Premier Underwriters.Inc  date to Feb 21 ,1995 is False because the Grantor is Reading Company not other Two Shell Company as the Record indication to the Dauphin County Registry. "notice that all the properties which have been change name from Grantor\ Grantee title and by deed transfer by Quitclaim deed or by any other form of transfer from the registry of the Patent Grantor of Reading Company had Been adverse in County deed of record throughout the United States" upon the Right of Way Authority Police investigation and prosecution  of violation as shall be instituted  appropriate proceeding to enforce the Land and title Registry Law as enacted to by the United States President in accordance to the nature of the crime and Court Jurisdiction

all the Sale of Pipeline by the shell company is void and adverse to the owner Reading Company as the Sunoco Pipeline registered under Reading Company in States of Pennsylvania, Delaware County

In the Matter of :  Re: Merger of New york and Harlem Railroad Company into American Premier Underwriters,Inc
Historical bonds are worthless as securities. None of the historical United States railroad bonds are payable by today's successor railroads,  Instead, historical bonds only have value as collector's items. A 1995 publication, Stocks and Bonds of North American Railroads: Collector's Guide with Values (one of many available publications) assessed the collector's value of the historical railroad bonds listed at between $25 and $700 each. Moreover, there are many sites on the Internet that you can visit to evaluate the collector's value of any particular historical bond.
Although all sorts of historical bonds are collected and traded, historical railroad bonds comprise most of the bonds used to perpetrate fraud. Historical railroad bonds commonly used by scam artists to falsify and defraud as in the Matter Re: Merger of New york and Harlem Railroad Company into American Premier Underwriters,Inc, American Stock Transfer & Trust Company singen by James C. Kennedy vice President, American Premier Underwriters,Inc
by submitting false historical bonds worth of $19.99 to defraud penn central Transportation assets, American Stock Transfer & Trust Company is a shell Company use to defraud Penn Central Company The Harlem Division can trace its roots all the way back to the original New York & Harlem Railroad. The line was chartered by the state legislature in 1831, to build a street railway on New York's Manhattan island from 14th Street to the village of Harlem at 129th Street, seven miles to the north. Construction began in 1832, with the blasting of a rock ridge at Murray Hill. By 1832, the NY&H ran from Astor House to 14th Street. By 1837, rails reached the village of Harlem.  In 1854, Cornelius Tors Vanderbilt took control of the NY&H through a stock purchase. He then purchased stock control of the Hudson River Railroad in 1863, and merged the two together to make the New York Central & Hudson River Railroad in 1869 (shortened to New York Central in 1914). Of note, the H&H company not

exists , and  reading company remains the owner of Penn Central Company and the considerable
Manhattan real estate properties.
The Harlem lease provided that the Central was to fulfill all the obligations of the Harlem regarding the
erection of the Grand Central Depot at Forty-Second Street.20 The New Haven's rights under the 1872
agreement, providing that its easement to use the tracks and terminal for the life of its charter that was
perpetual, were unaffected.21 After the Harlem Lease was signed and the Grand Central Depot
completed, there were three parties with interests in the land, station and tracks running into Manhattan
from the north: the New Haven with a perpetual easement, the Harlem with the fee interest in some of
the land, and the Central with a fee interest in a portion and a leasehold in the remainder.21a

In the Matter of  NY City  Air Right Properties  of Penn Central
Midtown  TDR Ventures LLC.- Acquisition Exemption Docket Number : FD- 34953-0 American
Premier Underwriters.Inc thereafter the Sale is Fraud and False Claim by American Premier
Underwriters.Inc Furthermore  the  sale's Contract  are void and reverse to the owner Reading
Company to the Railroad Properties are Sized. and the MTA lease granted by Reading Company
the Decision by the Surface Transportation Board to accept the sale and transfer violated the owner
Reading Company in accordance to official record of deed, thereafter all the Board Decision Related to
Railroad transfer and or sale will be audit.

In Matter of Consolidated Rail Corporation
the transfer of properties in the deed in 1978- 1979 between Penn Central Corporation and
Consolidated Rail Corporation is fraud and false claim as to the transfer of other Property based on the
property be cover by Mortgage in which Penn Central Corporation commit fraud in both county
Philadelphia and Dolphin County had been Reverse to the owner Reading Company, U.S Right of Way
Authority S.4017 since 1996 and in relation to the surface transportation board decision Docket No.
FD- 33388- 0 the decision is only for the Right to use the Railroad track and the owner Reading
Company reserve the Right of owner of the bed track line on the land, above the land, beside the land,
under the land, and across the land.     there is no corporation by the name Penn Central Corporation in
Pennsylvania Department of State Corporation bureau register in 1978. the fraud name from the record
wa start on 1994 when Penn Central Company changed its name to Penn Central Corporation.

 In Matter of : the Mortgage - "Manor Real estate Company "
on December 15, 1979 Penn Central Corporation a Corporation Organized under the law of the
Commonwealth of Pennsylvania which sign  the deed with Manor Real estate Company is fraud and
false claim of Reading Company private properties right because there is no company by the name
penn Center Corporation exist on file at Pennsylvania department of State on the date of December 15,
1979
the deed is adverse  to Reading Company the owner of Penn Central Company, the owner of  Manor
Real estate Company.

 In matter of : Annuity Investors Life Insurance Company:
I- American Financial Enterprises, Inc claim of the date of incorporated is 1980 in accordance to
Connecticut State Department. It is false and fraud to related the time of incorporated to the 1871
II- Annuity Investors Life Insurance Company as filed with the securities and exchange Commission
on May 3, 2005 for false claim and fraud action to  Pennsylvania – Reading Seashore Lines which is
own by Reading company the owner of RR Reading Company Railroad, pennsylvania Railroad and
Penn Central Company Since 1968- 1987 .

III- violation, fraud and false claim of Terminal Reality penn co. district of Columbia 09/23/1968 because Reading company is the owner of Pennsylvania Railroad, Penn Central Company, Philadelphia, Baltimore, and Washington Railroad Company as all branch of Government file's Federal, States, and County indicated . Terminal Reality is sized- under Right of Way Authority investigation and Custody since 2014.

IV- Penn Central UK Limited   United Kingdom " insurance Holding" 1992 Under Investigation " the investment by British men and institutions of the Kingdom in the Railroad of the United States as the analysis of British capital in the Railroad dated to 1914 and the liquidation of British investments during the First World War, in the nineteenth century no other single sector of the economy of the world attracted foreign capital as did the Railroad of the United States in 1910 half of the United Kingdom portfolio investment abroad was in country outside of the British Empire . of this portion more than % 42 of the investment was in the United States and of this portfolio % 85 was in Railroad London Firms committed themselves to sell part of the issue securities abroad to European buyers as to Dutch and German through a New York Banker.

.V- all Reading Company Properties from Annuity Investors Life Insurance Company under investigation : like Penn Central Company, Railroad line, Real estate holding and other related assets are sized to the owner Readin company including Brother Rail yard Corporation Texas 1993 and other Brother related entity as Brother Port Richey in Philadelphia..

In the matter: of Reading Entertainment own by los Angeles Lawyer James Cotter is under the Right of Way Authority police investigation for fraud and false claim of Reading Company the owner to RR Reading Railroad Company in which James Cotter has created a new Company by the name of the Reading Company in State of Delaware to defraud the RR reading Company if James Cotter was the owner of Reading Company then he should owned Pennsylvania Railroad also but he only claim the ownership of RR Reading Company while the other Partner the Lendner defraud Pennsylvania Railroad.

In the Matter of AMTRAK'S Common Shares case # 11-4054 which American Premier Underwriters,Inc claim the ownership of the Common Shares of Amtrak is void and Size to the owner Reading Company and there is continued investigation into the false Claim of ownership by Burlington north- Santa fe Corp up to % 35 of Amtrak's Common shares violation .there is no agreements ever signed in 1978 between American Premier Underwriters.Inc and Amtrak but the agreements was signed between Amtrak and Penn Central Company and there is no Acquisition ever happen in 1970 for Penn Central Corp Because that name Exist only on file in 1998, it's a crime for false claim and fraud % 100 Common Shares of Amtrak under the U.S Right of Way Authority, Reading Company the Owner Since 1985-1987 Recognition . and also as to the case No. 11-4045 decided March 5, 2013 in which American Premier Underwriters,Inc and American financial Corporation claim to ownership of the Amtrak Common shares.

All Great American Stations in which Amtrak Advertising web page looking for investing help are under the U.S Right of Way Authority custody American Premier Underwriters.Inc Claim to be the Owner of Pennsylvania Railroad , Penn Central Company and or other related Railroad Line is fraud, and false claims against the registered owner Reading Company in accordance to the Dauphin County register deed the owner of Pennsylvania Railroad and Penn central Company is under the Registry Grantor name of Reading Company in Matter of Waldorf Astoria sales to China's Anbang Group insurance Company by Hilton Worldwide "under Investigation" for the 1.95 Billion Sales to the Property in which Reading Company is the

Owner to Penn Central Company the Money is Size from Hilton Worldwide  Bank and the Company Under Investigation for false Claim because the Hotel is build by Penn Central and  leased by Hilton, never granted the right to sale because it is properties of  Penn Central Company notwithstanding that Hiltonwide and prevised related Corporation granted only management

Realty Hotels,Inc is Penn Central subsidiary Company under investigation.
Eastern Real Estate Company granted the management to Reading Company Properties.
as to all other related Real estate Company owned by Reading Company and Under its Registry name

In Matter of Pan Am  Building at 200 Park Ave build on date of 1958-1963
the building is build by the Railroad Company on the date above and leased by Pam Am but on 1981
Metlife Insurance bought the Pan Am Company not Pan Am Comay and the Building
Pan Am Company only Leased the Building from the Railroad thereafter Metlife is under Investigation
and 1.72 Billion Size from Metlife to the owner Reading Company

In Mater to Reading Company Properties at Philadelphia, Pennsylvania as Charter in 1833 knowing as philadelphia Right of Way in deed # 39590785 for Properties Fraud reported to the city of philadelphia Government Department deed of Records and Contested in Pennsylvania Common Pleas Court Case # MC-51-CR-0022954- 2012. Area Known as the Chinese Wall for all Penn Central Properties No. one to No. ten and related other Rights-of-way as Recognition by the recorded deed in above deed record number, and in recorded deed of record office's  in other County and in other States Under the Name Reading Company, Pennsylvania railroad, and Penn Central company and Related other Name Under and Related to RailRoad for the North Eastern Railroad since 1968-1970

Reserving unto Grantor permanent and perpetual easements in gross, freely alienable and assignable by the occupation whether or not covered by license or agreement between grantor and other parties , of record of not of record, that in any way encumber or affect all area premises  to the owner Reading Company for and all rentals, fees and consideration resulting from such occupations, agreements, and licenses from the assignment or conveyance or such easements for Reading Company the right to adverse to all Quitclaimed in which conveyance had granted by false and fraud claims.

Buckeye Pipe line company
Magnolia Pipe Line Company and Facilities
Mobil Pipe Line Company
Socony-Vacuum Oil Company
Marchnet oil company
Sonoco Pipe Line Company
Arco Pipe Line Company
Laurel Pipe Line Company
and other related Railroad Pipeline Company in other recorded deed in other County in other States of the Union

York Haven Power Company
Pennsylvania Power Company
Potomac Power Company
Atlantic City Power Company

and other related Railroad Power Company in other recorded deed in other County in other States of the Union

BELL TELEPHONE COMPANY OF PENNSYLVANIA
former Cheesy pick and Potomac Phone Company
and other related Railroad Telephone Company in other recorded deed in other County in other States of the Union

 A quitclaim deed is Void and unenforceable. for A  Fraud transfer recorded or entered into in connection with real property located in this State of Pennsylvania does  the title to real property and is not binding on or enforceable at law or in equity against any subsequent owner, purchaser, mortgagee or holder of any interest in real property as an equitable servitude or otherwise. A private transfer fee obligation that is recorded or entered into in connection with real property is void and unenforceable. This subsection may not be construed to mean that a private transfer fee obligation recorded or entered into in connection with real property located in this State before the effective date of this section is presumed valid and enforceable. [ 2011, c. 200, §1 (NEW) .]
 Liability for violation. A person who records, or enters into, an agreement imposing a private transfer fee obligation in that person's favor after the effective date of this section is liable for all damages resulting from the imposition of the private transfer fee obligation on the transfer of an interest in the real estate
No person shall knowingly make any false entry of a material fact in any book, report or statement of any register with intent to deceive any record of deed by lawfully appointed to examine into its correction or into any public official to whom such register is required by law to field , or to whom has authority by law to examine, intent, knowingly omit to make a true entry of any material fact pertaining to the business of such registration in any book, report or statement of such registry.
45 U.S.C. Section 1303 instated that not taking in account Patents, Trademark, Trade name, Copyright, License, Goodwill, Treasury stock, and any write up in the book value of any assets which own by Reading Company since its bankruptcy in 1968-1970.

u.s  s. 4017

Right of Way Authority INS. No. 23263304

Reading Company

land & Title Registry

Head office: 40 Massachusetts Ave, Washington D.C

Milling Address: aka 4251/2 North Broad Street Philadelphia, Pennsylvania 19123

Date:   August 14, 2015

To:     The Secretary

        Federal Railroad Administration

in God we Trust for Love and Peace,  no one above the law as order by " the United States of America Constitution and the Bill of Rights and as order by Supreme law clause for creation of Washington D.C  Federal Capital land by name,size, location and jurisdiction  Federal Capital Flag only flag Authorized by Supreme and Federal law , and for protection of the united States of America Union land, the United States of America Union Flag and Federal Seal.

in accordance to Correction to Action Plan of the office of the Inspector General Audit Report No. FI- 2014- 033 Dated Issued April 1, 2014

Reading Company has Recognized the Correction and the Washington Union Station Owner is Reading Company for the Railroad the Land, the Building, the Track and Right of Way as granted by Law and as Recognized by Congress Act for Railroad, Federal and States Law and in accordance to the State's Registry of record of deed of Pennsylvania and Delaware.

the Lease which sign from the Department of Interior to Department of transportation is Void and Union Station is under Reading Company owner and all Contract will be managed in Accordance to the Basic Agreement which sign with Amtrak by Penn Central Trustee since 1970-1973 as grantee to all Public transportation too, furthermore all other party will be notify to new Contract from Reading Company Law Department.

very truthly

Right of Way Authority

Reading Company owner

IBRAHIM ALY

U.S
RIGHT OF WAY AUTHORITY
Reading Company Chief of Police
aka 4251/2 North Broad Street philadelphia, Pennsylvania 19123.

The United States of America, Supreme Court decision ILLINOIS Central Railroad V. State of
Illinois  146 U.S.  387 ( 1892 ) Reaffirmed that each State in its Sovereign capacity holds
permanent Title to all Submerged Lands within its Borders and Holds these Land in public Trust
. This is a foundational case and for the public Trust doctrine to protect the owner of the land,
U.S Right of Way and its Title Authority to enforce the Mandated Federal Law on RailRoad as
granted by Act of United States of America Congress Act S.4017
in accordance to federal mandated Statue, State applicable law, County Management
Regulation , Municipality Code, Variances and Zoning  and all subdivision of the county does
not posses any statutory law to grant any Change Railroad land Title.
The United States of America Landmark Legislation of  Pacific railway  act (1862), this Act
padded on July 1,1862, provided subsidies in Land and Loans for the construction of a
transcontinental Railroad and Telegraph Line across the Union of the United States of America
is under Right of Way Authority land & Title
READING Company AKyA 4251/2 north Broad Street Philadelphia, PA 19123
the Common Pleas Court order for the recognition of READING COMPANY ENGIN 1186
RIGHT OF WAY as mandated by United States of America Congress act S. 4017
Reading Company registry. and shall taking into accounts Patents, tradeMark, trade Name
,Copyrights, Licenses, and Goodwill  in Accordance with Generally Accepted Accounting
principle after making appropriate dedication  for the purposes of any Minority interest in the
association Corporation and other Private Company owned and Under RailRoad associated
Registry.
the Supreme Court ( Trustee of Dartmouth College v. Woodward, 4 Wheaton 518 )
Chief Justice Marshall, for the court, held that a charter to a private corporation constituted a
contract and was therefore protected under the contract clause of the Constitution against
impairment by state legislatures .
Ex Post Facto Laws; Impairment of Contracts Section 17. Pennsylvania Constitution
No ex post facto law, nor any law impairing the obligation of contracts, or making irrevocable
any grant of special privileges or immunities, shall be passed.
Courts to Be Open; Suits Against the Commonwealth Section 11.
All courts shall be open; and every man for an injury done him in his lands, goods, person or
reputation shall have remedy by due course of law, and eight and justice administered without
sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such
courts and in such cases as the Legislature may by law direct.

IN GOD WE TRUST "

covenants in accordance to the United States of America Constitution the supreme law of the land, and its Union Flag in the state of Pennsylvania,County of Dauphin , Recorder of Deeds Where's Reading Company address since its Bankruptcy 1968-1972 known as AKA 4251/2 north broad street Philadelphia , Pennsylvania 19123 U.S.A.     in Regsation For Government registered record throughout its Service to the ownership of Land, Right of Way Branch and Tract land based on county ,States and Federal Government record for Recognition that Reading Company owned Pennsylvania Transportation Company since 1874 is the sole owner of the Rail Station ,Railroad Right of Way,and related facilities commonly known as the " Harrisburg Transportation Center " located at railroad milepost 104.6 in Harrisburg , Dauphin County, Pennsylvania, Referred to herein as the " Station " with a U.S. Mailing address known as 415 Market Street Harrisburg, Pa 17101.     the U.S Right of Way Authority Recognition that Reading Company the owner Amended the lease Agreement with the Amtrak after the term of which expires on July 14, 2013 furthermore the Amtrak agrees to assume responsibility for the cost of maintenance and preservation obligations for the remainder of the fifteen year period as set forth in this Section 2. Maintenance and Preservation Requirement :

(a) the Station and the train sheds are listed in the National Register of Historic Places under the provision of the National Historic Preservation Act of 1966 ( 80 Stat,915) ( the " Act " ) the Amtrak ,agrees to comply with the requirement of the Railroad Act with respect to the maintenance and preservation of the Architectural and historical characteristics of the improvements architectural and historical characteristics shall be defined as those significant physical features that qualified the property as eligible for the National Register of Historic Places throughout the 50 states of the American Union.

(b) the Improvement shall be maintained and preserved in accordance with the Secretary of the Interior's Standards for the Treatment of Historic Properties . No construction, alteration, rehabilitation, remodeling, or demolition of the Improvements shall be undertaken or permitted without the prior written permission and approval first from the owner Reading Company aka 4251/2 north broad street Philadelphia, Pennsylvania since 1969 furthermore law Regulation implay to other Related Railroad line from the national Passenger Corporation Knowing as Amtrak a private for profit corporation, authorized to operate by contract with the private Railroad for the operations of intercity passenger service The RPSA granted Amtrak the right (enforceable by the ICC) to use tracks, facilities, and services of freight railroads in providing passenger services and to compensate the freight railroads at the incremental cost level (plus incentive payments) for the use of their tracks, facilities, and services. RPSA, sec. 305 (as amended in 1973 and 1978); RPSA, sec. 402. Congress also provided that passenger trains operated by Amtrak must be accorded preference over freight trains operated by other railroads in the use of track. RPSA sec. 402 (as amended in 1973).

Sec. 24301. Status and applicable laws

where Amtrak ownerships,in which the Preferred Shares owned by United States Federal Government and the Public Shares owned by Reading Company.

(1) is a railroad carrier under Section 20102(2)[safety] and Chapters 261 [high-speed rail assistance] and 281[law enforcement] of Title 49;

(2) shall be operated and managed as a for-profit corporation; and

(3) is not a department,agency, or instrumentality of the United States Government.

(b) PRINCIPAL OFFICE AND PLACE OF BUSINESS—District of Columbia
thereafter Reading Company the owner of Washington D.C Union Station, the Owner of
Pennsylvania Transportation Railroad Property which was in their position are undergoing
contract granted by a lease, a covenants of Contacter law in which Reading Company the
owner of the  Railroad right of way Since 1972.

Amtrak then filed the present petition. Penn Central Trustees filed an answer, reiterating their
position from the basic agreement with Amtrak, and that compliance by the lease Agreement
with Amtrak to use railroad tracks, facilities and services "on such terms and conditions as the
parties may agree." See 45 U.S.C. § 562(a). Pursuant to this statutory authorization, Amtrak
entered into The National Railroad Passenger Corporation agreement of April 16, 1971 (the
"Basic Agreement"). The Basic Agreement's purpose was "to relieve the railroad of its entire
responsibility for the provision of intercity rail passenger service" under "such terms and
conditions as necessary to permit the Corporation (Amtrak) to undertake passenger service on
a timely basis." 45 U.S.C. § 562(a). Article 6 of the Basic Agreement incorporated by reference
the National Railroad Passenger Corporation Arbitration Agreement (the "Arbitration
Agreement"). Essentially, the Arbitration Agreement established a system of adjusting contract
disputes through resort to an arbitration panel, rather than through constant resort to the
Reorganization Court.10"Under the terms of the Basic Agreement, Amtrak undertook to assume
the intercity rail passenger responsibilities of the Trustees of Penn Central and all other
contracting railroads, and Penn Central undertook to render certain services to Amtrak and to
maintain its rail lines used by Amtrak at an agreed upon 'level of utility and for rehabilitation and
other improvements (including upgrading track and the signal system, ensuring safety at public
and private highway and pedestrian crossings by improving signals or eliminating such
crossings, and the improvement of operational portions of stations
related to intercity rail passenger service) Reading Company Granted the Right to purchase,
lease, or rehabilitation of rail lines which are to be used for future advanced common carrier
service including  the rail line of the Chicago, Rock Island and Pacific Railroad Company
between Fort Worth and Dallas, Texas under U.S Right of Way Authority for the exercised
reservation to the United States future rights-of-way required in all patents for land taken up,
entered, or located in North America including Alaska after the Declaration of Independence
from England July 4, 2015. in respect of merger, consolidation or sale of assets, the procedure
for effecting these being governed by legislative enactment of Railroad law only.

"rail properties" means assets or rights owned, leased, or otherwise controlled by the Reading
Corporation which are used or useful in rail transportation service;
The Harlem lease provided that the Central was to fulfill all the obligations of the Harlem
regarding the erection of the Grand Central Depot at Forty-Second Street.20 The New Haven's
rights under the 1872 agreement, providing that its easement to use the tracks and terminal for
the life of its charter that was perpetual, were unaffected.21 After the Harlem Lease was signed
and the Grand Central Depot completed, there were three parties with interests in the land,
station and tracks running into Manhattan from the north: the New Haven with a perpetual
easement, the Harlem with the fee interest in some of the land, and the Central with a fee

interest in a portion and a leasehold in the remainder.

The 3R Act of 1973 ,

The viability of railroad freight and passenger service in the New England region has long been a matter of great concern for the Commonwealth of Massachusetts. The bankruptcies of the region's two largest railroad companies, the Boston and Maine Corporation (B&M RR) and the Penn Central Transportation Company (Penn Central) in March and June 1970, respectively, intensified this concern. The current Federal and Massachusetts Rail Assistance programs have their origin in the Regional Rail Reorganization Act of 1973 (3R Act) , which was enacted by Congress in response to the bankruptcies of Penn Central, the B&M RR and several other major railroads in the Northeast which owned by Reading Company.

The 3R Act created the Consolidated Rail Corporation, Most of the railroads eligible to transfer their lines to Conrail did so but the Boston and Maine Cor-

poration Trustees chose to pursue reorganization under the traditional bankruptcy laws applicable to railroads.

The Staggers Rail Act of 1980 .

This federal law effected major policy changes in the economic regulation of the national railroad system as well as addressing specific problems faced by Conrail with particular reference to Conrail's network in Southern New England.

The Act gave railroads pricing and service adjustment flexibilities which had not been available to railroad management since the early years of the Interstate Commerce Act of 1887 .

Right of Way Authority acquired for Preservation to all abandoned railroad Line, and  rights of way which having strong potential for future transportation or other public use, where such preservation is consistent with the goals of the local communities contiguous to the lines . Public preservation of railroad rights of way in Massachu-setts pre-dates the Rail Service Assistance Program. Sec-tions of several former rail routes in the Commonwealth have been acquired by cities or towns for recreational uses such as hiking and bicycle paths. The Massachusetts Bay Transportation Authority (MBTA) now owns over 450 miles of railroad lines and abandoned rights of way in Massachusetts. Some of these lines are used for passenger and freight service, some for freight only, and some are not used currently but have been preserved for possible future use all under United States a Federal Registry System.

Reading Company owned the all seven lines were operated by Conrail on a full cost recovery basis under an agreement between EOTC and Conrail partially funded with federal grants. All of these lines are now leased to three short line railroad carriers. under Right of Way Authority Land & Title for Contract.

Conrail commenced operations pursuant to the Plan on April 1 , 1976. Conrail is organized as a "for-profit" corporation, not as a government, In Massachusetts, all lines taken over by Conrail were operated by the Penn Central Transportation Company prior to April 1, 1976. The Penn Central System in Massachusetts was in turn made up of former routes of the New York Central Railroad and the New York, New Haven and Hartford Railroad (New Haven) . The New York Central was merged with the Pennsylvania Railroad to become the Penn Central on February 1, 1968, and the New Haven was merged into the Penn Central on December 31, 1968. All New York Central lines in Massachu- setts were once part of the Boston and Albany Railroad which was leased to a predecessor of the New York Central in

1900. The New Haven System was formed through a series of mergers of numerous smaller companies, but most of its lines in Massachusetts were once part of either the Old Colony Rail-road, the Boston and Providence Railroad or the New England Railroad . Prior to its inclusion in Penn Central, the New Haven Railroad had been in bankruptcy since July 1961. Penn Central declared bankruptcy in June 1970 under Reading Company Registry in City of Philadelphia.

Chesapeake and Ohio Railway Company (C&O), , byname Chessie System,  Chesapeake and Ohio Railway Company [Credit: Thyl]?American railroad company established in 1868 with the consolidation of two smaller lines, the Virginia Central and the Covington and Ohio. It subsequently acquired a number of other lines, culminating in its merger with the Pere Marquette Railroad Company in 1947.

The C&O acquired the Baltimore and Ohio Railroad in 1963 but continued to operate it as a separate system. In 1973 the Chessie System, Inc., was established as a holding company with the C&O as a subsidiary. The railroad operates mainly in Virginia, West Virginia, Kentucky, Ohio, Indiana, and Michigan owned by Reading Company and its passenger services were taken over by the National Railroad Passenger Corporation (Amtrak) in 1972.

In 1980 the Chessie System merged with Seaboard Coast Line Industries, Inc., operator of track extending from Washington, D.C., to Miami, New Orleans, St. Louis, and Chicago, to form the CSX Corporation. The 17 railroad companies included in the new corporation are operated as separate entities, yet offer coordinated single-system transportation. Coal is the major cargo hauled. CSX also owns a large line of container ships and another of barge carriers. all under Right of Way Authority against Fraud and or False Claim in which Reading Company the owner of Northeastern Bankruptcies RailRoad owned by Reading Company and not limited to :

Baltimore and Ohio Railroad (B&O)
Central Pacific Railroad
Atchison, Topeka and Santa Fe Railway Company
New York Central Railroad Company
Pennsylvania Railroad Company
Northern Pacific Railway Company
Southern Pacific Railroad Company
Erie Railroad Company
Great Northern Railway Company
Illinois Central Railroad (IC)
Southern Railway Company
Atlantic Railroad
Reading Company
Northern Holding Securities
457 F.2d 683

In the Matter of the NEW YORK, NEW HAVEN AND HARTFORD
RAILROAD COMPANY, Debtor.
Nos. 372, 373, 374, Dockets 71-1903, 71-1929, 71-2024.
United States Court of Appeals,

Second Circuit.
Argued Jan. 3, 1972.
Decided March 17, 1972.
On June 21,1971 eight days before the Supreme Court's decision was announced, Penn Central filed a petition for reorganization in the Eastern District of Pennsylvania. The petition was approved the same day and the district court issued an order restraining and enjoining all persons "from interfering with, seizing, converting, appropriating, attaching, garnisheeing, levying upon, or enforcing liens upon, or in any manner whatsoever disturbing any portion of the assets . . . properties or premises belonging to, or in the possession of the Debtor [Penn Central] . . . and from commencing or continuing any proceeding against the Debtor" with certain exceptions not here relevant " The Plan must provide for transfer of designated railroad properties to the Consolidated Rail Corp. (Conrail), a private state-incorporated corporation, under the Tucker Act, which gives the Court of Claims jurisdiction to render judgment "upon any claim against the United States founded either upon the Constitution, or any Act of Congress . . . ," the District Court finding that the Rail Act precluded a Tucker Act remedy. The court therefore declared § 304(f) invalid as violating the Fifth Amendment under which Reading Company based its Claim
The Rail Act, coupled with the Tucker Act, is valid as a reorganization statute, and does not constitute an eminent domain statute by virtue of its provisions for federal representation on Conrail's board of directors (which does not constitute Conrail a federal instrumentality)For purposes of this section, railroad feeder line rehabilitation includes the acquisition, construction, reconstruction, or erection of any feeder line roadbed, track, trestle, depot, switching, and signaling equipment, or any other rail equipment (other than rolling stock).

The Rail Act does not contravene the uniformity requirement of the Bankruptcy Clause. Pp. 419 U. S. 156-161. in which Reading Company, the owner of Charters Railroad Land of North America, owned the Bed track and All its Right of Way are Under Land & Title a Federal Registry in accordance to United States Congress S. 4017, Reading Company the owner of Pennsylvania Railroad,the owner of Penn Central transportation Company and had to be asserted against other Railroad private company as a Tucker Act claim that the jurisdictional argument is not without Merit.
In accordance with the Rail Passenger Service Act of 1970, 45 U.S.C. § 501 et seq., Amtrak was authorized to contract with each railroad undergoing reorganization and operating passenger trains in a basic system, for use by Amtrak of railroad tracks, facilities and services "on such terms and conditions as the parties may agree." See 45 U.S.C. § 562(a). P "Under the terms of the Basic Agreement, Amtrak undertook to assume the intercity rail passenger responsibilities of the Trustees of Penn Central and all other contracting railroads.
Does an injunction issued by a § 77 reorganization court against 'any legal proceeding' by resolve disputes arising under a statutory contract law by an arbitration process specifically agreed to by all railroads contract.
'Nothing in this opinion shall prejudice or foreclose the rights of the parties to propose a new plan of reorganization to formulate, approve, and certify a new plan of reorganization in the light of any relevant facts presented. contemporaneous discussion in Congress. Changes in

economic conditions cannot affect the powers of the reorganization agencies even though such changes may require a reexamination into the present fairness of the former exercise of those powers.

While that position is certainly correct with respect to the rights and obligations arising by virtue of the conveyance under the RRRA and the contract between Amtrak and ConRail, it seems reasonably clear that the RRRA does not exonerate ConRail from liability which might arise in the future by reason of post-conveyance events, and that litigation seeking to impose such liability might be pursued in other courts that contract is for track service never meant to transferred a privet properties ownerships and properties right of Reading Company which under reorganization of to other private Corporation

the sale of ConRail Public Stock to a private party this action is a violation to 45 U.S.C § 1310 : U.S.Code Section 1301 of the U,S, Congress Act for the order that all the stock of Conrail be sold to the American Public through Public offer but not the sale to one particular party as in violation to congress act, throughout the Secretary of transportation has discharged the responsibility of the Department of Transportation under the North East Rail Service Act of 1981.

In the mid- 1980 , Congress rejected a takeover bid by Norfolk Southern Railroad and ordered Conrail to " go public" through a stock offering. In 1994 , Norfolk Southern again tried to negotiate with Conrail for a merger. Consequently , Conrail aligned itself with CSX Corporation and Norfolk Southern attempted a hostile takeover through stock acquisition. Conrail , Norfolk Southern. And CSX finally agreed to find a compromise , which they reached in 1997 . Norfolk Southern and CSX agreed to divide Conrail's main track age between them and to share all terminal duties and facilities ( Beck 2000) , Conrail continues using the former Reading RailRoad Chester Branch as to Philadelphia Branch as to all Reading Company RailRoad line Under Readin Company Owner Custody since 2008, Reading Company had Acquired by Purchases from the Federal Government,the Consolidated Rail Corporation(ConRail), series A preferred stock made by the Association,the Right Granted as part of the Amtrak Leased Agreement payment, Submitted and approved by Federal RailRoad Administration.

Reading Railroad , First reserved Owner Rights as Reserves into itself the Right to Operate its trains line and to construct , maintain , repair and renew as may be be required to all railroad Line, bed and to its railroad's facilities accordance to the Easement area to be including but not limited to overhead as air rights and underground as bedlinen land rights , Railroad tracks line above the land Rights including Railroad leases, deed and Mortgages Contract and to any other Railroad land and property deed of the Reading Company and to all RR Reading Railroad easement right of way and a agreements which may now or thereafter affect such property area form a particular part of the consolidation to all Easements, Covenants and restriction of land record and shall extend to any bind each party hereto its Legal representatives ,assigns and enacted by U. S.congress Act, federal statute and state law same are in force and effect since Reading Company as successors and Assignees to since 1985 – 1987 Reorganization as indicated by law in

the Right of way Authority Acknowledge the rights to pass for the dispute railroad line with Canadian pacific (cp) based in Montreal for the Delaware & Hudson which own by the Right of

way Authority of Reading Company Governing law for this deed shall be construed interpreted and enforced in accordance to Railroad Act Statue's imply, to

Reading International, Inc is Undergoing Investigation for Fraud and False Claim
location at 6100 Center Drive, Suite 900, los Angeles , California 90045
Corporate Profile
Headquartered in Los Angeles, California, Reading International has over 2300 employees worldwide who serve our customers in the United States, Australia, and New Zealand.
Corporate Profile
Reading International, Inc., a Nevada corporation, was incorporated in 1999 incident to our reincorporation in Nevada. Our class A non-voting common stock "Class A Stock") and class B voting common stock ("Class B Stock") are listed for trading on the NASDAQ Capital Market (Nasdaq-CM) under the symbols RDI and RDIB, respectively. Our principal executive offices are located at 6100 Center Drive, Suite 900, Los Angeles, California 90045. Our general telephone number is (213) 235-2240.
We are an internationally diversified "hard asset" company principally focused on the development, ownership and operation of entertainment and real property assets in the United States, Australia, and New Zealand. Currently, we have two business segments:
1.Cinema Exhibition, through our 56 cinemas, and
2.Real Estate, including real estate development and the rental of retail, commercial and live theater assets.
We believe that these two business segments complement one another, as the comparatively consistent cash flows generated by our cinema operations allow us to be opportunistic in acquiring and holding real estate assets, and can be used not only to grow and develop our cinema business but also to help fund the front-end cash demands of our real estate development business.
Reading Corporate Reading

Our Businesses
Our Cinemas
Our Real Estate
Our Live Theatres
Our Restaurants
Our Brands
Reading Cinemas-AU
Reading Cinemas-NZ
Reading Cinemas-US
Angelika Film Centers
Consolidated Theatres
The Paris Theatre
Beekman Theatre
Village East Cinema
Liberty Theatres

Steer & Beer
Cinemas & Showtimes
Australia
New Zealand
USA
Real Estate
Australia
New Zealand
USA
Promotions
EXTRAS Loyalty Card
Reel Club Australia
Reel Club New Zealand
Steer & Beer Specials

all property owned by Penn Central under Reading Company Registry
51 East 42nd Street
Biltmore Hotel
Yale Club
52 Vanderbilt Avenue
Commodore Hotel
Lexington 43rd Street Driveway
Graybar Building
280 Park Ave West Building (Bankers Trust Building)
466 Lexington Avenue
245 Park Avenue (American Brands Building)
299 Park Avenue (Westvaco Building)
Barclay Hotel
Waldorf Astoria Hotel
280 Park Avenue East Building (Bankers Trust Building) approximately 75% of the fee interest
230 Park Avenue Tenant in common
6. The Harlem owns the fee interest in the following, subject to the Trustees' leasehold interest
pursuant to the Harlem lease:
Air rights over Grand Central Station
Pan Am Building
Roosevelt Hotel
383-84 Madison Avenue
250 Park Avenue
270 Park Avenue (Union Carbide Building)
280 Park Avenue East Building (Bankers Trust Building) approximately 25% of the fee interest
230 Park Avenue one of the tenants in common

320 Park Avenue (ITT Building)

350 Park Avenue (Manufacturers Hanover Trust Company Building)

277 Park Avenue (Chemical Bank Building)

7. In the majority of cases the Debtor's estate is the lessor under long-term ground leases, the improvements having been constructed by the ground lessee.

U.S
Right of Way Authority
Police Invesegation  2/17/2016

In Matter of Pepco Holding.

Electric service provider to customers in Washington, DC, and Montgomery and Prince George's counties in Maryland. Features news, information on programs ...The Capital Traction Company was the smaller of the two major street railway companies in Washington, D.C. in the early 20th Century. It was formed through a merger of the Rock Creek Railway and the Washington and Georgetown Railroad Company in 1895. The company ran streetcars from Georgetown; Capitol Hill; Chevy Chase, MD; the Armory and Mt. Pleasant. In 1933 it merged with the its major competitor the Washington Railway and Electric Company to form the Capital Transit Company.Pepco Holdings, Inc. (PHI) is a holding company incorporated in February 2001 for the purpose of affecting the acquisition of Conectiv Power Delivery by Potomac Electric Power Company (better known as "Pepco"). The acquisition was completed on August 1, 2002 at which time Pepco and Conectiv became wholly owned subsidiaries of PHI. Conectiv itself had been formed in 1998 to be the holding company of Delmarva Power & Light Company (DPL, better known as "Delmarva Power") and Atlantic City Electric Company (ACE) in connection with the combination of DPL and ACE. In 2005, PHI resumed the use of the Delmarva Power and ACE brands for purposes of operations, with the result that Conectiv Energy was the only remaining Conectiv brand and was restricted for PHI's energy production facilities.

Operations of the various companies controlled by Pepco Holdings take place in the Mid-Atlantic states of the United States. Pepco serves Washington, D.C. and its Maryland suburbs, Delmarva Power serves the Delaware and Maryland portions of the Delmarva Peninsula, and Atlantic City Electric serves South Jersey.[2] In 2008, Delmarva Power sold its service area in the Virginia portion of the peninsula to A&N Electric Cooperative and Old Dominion Electric Cooperative for $44 million.[3] In April 2010, Conectiv Energy was sold to Calpine Corporation.[1]

Pepco Holdings was placed at 283rd on the 2006 Fortune 500, a list of American companies ranked by gross revenue. In 2010, the company paid only 10% of the taxes it had paid in the previous year, dropping from US$104 million to US$11 million.[4] The company experienced a doubling of operating profit in 2011, in part due to approved utility rate increases in the states of Delaware, Maryland, and New Jersey along with Washington, DC.[4]

Exelon and Pepco Holdings Inc.Combining to create the leading mid-Atlantic electric and gas utility company Exelon Corporation and Pepco Holdings Inc. announced on April 30, 2014 that they signed a definitive agreement to combine the two companies in an all-cash transaction. The agreement, which has been unanimously approved by both companies' boards of directors, brings together Exelon's three top-performing electric and gas utilities - BGE, ComEd and PECO - and Pepco Holdings' electric and gas utilities - Atlantic City Electric, Delmarva Power and Pepco - to create the leading Mid-Atlantic electric and gas utility

Reading Company the Owner of the Washington D.C. Railroad utility - Gas line and Electric line, No Right Granted for the Sale without the Owner Aproval. the Sale under Federal investegation.

Brandywine Under Investegation agianst Fraud and False claim to Properties owned by Reading Company and or under Reading Company Corporation, associaation Regestery includeing Bill Atlantic System Properties Under the Owner Reading Company Regestery, the Owner of Pennsylvaania Railroad and Penn Central, New York City Regestery Under Federal Investegation for the Massaive violatiotion to Properties Frud and False claim.

A $5.25 million master plan already is being drawn up by Amtrak, Drexel University, and Brandywine Realty Trust for the redevelopment of the station and 175 acres around it, including possible development atop the rail yards adjacent to the station.

[ Reading Company, the owner of Pennsylvania Railroad, the owner of Railroad stationright of Way, the owner of Phily & Reading the owner of the City of Philadelphia, the owner of Amtrak's must have Reading Company aproval.

Bob LaCroix, Amtrak's deputy chief for Northeast Corridor development, oversees the planning for both stations, and he said there were similarities - as well as significant differences - between the two. Both are busy transportation hubs, serving commuters as well as Amtrak passengers. Both are in urban centers that provide lots of potential customers who live or work nearby.

One is a mall with a train station. The other is a train station with a food court.

Union Station has become "a very successful commercial establishment," said Beverly Swaim-Staley, president and CEO of the Union Station Redevelopment Corp., which rebuilt and operates the station. Reading Company the Owner of Washington D.C. Union Station.

| Back to List |
|---|
| Created by TeamIA, Lexington, South Carolina |

| Document Type: | DEED MISCELLANEOUS | View Document: | No image available |
|---|---|---|---|
| Book/Page: | RECORD 3393-408 | Seal Status | |
| Instrument Number: | 2005004962 | Proofed: | ROTANDIA |
| Date Recorded: | 1/13/2005 2:57:27 PM: 3 | Parent: | |
| Document Date: | 1/13/2005 2:57:27 PM | Child: | |
| Remarks: | | Instrument Description: | |
| Consideration Amount: | | Arrival Method: | WALK-IN |
| Change History | Click here to view history | | |

| **Submitter Address:** |
|---|

SUNOCO PIPELINE
525FRITZTOWN ROAD
SINKING SPRING PA 19608

**Return Address:**

SUNOCO PIPELINE
525FRITZTOWN ROAD
SINKING SPRING PA 19608

- Parties

## DIRECT

| Name/Company | AKA |
|---|---|
| READING COMPANY | |
| KEYSTONE PIPE LINE COMPANY | |
| TINICUM DEVELOPERS | |
| CIARDI /JR, ALBERT A | |
| TREVISAN, JOHN | |
| DIANTONIO, ANTHONY | |
| PINELLI, THOMAS | |
| DIOTTAVIO, ANTHONY | |
| SUNOCO LOGISTICS PARTNERS OPERATIONS GP LLC | |
| SUNOCO PIPELINE LP | |

## INDIRECT

| Name/Company | AKA |
|---|---|
| READING COMPANY | |
| KEYSTONE PIPE LINE COMPANY | |

| | | | |
|---|---|---|---|
| TINICUM DEVELOPERS | | | |
| CIARDI /JR, ALBERT A | | | |
| TREVISAN, JOHN | | | |
| DIANTONIO, ANTHONY | | | |
| PINELLI, THOMAS | | | |
| DIOTTAVIO, ANTHONY | | | |
| SUNOCO LOGISTICS PARTNERS OPERATIONS GP LLC | | | |
| SUNOCO PIPELINE LP | | | |

**- Parcel Numbers**

| Parcel Number | Address | Parcel Number | Address |
|---|---|---|---|
| 45-00-00919-00 | INDUSTRIAL HWY 00760000/MEMO AGREEMENT | 45-00-00919-50 | INDUSTRIAL HWY 00000000/MEMO AGREEMENT |

Sunoco gasoline-station and Pipeline are under the Registry of Reading Company the Owner in which the registry is Compromised in Delaware County by Fraud and False Claim, also other Registry in Philadelphia County, Dauphin County in the States of Pennsylvania are under Federal Investigation including the County office Employee and Registration System and the Data base of Reading Company Railroad and its Right of Way,

" Energy Transfer Partners L.P., the Dallas pipeline operator that bought Sunoco Inc. two years. ago, is acquiring Texas gasoline-station owner Susser Holdings Corp. forounty about $1.8 billion, creating a stand-alone retail home for Sunoco " Under Federal investigation by Land & Title a Federal Registry of North America after the Declaration of Independence from England on July 4, 2015.

Created by TeamIA, Lexington, South Carolina
is under Federal Investigation for Fraud of removing Reading Company from Delaware County Registry.
Delaware County is under Right of Way Authority Land & Title investigation .

aka Reading Company Property is Compromised by Fraud and false Claim.
U.S. Right of Way Authority 2/17/2016

Sunoco gasoline-station and Pipeline are under the Registry of Reading Company the Owner in which the registry is Compromised in Delaware County by Fraud and False Claim, also other Registry in Philadelphia County, Dauphin County in the States of Pennsylvania are under Federal Investigation including the County office Employee and Registration System and the Data base of Reading Company Railroad and its Right of Way,

" Energy Transfer Partners L.P., the Dallas pipeline operator that bought Sunoco Inc. two years. ago, is acquiring Texas gasoline-station owner Susser Holdings Corp. for about $1.8 billion, creating a stand-alone retail home for Sunoco " Under Federal investigation by Land & Title  a Federal Registry of North America after the Declaration of Independence from England on July 4, 2015.

Exelon and Pepco Holdings Inc.Combining to create the leading mid-Atlantic electric and gas utility company Exelon Corporation and Pepco Holdings Inc. announced on April 30, 2014 that they signed a definitive agreement to combine the two companies in an all-cash transaction. The agreement, which has been unanimously approved by both companies' boards of directors, brings together Exelon's three top-performing electric and gas utilities - BGE, ComEd and PECO - and Pepco Holdings' electric and gas utilities - Atlantic City Electric, Delmarva Power and Pepco - to create the leading Mid-Atlantic electric and gas utility

Reading Company the Owner of the Washington D.C. Railroad utility - Gas line and Electric line, No Right Granted for the Sale without the Owner's Approval. the Sale under Federal investigation.

Brandywine Under Investigation against Fraud and False claim to Properties owned by Reading Company and or under Reading Company Corporation, association Registry including Bill Atlantic System Properties Under the Owner Reading Company Registry, the Owner of Pennsylvania Railroad and Penn Central, New York City Registry Under  Federal Investigation for the Massive violation to Properties Fraud and False claim.

A $5.25 million master plan already is being drawn up by Amtrak, Drexel University, and Brandywine Realty Trust for the redevelopment of the station and 175 acres around it, including possible development atop the rail yards adjacent to the station.

[ Reading Company, the owner of Pennsylvania Railroad, the owner of Railroad station right of Way, the owner of Phily & Reading the owner of the City of Philadelphia, the owner of Amtrak's  must have Reading Company approval.

Bob LaCroix, Amtrak's deputy chief for Northeast Corridor development, oversees the planning for both stations, and he said there were similarities - as well as significant differences - between the two. Both are busy transportation hubs, serving commuters as well as Amtrak passengers. Both are in urban centers that provide lots of potential customers who live or work nearby.

One is a mall with a train station. The other is a train station with a food court.

Union Station has become "a very successful commercial establishment," said Beverly Swaim-Staley, president and CEO of the Union Station Redevelopment Corp., which rebuilt and operates the station. Reading Company the Owner of Washington D.C. Union Station.

Lexington, South Carolina under Federal Investigation for violation to Government registry trust in which Reading Company property had been stolen by Fraud and false claim. on date of : 2/17/2016

Back to List

Created by TeamIA, Lexington, South Carolina

| Document Type: | DEED MISCELLANEOUS | View Document: | No image available |
|---|---|---|---|
| Book/Page: | RECORD 3393-408 | Seal Status | |
| Instrument Number: | 2005004962 | Proofed: | ROTANDIA |
| Date Recorded: | 1/13/2005 2:57:27 PM: 3 | Parent: | |
| Document Date: | 1/13/2005 2:57:27 PM | Child: | |
| Remarks: | | Instrument Description: | |
| Consideration Amount: | | Arrival Method: | WALK-IN |
| Change History | Click here to view history | | |

**Submitter Address:**

SUNOCO PIPELINE
525FRITZTOWN ROAD
SINKING SPRING PA 19608

**Return Address:**

SUNOCO PIPELINE
525FRITZTOWN ROAD
SINKING SPRING PA 19608

**- Parties**

**DIRECT**

| Name/Company | AKA |
|---|---|
| READING COMPANY | |
| KEYSTONE PIPE LINE COMPANY | |
| TINICUM DEVELOPERS | |

| | |
|---|---|
| CIARDI /JR, ALBERT A | |
| TREVISAN, JOHN | |
| DIANTONIO, ANTHONY | |
| PINELLI, THOMAS | |
| DIOTTAVIO, ANTHONY | |
| SUNOCO LOGISTICS PARTNERS OPERATIONS GP LLC | |
| SUNOCO PIPELINE LP | |

**INDIRECT**

| Name/Company | AKA |
|---|---|
| READING COMPANY | |
| KEYSTONE PIPE LINE COMPANY | |
| TINICUM DEVELOPERS | |
| CIARDI /JR, ALBERT A | |
| TREVISAN, JOHN | |
| DIANTONIO, ANTHONY | |
| PINELLI, THOMAS | |
| DIOTTAVIO, ANTHONY | |
| SUNOCO LOGISTICS PARTNERS OPERATIONS GP LLC | |
| SUNOCO PIPELINE LP | |

**- Parcel Numbers**

| Parcel Number | Address | Parcel Number | Address |
|---|---|---|---|

| 45-00-00919-00 | INDUSTRIAL HWY 00760000/MEMO AGREEMENT | 45-00-00919-50 | INDUSTRIAL HWY 00000000/MEMO AGREEMENT |
|---|---|---|---|

F.B.I
U.S. Trustee investegation
Home Land security
States & Local county police
will be inform

# Gmail

**COMPOSE**

Inbox (1,157)

Starred

Important

Sent Mail

**Drafts (42)**

Circles

Personal

Travel

More

 Ibrahem

No Hangouts Contacts

Find someone

## Case # 141122 - 029542 - ref:_00DF0Bqlq._500F0TAm3Z:ref

**FEMA-ContactUs** fema-contactus@fema.dhs.gov via c3ssdvr8jb572e.f-bqiqmak.na10.bi

to me

 **FEMA**

Thank you for contacting FEMA and giving us the opportunity
you. Your inquiry has been received and is currently being re
should expect to receive a response soon.

The reference number for your comment/question is listed be
to update your request or provide additional information, resp
e-mail. ***Do not enter Sensitive Personal Identifiable Info
such as SSN, address, phone number, DOB or driver's li***
you are in to apply for Disaster Assistance, please visit Disast
Assistance website.

FEMA must comply with the Privacy Act, to ensure and verify
before providing specific information about your case, you sho
Helpline and speak directly with one of our representatives. C
require that applicants provide verification information via tele
contact the FEMA Helpline at 1-800-621-FEMA (1-800-621-33

If you have a hearing or speech impairment and use a teletyp
TDD), call 1-800-462-7585 directly, if you use 711 or video ir
(VRS), call 1-800-621 -3362.

Case #: 141122 - 029542
Case Submitted: 11/22/2014

Question/Comment: Email Address: phillyexpress10@gmail.com
First Name: IBRAHIM
Last Name: ALY
State: Pennsylvania
Subject: emergency disaster assistance
Category Level 1: Assistance for Individual, Family, and Small Busines

U.S.
RIGHT OF WAY AUTHORITY                    U.S. Congress     S.4017
40 Massachusetts Ave Washington D.C
Reading Company   Federal identification No.  232653304
Milling address aka 4251/2 north Broad Street Philadelphia, PA 19123


IN MATTER OF  :Reading Company owner of Union Station land  and to the land Which the United
States of America Flag stand the only authorised Flag in the Ten Miles Diamond shape for Federal
Capital land of George Washington Since 1792 as the United States Constitution Law order.


READING COMPANY RAILROAD POLICE REPORT :
is authorized directed to conduct an investigation and study of the extent to which criminal or other
improper practices or activities are or have been engaged in the Federal Registry System of Land and
Title included Railroad where any changes are required in the protection of Government, Public and
Private Properties for the interests against any Fraud and or false Claim.
the Washington Terminal Company ( WTC) is under the custody of Reading Company,  FBI had
inform, department  of Justice, and SEC for financial fraud and false claim Act.


in regard to Office of Inspector General Audit Report # FI-2014-033, Date Issued  April, 1, 2014
From: Calvin L. Scovel III
        Inspector General

To:    The Secretary
        Federal Railroad Administration

Inspector General :  Calvin L. Scovel III  in his Report stated that :

I- the Station is a Federal heritage asset, owned by the Federal Railroad Administration ( FRA)
VIOLATION
 the Station is own by Reading Company the owner of Pennsylvania RailRoad and Penn Central
Company Since 1985

not 1 "Federal heritage assets are owned by the Federal Government, but  not used by the Federal
Government in its operation, and typically have historic, artistic, or significant architectural
characteristics"
VIOLATION
 nothing in the  Law Dictionary of United States of America ever Meant that a historic place own by a
private Corporation Reading Company is the owner  in accordance to County Record of deed,
Delaware the First State Corporation Bureau, Pennsylvania Department of  State's Corporation
License, Federal Railroad Law, U.S.  Congress Railroad Act  , and Railroad properties protected  by
the supreme law of the land the United States of America Constitution.

II- In 1983, the Department of Transportation( DOT) created the Union Station Redevelopment
Corporation ( USRC) to manage and oversee Union Station's operation

III- We conducted his audit from April 2012 through November 2013 in accordance of generally accepted Government auditing standards.

- Auditing in Accounting is related to Number start with 0  no Weight or Gravity but in the court of Law there must be a prove and evidence to any statement in oral or written, plus Statement is not from the air or at 0 Weight and Gravity where you start.


BACKGROUND:

1- 1908 Union Station opens as a railroad terminal., the Washington Terminal Company (WTC ) built the Station and was the first owner

Wrong and Violation related to history and private owner, the correct answer is the Pennsylvania Railroad and the Baltimore and Ohio railroad announced in 1901 they agreed to build  new Station, open for business in october 27,  1907

Reading Company is the owner of Philly and Reading since 1833, Pennsylvania Railroad since 1846, Penn Center Transportation Company 1968, Baltimore &  Ohio Railroad 1968, the Richmond, Fredericksburg, and Potomac Railroad (RF&P) since 1857.          Washington Southern taken over by ( R. F&P) IN 1920.

2- 1968 Congress passed the National Visitor Center Facilities  Act of 1968 required the Department of Interior (DOI) to enter into agreement and leases with the station's owner the Station owner is Pennsylvania Railroad owned by Reading Company the registered deed record owner as Recorded in the Government office in State of Pennsylvania  , WTC conveyed the Station's ownership to the Terminal Realty Baltimore and Terminal Realty Penn Companies which leased Union Station to DOI for $3.3 million annually

Violation

WTC is only a name to a Terminal located in Washington and does not own the Station and no right granted to non owner to transfer and or conveyed owner of Station by false and fraud the owner is Reading Company to the Land on, above, beside, and across and the Right of Way up to 300 or more both side of the track  in accordance to U.S Congress Act,   furthermore the recorded Station owned  by the Washington Terminal is false the Station owner is Reading Company as owner to Washington Terminal and to all North East  Railroad terminal and Station as protected by U.S Right of Way Authority for Railroad purposes only and any violation will persecuted by Trespass Police force and Railroad property will be sized for future transportation .No third Party and or sublease without the owner's approval first,  a Railroad can own Train, Station,  but Terminal company cannot own station and or Railroad .

 3- Congress passes the Union Station Redevelopment Act : S. 1192 Dec 29, 1981

"to amend the National Visitor Center Facilities Act of 1968 to provide for the rehabilitation and completion of Union Station in Washington District of Columbia and for other purposes"

 the Act authorized DOI  to transfer its rights and interest in Union Station to DOT

" the act provide DOT with a goal of withdrawing the Federal Government from any active role in the operation and management of Union Station.

----- the transfer of management of union Station between Federal department is approved by Law but that means not the transfer of owner to the department of Transportation for what was created for inorder to help Railroad company, but not in park and parking lot business that was not the intend of their natural of business and not the intend of the legislator for the department of Transportation to be in Parking lots business.

1985: FRA  Leases Union Station to USRC

1987: FRA  purchases Union Station from the Terminal Realty Baltimore and Terminal Realty Penn Companies for $ 10 million
Violation
Reading Company owned both Terminal as to other Railroad Terminal to all its branches as the deed of record prove.

2006: the Federal Government sells the air rights above Union Station's tracks and platforms to Akridge a Locally Based Commercial real estate for $ 10 million
Violation
--- who and or what department Sale the station air right in which in  their auditing stated that they leased  the Station in note # 13 .
--no Right to sale ever granted to the Transportation Department that not the nature of their work because the Station own by Reading Company, a Railroad Company govern by the Congress Act and Protected by the Supreme law of the land the "Constitution" protect the private owner who granted the right of public to use his Railroad tracks as to government in all States as to private Corporation Amtrak for Passenger services as to Consolidated Rail Corporation for Freight services and thereafter the sales fulse, fraud, void and reverse.


not # 13
At the time, FRA,  on behalf of the Secretary, controlled Union Station under a lease assigned by the Department of the Interior, Although the agreement between DOT and  USRC is technically a sublease, we refer to it as a lease distinguish this agreement form the sublease with the commercial operators.

Violation
the word, term and terminology in which the Auditor General stated that sublease and we refer to as a lease meant the extended of the violation for not understand the Contract Law and what Mr: Calvin L. Scovel III reference to the interpretation of the law is out of the contact and no further word.

The charter of the city of Harrisburg
which is own by John Harris & other Add
to the trust & puplic of the city of Harr
under
Marten
at he
King

Yangea
trust

in Accordance to "the Trenton Decree" penn on ite war

▲ Page one of the Charter of King Charles II to William Penn, March 4, 1681, iron gall ink on parchment, in Record Group 26, Records of the Department of State. Basic Documents of Pennsylvania Including Proprietary Charters and Deeds, Indian Deeds, and State Constitutions.

Penn's death. Dissatisfaction with the defense of the frontier in the French and Indian War fostered another attempt to replace charter government with royal colonial administration, but this movement also failed. When Pennsylvania entered the Revolution, the state took over the Penn family's title to the land by enacting the Divesting Act of 27 November 1779. This, coupled with the termination of proprietary government, seemed to make the Charter meaningless, but Pennsylvania revived it in 1782, as the only way to show primacy over Connecticut's claim to a large part of northeastern Pennsylvania. Today, the Charter provides the historical basis for chains of title in Pennsylvania's real estate system and for governments of the older political subdivisions of the state. — Connecticut

**The Charter gave Pennsylvania boundaries that seemed precise at the time, but eventually proved ambiguous.**

Eastars Fay

Ocean

✓ For Washington D.C.
Land as in Act by federal
protection Since July 4, 1776

only y GOD to. ± TIME      o = o   (N 40 R II

Case 1:16-cv-00281-JEJ Document 1-2 Filed 02/17/16 Page 34 of 90



I think it is unreasonable to expect that railroads will remain competitive with other modes of transportation if railroads are to be the only mode of transportation which are to be left to finance completely their own rights-of-way.

It seems to me that there is a way through our constitutional authority for maintaining interstate commerce for Congress to maintain the vitality of the railroad industry without nationalizing the railroad or without subsidizing the railroad.

I believe we can accomplish this end by treating railroad beds like highway toll roads.

I am offering today a bill which would establish independent regional Federal authorities to take ownership of the roadbeds of a bankrupt railroad's roadbed through the issuance of tax-exempted revenue bonds which the bankrupt railroad could then use in tax-free transaction to exchange for their existing long-term debt.

The regional railroad rights-of-way authority would lease back to the bankrupt railroad the continued use of the railroad bed through an arrangement where the railroad pays for the maintenance of the roadbed; that is, through a net-net lease.

The lease would be given on the basis of a minimum payment together with a predetermined car toll similar to the procedure used on toll roads. Electronic devices are available which could be placed along the roadbed at various points to audit the use of the roadbed.

The bonds that would be issued by the regional authority would pay a 5 percent tax exempted dividend and be completely negotiable in tax-free exchanges.

If a regional authority determined that a particular railroad was not providing adequate freight service to a region, or in certain cases, inadequate passenger service, the regional authority would give a lease to another competing railroad in conjunction with the lease to the initial railroad or in replacement of the lease to the first railroad.

If, by some unlikely circumstance, the roadbeds acquired by the authority were not able to be leased to a railroad or able to generate enough income to pay off the bonds, the authority could sell the roadbeds to commercial developers. Since real estate is as constantly appreciating investment and since most railroad beds likely to be purchased by an authority as needed for services will lie in densely populated areas, there is no likelihood that the sale of the nonusable roadbeds to commercial developers would not produce more than enough income to repay the defaulted revenue bonds.

This proposed regional rail rights-of-way authority would provide a number of benefits.

First, it would provide a means for keeping needed rail service of bankrupt railroads in effect without any direct costs to the Federal Government. The railroad roadbeds obviously would no longer be a source of tax revenue under this proposal; but this is not an argument against the authority since a railroad that is bankrupt is also not a source of tax revenue.

Second, the revenue bonds of the authority would serve to make the railroad's roadbeds a liquid asset thus enabling the bankrupt railroad to reduce its liabilities, to save on the amortization costs attached to its roadbed, and to provide for the creation of new capital needed by railroads to modernize their equipment and to improve their service.

Third, since the railroad rights-of-way authority could lease the use of its roadbed to more than one railroad, it could provide for competitive service to communities being served by an inefficient railroad.

Fourth, no new bureaucracy would be created, and the operation of the newly created National Rail Passenger Corp.—Amtrak—would be simplified. Since the railroad rights-of-way authority would have no operational authority, only authority to appraise, condemn, and issue bonds for rail rights-of-way, there would only be the need for a very small number of personnel to operate the authority. Since Amtrak could contract directly for the costs of the roadbeds it would use with the railroad rights-of-way authority instead of contracting through existing railroads which are only concerned with freight service, Amtrak would be better able to ascertain the true costs of its roadbed usage and would be in a better position to contract for a better treatment of its passenger trains vis-a-vis freight trains.

I believe if this proposal was enacted it would be a great boon to the Northeast. It could mean the end to Penn Central's bankruptcy, a modernization and improvement of Penn Central's freight service, and a return to sound financial footing for all the railroads serving the Northeast.

My own State of Rhode Island has been particularly hard hit by Penn Central's bankruptcy in terms of direct job loss from Penn Central and in terms of damage done to my State's industry due to the lack of reliable and low-cost freight service.

This proposal I am offering today would reverse, I would hope, that situation.

I know that one nationally known businessman in my own State, Mr. Royal Little, believes this proposal can make that difference.

His imaginative thinking has provided the inspiration for this proposal; and I believe that his well-known financial sagacity should provide confidence in us. This proposal is one of substance and one that is economically viable. I realize its chances of passage in this Congress are limited. But this is an approach and an idea that I believe not only has merit, but will come to be, and the sooner the better. I know I will fight for it as hard as I can.

There being no objection, the bill was ordered to be printed in the RECORD, as follows:

S. 4017

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That this Act may be cited as the "Regional Railroad Rights of Way Authority Act".

DEFINITIONS

SEC. 2. For the purposes of this Act the term—

(1) "Authority" means the Regional Railroad Rights of Way Authority established pursuant to section 3 of this Act;

(2) "railroad" means a common carrier by railroad, as defined in section 1(3) of the Interstate Commerce Act (49 U.S.C. 1 (3));

(3) "railroad right of way" means real property which is owned by a railroad and is within 300 feet on either side of a track, the roadbed for such track, and such structures and devices as are permanently installed on such real property, and may include such additional realty adjoining such real property as the Authority deems necessary for the purposes of this Act.

STATEMENT OF PURPOSE

SEC. 2. The purpose of this Act is to assist railroads, which because of financial problems are having difficulty providing adequate transportation services, by purchasing from such railroads their rights of way and providing for the continued use of such rights of way by lease.

REGIONAL RAILROAD RIGHTS OF WAY AUTHORITY

SEC. 3. (a) There is established in the executive branch of the Government an independent agency to be known as the Regional Railroad Rights of Way Authority. The Authority shall be subject to the supervision and direction of a Board of Trustees which shall consist of five members to be appointed by the President, by and with the advice and consent of the Senate, for terms of five years, except that the terms of four of the trustees first taking office after the enactment of this Act shall expire, as designated by the President at the time of appointment, one at the end of one year, one at the end of two years, one at the end of three years, and one at the end of four years. A vacancy shall be filled only for the unexpired portion of any term and trustees shall hold office until their successors are appointed. Trustees shall serve on a full-time basis and shall be compensated at the rate provided for level III of the Federal Executive salary schedule.

(b) The President shall designate the trustee to serve as Chairman and as Vice Chairman. Three trustees shall constitute a quorum.

FUNCTIONS OF THE AUTHORITY

SEC. 4. (a) The Authority—

(1) shall, after obtaining two independent appraisals of value, acquire by purchase or condemnation all right, title, and interest to the rights of way of any railroad in the United States which is undergoing reorganization under section 77 of the Bankruptcy Act, and provide compensation therefor with obligations issued pursuant to clause (2);

(2) shall issue, after consultation with the Secretary of the Treasury, and have outstanding in such amounts as are necessary for the purposes of carrying out its functions pursuant to clause (1) and for redeeming obligations issued pursuant to this clause, negotiable obligations which (A) are not obligations of the United States but are secured by the assets of the Authority, (B) are in denominations of $200,000 each, (C) bear interest, which shall be exempt from Federal, State, or local income taxes, at a rate of at least 5 per centum, determined by the Authority, (D) have maturities of at least 30 years but not to exceed 50 years, determined by the Authority and are not redeemable before maturity, and (E) shall be redeemed at maturity by the Authority;

(3) shall enter into a lease or leases with each railroad from which right of way is acquired providing (A) for the use of all or part thereof by such railroad at a rate determined by the Authority on a per car or other equitable basis but amounting on a per annum basis to not less than 5 per cen-

Reading Company changed the legal file from Fictitious Name:under Steak and Bagel Train to Reading Company Corporation and as Amendment by law State, Federal and U.S Congress Act. from date of :12/16/1985 ( roll and Film  8589 / 1193-0 ) Federal Identification # 232653304 - Reading Company Branch  for B.M.F line mange by ConRail Railroad, City of Columbia, County of lancaster, State of Pennsylvania.

Reading Company Corporation and Amendment are governance in accordance to Commonwealth Law of Pennsylvania Under the United States of America First Constitution the supreme law of the land, and its Union Flag with 50 Stars is the Highest Flag on land in all 50 States and only Flag on Federal Capital Land Washington including the  state of Pennsylvania,County of Philadelphia  Revelation, Recorder of Deeds Where's Reading Company address since its Bankruptcy 1969-1972  known as AKA  4251/2 north broad street Philadelphia , Pennsylvania 19123.  Philly and Reading Engine # 1186 EXHIBIT #  prove of address

the Philadelphia & Reading Railroad was chartered in 1833, the United State of America Supreme Court decision during the 1890 to break up monopolies then after the Pennsylvania & Reading owners created a new holding company named the Reading Company the Pennsylvania railroad and reading Coal & Iron were ordered separated under the Supreme Court ruling in 1924  the Philadelphia and Reading Railway Company together with other companies, merged under the name of Reading Company by Agreement for Merger dated  October 1, 1923 filed in the office of the secretary of the Commonwealth of Pennsylvania , at Harrisburg, Pennsylvania, in Railroad Book 41,page 47 &c. In accordance to Government record the owner of  the deed of record since 1985 is Reading company AKA 4251/2 north broad street Philadelphia , Pennsylvania 19123 U.S.A . the start of  the Pennsylvania & Reading Coal and Iron became an independent line and  RR Reading Railroad become the operating name  and Reading Company the owner of Pennsylvania Railroad permanent land Title deed . Exhibit #

I- Reading Company Advance Transportation System and Related Business

II-U.S. Right of Way Authority means the Regional Railroad Railroad Rights of Way Authority established pursuant to section 3 of this Act S 4017 . Railroad means a common carrier by railroad as defined in section 1 (3) of the interstate commerce Act(49 U.S.C. 1(3), Railroad right of way means real property which is owned by railroad and is within 300 feet on either side of a track the roadbed for such track and such structures and devices as are permanently installed on such real property and may include such additional realty adjoining such real property as the Authority deems necessary for the purposes of this Act . Exhibit #

III- Reading Advance Software For Federal Licensing and Register System Secure and Fair Enforcement for Mortgage Licensing Act of 2008 S.A.F.E "Secure and Fair Enforcement for Mortgage Licensing Act" (12 United States Code, Section 5100, et seq.), passed by Congress and signed by President G.W. Bush in 2008, required all states to implement a Mortgage Loan Originator (hereafter: "MLO") licensing and registration system by August 1, 2009 (August 1, 2010 for legislatures that meet biennially). States can operate their own systems, subject to stringent federal standards, or they can participate in the Nationwide

Mortgage Licensing System and Registry (hereafter: "the Registry"), a service operated jointly by the Conference of State Bank Supervisors and the American Association of Residential Mortgage Regulators (CSBS/AARMR). If the state's licensing and registration program does not meet minimum standards at any time, the U.S. Department of Housing and Urban Development (HUD) is empowered to step in and impose a compliant system upon the state.

III- Reading Company  Financial Auditing and Advance Recovery System
Federal false claims Act 31 U.S.C. § 3729-3733 as amended may,2009 ,ruled 4(d)(4) of federal Enforcement and Recovery Act of may 20, 2009 and  Rules of Civil depending on whether the government intervenes in the case and the extent to which the Relator substantially contributed to the prosecution of the Action to Procedure Reward to Qui tam plaintiff a percentage of a %10 to %30 as granted to Reading Company as amendment to the corporation the right for investigation of the False Claims and Recovery Act , if the Court rules in the amount of Civil Action of  rules 3731 of False Claims procedure less than 6 years from the time of discovery and also 3731 False claims jurisdiction the federal district court shall have  over any action brought under the laws of any states for the recoveries of funds paid.by government  Federal, States, County, to any U.S. Commercial and or Resedential.
the United States of America Right of Way Authorities Had Inform U.S department of housing philadelphia office in order to Register National Abundant title to Building & Land and or mortgage asset security for recovery of its right of way land, collection to any properties where's fraud Violation is committed to Federally mortgages financed Money and Insured institution public and or private Land and Title. *Winterization and Security 7-2-2012*

V- Reading Company Education System for Advance Learning Knowledge.

*2015*
*U.S*
*Right of way*
*Authori*
*Mossheia*
*SAVORI*
*hud*

Entity #: 898866
Date Filed: 01/22/2015
Pedro A. Cortés
Acting Secretary of the Commonwealth

**PENNSYLVANIA DEPARTMENT OF STATE**
**BUREAU OF CORPORATIONS AND CHARITABLE ORGANIZATIONS**

Fictitious Name
Amendment, Withdrawal, Cancellation
(54 Pa.C.S.)
X    Amendment (§ 312)
___  Withdrawal (§ 313)
___  Cancellation (§ 313)

Name  IBRAHIM ALY
Address  AKA 425½ North Broad Street
City  Philadelphia, State  Pennsylvania  Zip Code  19123

Document will be returned to the
name and address you enter to
the left.

Commonwealth of Pennsylvania
FICTITIOUS NAME AMENDMENT 7 Page(s)

Fee: $70

T1502918045

In compliance with the requirements of 54 Pa.C.S. Ch.3 (relating to fictitious names), the undersigned entity or entities,
desiring to amend, withdraw or cancel from a fictitious name registration, hereby state(s) that:

1. The fictitious name is:  Steak & Bagel Train

2. The address of the principal place of business, including number and street, if any, is (the Department is
   authorized to conform to the records of the Department):

   AKA 425½ North Broad Street Philadelphia, PA 19123
   Number and street          City          State    Zip      County  Philadelphia

3. The last preceding filing with respect to this fictitious name was made in the Department on
   12/16/1985 (Date) at #8589 (Roll and Film).
   (1193-0)

4. A brief statement of the character or nature of the business or other activity to be carried on under or through
   the fictitious name is:  United States of America  U.S Congress Act
   1972  § 40/7
   Right of Way Authority  Federal Identification #
   Future & Advance Rail Road  23 26 53 304
   Rail Way

2015 JAN 22  AM 9: 46
PA. DEPT. OF STATE

2015 JAN 22  PM 4: 05
PA. DEPT. OF STATE

DSCB:54-312/313-3

IN TESTIMONY WHEREOF, the undersigned has (have) caused this Application for Amendment, Withdrawal or Cancellation of/from Fictitious Name to be executed this

_22_ day of ___1___ , _15_ .

| Adding party(ies) signature(s) | Withdrawing party(ies) signature(s) | All current party(ies) signature(s) |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | 1-22-2015 |
| Name of Entity | Name of Entity | Name of Entity |
| Signature | Signature | Signature |
| Title | Title | Title |

**PENNSYLVANIA DEPARTMENT OF STATE**
**BUREAU OF CORPORATIONS AND CHARITABLE ORGANIZATIONS**

Articles of Incorporation-For Profit
(15 Pa.C.S.)

| | |
|---|---|
| ___ Business-stock (§ 1306) | ___ Management (§ 2703) |
| ___ Business-nonstock (§ 2102) | ___ Professional (§ 2903) |
| ___ Business-statutory close (§ 2303) | ___ Insurance (§ 3101) |
| ___ Cooperative (§ 7102) | ___ Benefit (§ 3303) |

Name  Reading Company

Address  AKA 425½ North Broad Steet

City  Philadelphia   State  PA   Zip Code  19123

Document will be returned to the name and address you enter to the left.

Fee: $125

In compliance with the requirements of the applicable provisions (relating to corporations and unincorporated associations), the undersigned, desiring to incorporate a corporation for profit, hereby states that:

1. The name of the corporation *(corporate designator required, i.e., "corporation"," incorporated", "limited" "company" or any abbreviation. "Professional corporation" or "P.C")* :

Reading Company

as a Holding Company of RR Reading RailRoad + Pennsylvania RailRoad Trust

2. The (a) address of this corporation's current registered office in this Commonwealth *(post office box, alone, is not acceptable)* or (b) name of its commercial registered office provider and the county of venue is:

(a) Number and Street     City     State     Zip     County

AKA 425½ North Broad Street  Philadelphia, PA 19123

(b) Name of Commercial Registered Office Provider  U.S ACT     County

c/o: Right of Way Authority S4017   Philadelphia

Federal ID=# 23 265 3304

3. The corporation is incorporated under the provisions of the Business Corporation Law of 1988.

+ Since 1833 Law as Amendment. and Since 1846 as Pennsylvania RailRoad Charter

July 4, 1776 and Since yea

4. Check and complete one:
___ The corporation is organized on a nonstock basis.
✓ The corporation is organized on a stock share basis and the aggregate number of shares authorized is: ___

1000 Common Ste
1000 Prefered Ste

PENNSYLVANIA DEPARTMENT OF STATE
CORPORATION BUREAU

Fictitious Name
Amendment, Withdrawal, Cancellation
(54 Pa.C.S.)

___✓___ Amendment (§ 312)
_____ Withdrawal (§ 313)
_____ Cancellation (§ 313)

Name IBRAHIM ALY
Address AKA 425½ North Broad Street
City Philadelphia State PA Zip Code 19123

Document will be returned to the name and address you enter to the left.

Fee: $70

In compliance with the requirements of 54 Pa.C.S. Ch.3 (relating to fictitious names), the undersigned entity or entities, desiring to amend, withdraw or cancel from a fictitious name registration, hereby state(s) that:

1. The fictitious name is: Penn Central Company
   Penn Central Holding Company 267313
   4-1-1969

2. The address of the principal place of business, including number and street, if any, is (the Department is authorized to conform to the records of the Department):
   AKA 425½ North Broad Street Philadelphia PA 1912:

   | Number and street | City | State | Zip | County |

3. The last preceding filing with respect to this fictitious name was made in the Department on
   _____ (Date) at _____ (Roll and Film).

4. A brief statement of the character or nature of the business or other activity to be carried on under or through the fictitious name is:
   _____
   _____
   _____

**PENNSYLVANIA DEPARTMENT OF STATE**
**CORPORATION BUREAU**

Fictitious Name
Amendment, Withdrawal, Cancellation
(54 Pa.C.S.)
___ Amendment (§ 312)
___ Withdrawal (§ 313)
___ Cancellation (§ 313)

| | |
|---|---|
| Name IBRAHIM ALY | Document will be returned to the name and address you enter to the left. |
| Address AKA 425½ North Broad St | |
| City Philadelphia   State PA   Zip Code 19123 | |

Fee: $70

In compliance with the requirements of 54 Pa.C.S. Ch.3 (relating to fictitious names), the undersigned entity or entities, desiring to amend, withdraw or cancel from a fictitious name registration, hereby state(s) that:

1. The fictitious name is: Penn Central Properties, INC
713834

2. The address of the principal place of business, including number and street, if any, is (the Department is authorized to conform to the records of the Department):

AKA 425½ North Broad Street Philadelphia PA 19123
Number and street          City          State    Zip        County

3. The last preceding filing with respect to this fictitious name was made in the Department on

_____ (Date) at _____ (Roll and Film).

4. A brief statement of the character or nature of the business or other activity to be carried on under or through the fictitious name is:

_____
_____
_____

PENNSYLVANIA DEPARTMENT OF STATE
CORPORATION BUREAU

Fictitious Name
Amendment, Withdrawal, Cancellation
(54 Pa.C.S.)

_____ / Amendment (§ 312)
_____ Withdrawal (§ 313)
_____ Cancellation (§ 313)

| | |
|---|---|
| Name IBRAHIM Aly | Document will be returned to the name and address you enter to the left. |
| Address AKA 425½ North Broad St | ⇐ |
| City Philadelphia, State PA Zip Code 19123 | |

Fee: $70

In compliance with the requirements of 54 Pa.C.S. Ch.3 (relating to fictitious names), the undersigned entity or entities, desiring to amend, withdraw or cancel from a fictitious name registration, hereby state(s) that:

1. The fictitious name is: Reading and LeBanon RailRoad Company
   298782

2. The address of the principal place of business, including number and street, if any, is (the Department is authorized to conform to the records of the Department):
   AKA 425½ North Broad Street, Philadelphia, PA 19123
   Number and street          City          State   Zip          County

3. The last preceding filing with respect to this fictitious name was made in the Department on

   _____ (Date) at _____ (Roll and Film).

4. A brief statement of the character or nature of the business or other activity to be carried on under or through the fictitious name is:

   _____

   _____

   _____

**PENNSYLVANIA DEPARTMENT OF STATE**
**CORPORATION BUREAU**

Fictitious Name
Amendment, Withdrawal, Cancellation
(54 Pa.C.S.)
___ Amendment (§ 312)
___ Withdrawal (§ 313)
___ Cancellation (§ 313)

Name ___IBRAHIM ALY___

Address ___AKA 425½ North Broad Street___

City ___Philadelphia___ State ___PA___ Zip Code ___19123___

Document will be returned to the
name and address you enter to
the left.

Fee: $70

In compliance with the requirements of 54 Pa.C.S. Ch.3 (relating to fictitious names), the undersigned entity or entities, desiring to amend, withdraw or cancel from a fictitious name registration, hereby state(s) that:

1. The fictitious name is: ___Penn Central Energy Group, Inc___
___715016___

2. The address of the principal place of business, including number and street, if any, is (the Department is authorized to conform to the records of the Department):

___AKA   425½   North Broad Street   Philadelphia, PA 1912___
Number and street          City          State     Zip     County

3. The last preceding filing with respect to this fictitious name was made in the Department on
_____ (Date) at _____ (Roll and Film).

4. A brief statement of the character or nature of the business or other activity to be carried on under or through the fictitious name is:
_____
_____
_____

**PENNSYLVANIA DEPARTMENT OF STATE
CORPORATION BUREAU**

Fictitious Name
Amendment, Withdrawal, Cancellation
(54 Pa.C.S.)

___✓___ Amendment (§ 312)
_____ Withdrawal (§ 313)
_____ Cancellation (§ 313)

| Name IBRAHIM ALY | Document will be returned to the name and address you enter to the left. |
|---|---|
| Address AKA 425 ½ North Broad St | |
| City Philadelphice, State PA, Zip Code 19123 | |

Fee: $70

In compliance with the requirements of 54 Pa.C.S. Ch.3 (relating to fictitious names), the undersigned entity or entities, desiring to amend, withdraw or cancel from a fictitious name registration, hereby state(s) that:

1. The fictitious name is: Penn Central Park, Inc
   264345

2. The address of the principal place of business, including number and street, if any, is (the Department is authorized to conform to the records of the Department):

   AKA 425 ½ North Broad Street Philadelphia, PA 1912
   Number and street          City          State   Zip   County

3. The last preceding filing with respect to this fictitious name was made in the Department on

   _____ (Date) at _____ (Roll and Film).

4. A brief statement of the character or nature of the business or other activity to be carried on under or through the fictitious name is:

   _____

   _____

   _____

**PENNSYLVANIA DEPARTMENT OF STATE**
**CORPORATION BUREAU**

Fictitious Name
Amendment, Withdrawal, Cancellation
(54 Pa.C.S.)
____ Amendment (§ 312)
____ Withdrawal (§ 313)
____ Cancellation (§ 313)

| Name IBRAHIM ALY | Document will be returned to the |
|---|---|
| Address AKA 425½ North Broad Street ⇐ | name and address you enter to the left. |
| City Philadelphia, State PA Zip Code 19123 | |

Fee: $70

In compliance with the requirements of 54 Pa.C.S. Ch.3 (relating to fictitious names), the undersigned entity or entities, desiring to amend, withdraw or cancel from a fictitious name registration, hereby state(s) that:

1. The fictitious name is: Reading and SouthWestern street Railway   298950

2. The address of the principal place of business, including number and street, if any, is (the Department is authorized to conform to the records of the Department): AKA 425½ North Broad Street, Philadelphia, PA 19123
   Number and street          City          State     Zip     County

3. The last preceding filing with respect to this fictitious name was made in the Department on
   _____ (Date) at _____ (Roll and Film).

4. A brief statement of the character or nature of the business or other activity to be carried on under or through the fictitious name is:
   _____
   _____
   _____

**PENNSYLVANIA DEPARTMENT OF STATE**
**CORPORATION BUREAU**

Fictitious Name
Amendment, Withdrawal, Cancellation
(54 Pa.C.S.)

____✓____ Amendment (§ 312)
_____ Withdrawal (§ 313)
_____ Cancellation (§ 313)

Name  IBRAHIM ALY
Address AKA 425½ North Broad Street
City  Philadelphia,  State PA  Zip Code 19123

Document will be returned to the
name and address you enter to
the left.  ⇐

Fee: $70

In compliance with the requirements of 54 Pa.C.S. Ch.3 (relating to fictitious names), the undersigned entity or entities, desiring to amend, withdraw or cancel from a fictitious name registration, hereby state(s) that:

1. The fictitious name is: Penn Central Building & Loan
2694309

2. The address of the principal place of business, including number and street, if any, is (the Department is authorized to conform to the records of the Department):

AKA 425½ North Broad Street Philadelphia, PA 19123

Number and street          City          State    Zip          County

3. The last preceding filing with respect to this fictitious name was made in the Department on

_____ (Date) at _____ (Roll and Film).

4. A brief statement of the character or nature of the business or other activity to be carried on under or through the fictitious name is:

_____

_____

_____

*the Revelation*

*2015 from the city of Philadelphia*

DECLARATION OF INDEPENDENCE 2014 *in Accordance to*

THE UNITED STATE OF AMERICA CONSTITTUTION AND ITS BILL OF RIGHTS

Public announce In accordance with 20 pa 7708   *D.C. Ander*   *the independan*

*the Right of way Authority federal Audite to the law July 4, 17*

from Reading company owner and right of the way authority That reading company and its   *Mos ho SAVE*
trust is not in debated to any creditor within or without the commonwealth of Pennsylvania nor
does the trust owe any taxes to the commonwealth or any state of the of the union of the   *ALL*
united states political subdivision.   *of the land*

The parties owner of the Reading company and its right of way known as city of Philadelphia
reading branch in accordance to the government records  of city of Philadelphia, states and
federal law   *to the capital of the union of the 50 sta*

I IBRAHIM ALY   *as Authorize by federal Law*

OWNER OF ENGIN #1186 + since 2010

RR READING COMPANY ISTABLISHED IN 1833   *owner to union station*

*Pennsylvania 50 stars flag*   *land in Accordance to*

RIGHT OF WAY 1833 + USA CONGRESS ACT 1862   *Rail Road – Pen Transportation company*

®TRANS CONTINENTAL RAILROAD -RAIL ACT LAW U.S.A CONGRESS ACT MARCH 1875 is reading   *the*
company trade mark.   *public Right of way*   *trass Law*

*only citizen*

Address:  AKA 4251/2 NORTH BROAD STREET PHILADELPHIA, PA 19123

Removal of the trustee is appropriate and warranted under the provision of   *to*
20pa.cons.stat.Amm 7766(B), the Resignations of a trustee does not automatically relieve the
trustee liability with respect to the administration " management" of the reading company
trust.   *the united State of AMERica Right of wa*

A quit claim deed transfers only interest in any real state from a grantor to a grantee both are
administration managers never grantee the ownership Rights, and does not provide any
property title or warranty promise- as to the status under any of the united states of America
law.   *public land transportaion future*

And now on this 3 /9/2014 on consideration it is order that all the trust asset's in the
possession and control of any parties to be transfer to rr reading company right of the way
management and holding company.   *granted the Right to All sit*

Any misappropriation of reading company trust (sale, fraud, transferred, unauthorized change
of ownership of assets) since reading company bankruptcy 1971 will be persecuted by local,
state and federal law enforcement.   *for the flag of D.C. washingto*

The right for reading company as railroad for establish of police force, and a as authorized by the law
*the united State of AMERica grant the capital land*
*only as order by federal law as the only Allow*
*federal Building on the land for federal Employe*
*only – no other ever promise with violation to*



**City of Philadelphia**
**Department of Records**

Reading Company RailRoad
Right of way Authority
AKA 425 S North Broad street philadelphia
PA 19123
IBRAHIM Aly Owner

Add to My file:-
Case # MC-51-CR-0022954-
2012

Doc # 1206027396

property fraud

deed # 39590785
North Easter RailRoad



# NO TRESPASS



WEATHERIZE

RIGHT OF WAY AUTHORITY PURSUANT TO THE PRIVISION OF GENERAL RAIL ACT LAW U.S.A CONGRESS ACT MARCH 1875, 43 U.S. CODE # 934, ® READING COMPANY TRANS CONTINENTAL RAILROAD ACCORDANCE TO PACIFIC RAILWAY ACT JULY 1, 1862.

SIZ-ANY RIGHT OF WAY PROPERTY FOR A VIOLATION OF THE PROVISIONS OF LAW MUNICIPAL, STATE AND OR FEDERAL.

# VIOLATION

ARE SUBJECT TO ARREST AND OR FINE UP TO 5 YEARS IN PRISION AND OR UP TO 5,000 $ FINE ACCORDANCE TO RAIL ACT TRASSPASING LAW. FEDERAL 49 U.S.C. 20157, 18 U.S.C. 13. STATE CRIMINAL TRESSPASSING 18 PA coms. 3503.

ARE SUBJECT TO ARREST AND PRISION FOR FORGERY AND FRAUDULENT PRACTICES, 11U.S COD 548., FRAUD ENFORCEMENT AND RECOVERY ACT OF 2009 ., 2005 PURSUANT TO 28 U.S.C. 586 (F)., 1990 ACT OF 28 U.S.C.2461E., TITAL 18 OF THE UNITED STATE CODE., PA TITLE 18 CHAPTER 41TITEL 42,U.S.C.SECTION 14141.

# PRE-REQUISISTE APPROVALS FOR ENTERY

ADDRESS:

APPLICATION #

COD/EDITION USED FOR REVIEW      R    T    A    V    G

AUTHORIZATION THAT ARE SUBJECT TO THE TRANSITIONAL PROVISION SET FORTH IN SECTION 11-701 "6" RIGHT OF WAY LAW "-ON- -OVER-ALONG - UNDER- ACROSS" (AIR-LAND-SEA) EQUAL TO 200 FEET EACH SIDE START AT 0 POINT TOWARD 360° RIGHT SIDE OF THE LAW THE UNITED STATE OF AMERICA CONSTITUTION.

ALL INQUIRES BY US MAIL ONLY ADDRES TO,

U . S



RIGHT OF WAY AUTHORITY LAW DEPARTEMENT.

READING COMPANY RAILROAD

AKA 4251/2 NORTH BROAD STREET
Philadelphia, PA 19123

# VERIFICATION

I, IBRAHIM ALY Hereby state that I am the owner of reading company railroad established in1833 and its rights of way knowing as the city of Philadelphia branch reading branch since 2010.

Sit us pursuant to 20pa,cons,stat,amm,7708(c) (3) FOR IT'S TRUST IN CITY OF PHILADELPHIA DEPARTMENT OF RECORDS AS  RR DEED DCC 1956 , AND THE FACTS CONTAINED HEREIN ARE TRUE AND CORREDT TO THE BEST OF MY KNOLEDGE THAT THIS VERIFICATION IS SUBJECT TO THE PENALTIES OF 18 PA,CONS. STATE,AN 4904 RELATING TO UNSWORN FALSIFICATION TO ATHORITES 1972,S.4017

*Right of wo*

*iN GOD we Trust*

*The UNION*

*Of the United states of AMGRi*

*Right of way Authorit*

*Land federal inspact*

*Martia Law*

*oNe Na Nation*

*SAVE*

*owner of the Land*

*of Reading company*

DATED

2o/4

SIGN

# CITY OF PHILADELPHIA
## DEPARTMENT OF RECORDS
INTERNET ACCESS TO PHILADOX-iCRIS
RECORDERS INDEX AND DOCUMENTS

Company Name    READING COMPANY

Company Address    4251/2 NORTH BROAD STREET

City    PHILADELPHIA              State   PA              Zip   19123

Address 2

City                              State              Zip

Company Telephone Number    (215) 459-6044

Company E-mail Address    phillyexpress10@gmail.com

Please Pick Your Company Type From List: Business          << Click Here to Choose

Please Describe Your Business    RAILROAD

Please Describe How You Will Use The System   PRINT MY DEED AND HAVE RESERCH TO THE
COMPANY PAST HISTORY

## NAME OF AUTHORIZED COMPANY REPRESENTATIVE:

First Name  IBRAHIM                    Last Name   ALY

Telephone Number    (215) 459-6044

E-mail Address    rrreadingco@gmail.com

Signature of Authorized Representative


## NAME OF STAFF PERSON AUTHORIZED TO ACCESS PHILADOX iCRIS:

First Name  IBRAHIM                    Last Name   ALY

Telephone Number    (215) 459-6044

E-mail Address    phillyexpress10@gmail.com

SIGNATURE OF STAFF PERSON AUTHORIZED TO ACCESS PHILADOX FOR THE
COMPANY:


RETURN TO:
Commissioner, Department of Records, Room 156 City Hall,
Philadelphia, PA 19107, Attn: iCRIS Application.
Telephone (215) 686-2261. FAX (215) 686-2273.

# STATE OF DELAWARE
## CERTIFICATE OF CHANGE OF REGISTERED
## AGENT OF A FOREIGN CORPORATION

**FIRST:** The name of the corporation (hereinafter called the "corporation") is
READING COMPANY .

**SECOND:** The corporation is incorporated under the laws of the State of
PENNSYLVANIA .

**THIRD:** The address of the Registered Agent in the State of Delaware upon
whom process against this corporation may be served, is changed to _____
AKA 4251/2 NORTH BROAD STREET (street), in the City of
PHILADELPHIA , County of PHILADELPHIA
Zip Code 19123 . The name of the Registered Agent therein and in charge
thereof upon whom process against this Corporation may be served is U.S RIGHT OF
WAY AUTHORITY RAILROAD AND COMMERCE ACT IN 50 STATES .

**FOURTH:** All previous appointments of a registered agent of the corporation
within the State of Delaware are hereby revoked.

**IN WITNESS WHEREOF,** said corporation has caused this certificate to be
signed this ___1___ day of ___6___, A.D. 1969-1985-2008

*The Right of way V. the Commonwealth of Pennsylvania*

*Case #0001-* By: _____
Authorized Officer

Name: _____
Print or Type

# STATE OF DELAWARE
## CERTIFICATE OF CHANGE OF REGISTERED
## AGENT OF A FOREIGN CORPORATION

**FIRST:** The name of the corporation (hereinafter called the "corporation") is
READING COMPANY

**SECOND:** The corporation is incorporated under the laws of the State of
PENNSYLVANIA

**THIRD:** The address of the Registered Agent in the State of Delaware upon whom process against this corporation may be served, is changed to _____
AKA 4251/2 NORTH BROAD STREET
_____ (street), in the City of
PHILADELPHIA , County of PHILADELPHIA
Zip Code 19123 . The name of the Registered Agent therein and in charge thereof upon whom process against this Corporation may be served is U.S RIGHT OF WAY AUTHORITY RAILROAD AND COMMERCE ACT IN 50 STATES

**FOURTH:** All previous appointments of a registered agent of the corporation within the State of Delaware are hereby revoked.

**IN WITNESS WHEREOF**, said corporation has caused this certificate to be signed this ___1___ day of ___6___ , A.D. 1969-1985- 2008

*The Right of Way V. the Commonwealth of Pennsylvania Case # 0001-C*

By: _____
Authorized Officer

Name: _____
Print or Type

# STATE OF DELAWARE
## CERTIFICATE OF REINSTATEMENT
## OF A FOREIGN CORPORATION

The foreign corporation hereby certifies as follows:

1.   The name of the foreign corporation is ____ READING COMPANY ____
_____.

2.   The date of the forfeiture is _____ 1969 _____.

3.   The Registered Office of the foreign corporation in the State of Delaware is
located at DOING BUSINENESS IN ALL 50 STATES OF THE UNION (street), in the City
of ~~the COLUMBUS OHIO~~, Zip Code ~~GREEN STATION~~. The name of the
Registered Agent at such address upon whom process against this foreign corporation
may be served is ____ U.S. RIGHT OF WAY AUTHORITY ____
AKA 4251/2 NORTH BROAD STREET PHILADELPHIA, PA 19123 _____.

District of D.C be state because it is the capital of U.S
No Rights to be state because it is the capital of U.S
No Rights to to separated constitution scince 1862
united because it is under the     By: owner & Trustor to the
state of America constitution    Land & the Flage
                                              Authorized Officer
                                          the united state of America
+ the ✗ ✗ ✗ jurydication Name: Constitution & the
                    of u.s. congress act   Bill of Rights
                                               Print or Type
    violation

IBRAHIM ALY

the united state of America
capital Trustor
washington D.C
    the capital
of the union and
the only flag is Authorize
is the Flage of the union
in any Building Goverment

correction
in accordance to
the
supreed
of the flag
the united state of
America constitution
+ the Flag &
Bill of Rights
of the union
of the united
states of AMERICA
of the 50 states

reading company railroad since 1838 is back from bank-rupt aka 4251/2 north broad stree...   Page 1 of 1

You are using a version of Internet Explorer which Gmail no longer supports. Some features may not work correctly. Upgrade to a modern browser, such as Google Chrome.
Dismiss

*Ibrahem                    Share

Gmail                                                    More                          19 of 437

COMPOSE                Free Scores Now - 3 Bureau Credit Report - View your latest Credit Scores from all 3 bureaus in 60 seconds for $0(          Why this ad?

Inbox (197)            reading company railroad since 1838 is back from bank-rupt          US Department of Transp...
Starred                aka 4251/2 north broad street philadelphia,pa19123 [Incident:
Important              140107-000084]          Inbox   x                                 Add to circles
Sent Mail
Drafts (4)                                                                               Show details
Circles                US Department of Transportation Reference Service <nt          Jan 9
Personal               to me                                                                            Ads
Travel
More                                                                                     FREE SCORES NOW
                       Recently you requested assistance from the US Department of Transportation. Below
                       is our response to your request                                   3 Bureau Credit
Search people...                                                                         Report
                       If this issue is not resolved to your satisfaction, you may reopen it within the next 0
blackdragon            days.                                                             View your latest Credit Scores
information                                                                              from all 3 bureaus in 60 seconds
libertytrain1          Thank you for allowing us to be of service to you                 for $0!
lovemypainter
mailtorclayton           Subject                                                         Start Your VA Home Loan
Nick Hamner            reading company railroad since 1838 is back from bank-rupt aka 4251/2 north broad          See If You Qualify for a VA Loan -
noreply                street philadelphia,pa19123                                       Get a Quote in 2 Minutes!
sale-nu7c8-26543                                                                         www.vamortgagecenter.com
show                     Discussion Thread
                       Response Via Email (US DOT Reference Service)          01/09/2014 12:31 PM          Debt Consolidation Loans
                       Your best option is to contact the Federal Railroad Administration.          Pay Only a Portion of Your Balance!
                                                                                         $15K+ Debt to Qualify. Feat. on CNN
                       For Regional Office and Washington, DC Headquarters contacts, please see



City of Philadelphia
Department of
Licenses & Inspections
P.O. Box 53310
Philadelphia, Pa. 19105

| OCCUPATIONAL |
| LICENSEE ONLY |
| |
| PASTE YOUR |
| PHOTOGRAPH HERE |
| |
| 1 1/2" SQUARE |

## DISPLAY PROMINENTLY

if required by law

READING CO RIGHTS OF WAY
ALY IBRAHIM
425 1/2 NORTH BROAD STREET
PHILADELPHIA PA 19123

3702    COMMERCIAL ACTIVITY LICENSE
ALY IBRAHIM

THIS LICENSE IS GRANTED TO THE PERSON AND LOCATION FOR THE PURPOSE STATED ABOVE.
IT IS SUBJECT TO IMMEDIATE CANCELLATION BY THIS DEPARTMENT FOR VIOLATIONS OF
CITY ORDINANCES AND REGULATIONS.  INQUIRIES 311 (215-686-8686).

| LICENSE CODE | LICENSE NO. | BUSINESS TAX NO. | DOES NOT EXPIRE | PAID THIS AMOUNT | ON DATE |
|---|---|---|---|---|---|
| 3702 | 401633 | 8774267 | | 250.00 | 03/02/07 |

# LICENSE



**Dun & Bradstreet**

C R E D I B I L I T Y   C O R P

# BUSINESS CREDIT NOTIFICATION

Business Executive
Rr Reading Railroad
425 1/2 N Broad St
Philadelphia, PA 19123-3627

Dear Business Executive:

Rr Reading Railroad
D&B D-U-N-S® Number: 12-293-1520

You are receiving this notification because the following status has been noted by D&B® in your D&B business credit profile.

**Activity: Delinquency Predictor Score Increase**

*Please call Dun & Bradstreet Credibility Corp. toll-free at 1-877-683-6648 to find out how this change affects your business.*

Understanding how other companies use your business data can help you identify ways to improve your business credit profile, which can make it easier to secure loans, mortgages, equipment leases, and supplier terms for your business.

We recommend using our **CreditMonitor™** solution to help you understand the information that is available to companies who purchase your business credit report.

You will receive 24/7 online access to:

Please contact a Dun & Bradstreet Credibility Corp. **credit profile** to accurately report changes or discrepancies about our **CreditMonitor** solution. Other information such as suits, liens and judgments **9 PM EST.** Please reference your D&B D-U-N-S Number. You can reach a Credit Advisor today to review your credit profile and to learn **1-877-683-6648, Monday – Friday, 8 AM** – Sincerely,

Dun & Bradstreet Credibility Corp.
**1-877-683-6648**



© Dun & Bradstreet Credibility Corp., 2014. All rights reserved.

22761 Pacific Coast Highway, Malibu, California 90265   |   DandB.com

DMDPINC-D C-1-14-05-045-000000923

457 F.2d 683

In the Matter of the NEW YORK, NEW HAVEN AND HARTFORD
RAILROAD COMPANY, Debtor.

Nos. 372, 373, 374, Dockets 71-1903, 71-1929, 71-2024.

United States Court of Appeals,
Second Circuit.

Argued Jan. 3, 1972.
Decided March 17, 1972.


On June 21, 1971 eight days before the Supreme Court's decision was announced, Penn
Central filed a petition for reorganization in the Eastern District of Pennsylvania.
The petition was approved the same day and the district court issued an order
restraining and enjoining all persons "from interfering with, seizing, converting,
appropriating, attaching, garnisheeing, levying upon, or enforcing liens upon, or
in any manner whatsoever disturbing any portion of the assets . . . properties or
premises belonging to, or in the possession of the Debtor [Penn Central] . . . and
from commencing or continuing any proceeding against the Debtor" with certain
exceptions not here relevant.

I — Reading Company Corp ── Law

II — Deed ──→ 8(1)(0), 8 + Qb A

III — the Land   Amtrack 8 Conrail ──→ Attach to
                                          the Deed

IIII — American premier (Whistington Trust)
        in Matter of England   "Insurance"
            Penn Central Holding



Delaware.gov | Text Only

Governor | General Assembly | Courts | Elected Officials | State Agencies

**Department of State: Division of Corporations**

**HOME**
About Agency
Secretary's Letter
Newsroom
Frequent Questions
Related Links
Contact Us
Office Location

**SERVICES**
Pay Taxes
File UCC's
Delaware Laws Online
Name Reservation
Entity Search
Status
Validate Certificate
Customer Service
Survey

**INFORMATION**
Corporate Forms
Corporate Fees
UCC Forms and Fees
Taxes
Expedited Services
Service of Process
Registered Agents
Get Corporate Status
Submitting a Request
How to Form a New
Business Entity
Certifications, Apostilles
& Authentication of
Documents

Privacy Policy    Frequently Asked Questions    View Search Results

## Entity Details

THIS IS NOT A STATEMENT OF GOOD STANDING

| | | | |
|---|---|---|---|
| | | Incorporation Date / Formation Date: | 09/27/1928 (mm/dd/yyyy) |
| File Number: | 1002015 | | |
| Entity Name: | READING COMPANY | | |
| Entity Kind: | CORPORATION | Entity Type: | GENERAL |
| Residency: | FOREIGN | State: | PA |

### REGISTERED AGENT INFORMATION

| | | | |
|---|---|---|---|
| Name: | INACTIVE AGENT ACCOUNT | | |
| Address: | SECRETARY OF STATE TOWNSEND BLDG | | |
| City: | DOVER | County: | KENT |
| State: | DE | Postal Code: | 199011234 |
| Phone: | (302)739-3138 | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status ○ Status,Tax & History Information    Submit

Back to Entity Search

To contact a Delaware Online Agent click here.

site map  |  about this site  |  contact us  |  translate  |  delaware.gov

FORM OF CERTIFICATION TO BE USED
AS REQUIRED BY CITY OF PHILADELPHIA
REAL ESTATE TRANSFER TAX ORDINANCE

GERARD E. SONNTAG _____ certifies that he is connected with
(Name)

the transaction entered into between READING COMPANY, ET AL % HARRY K. YENTZER,
EASTERN REAL ESTATE COMPANY, (Grantor)
ONE PLYMOUTH MEETING, * and PHILADELPHIA ELECTRIC COMPANY
(Address of grantor) (Grantee)

2301 MARKET ST. PHILA. PA. with regard to which this certificate is given in the capacity of
(Address of grantee)

GRANTEE _____ and that the true, full and complete consideration of such

transaction, including liens and other encumbrances, is TWENTY THREE THOUSAND NINE Dollars.
HUNDRED and EIGHT
($ 23,908.00 ). FOR THE EASEMENT IN THE CITY OF PHILADELPHIA

The highest assessed value of said real estate for local tax purposes is EASEMENT

_____ Dollars ($ _____ ).
EASEMENT
The fair value of the property is _____ Dollars ($ 23,908.00 ).

If the above transaction is not taxable in whole or in part, give detailed explanation in this space.

* PLYMOUTH MEETING, PA 19462

THE VALUE OF THE EASEMENT IN THE CITY
OF PHILADELPHIA IS $ 23,908.00.
U.S.
RR Right of way Authority                    will be we from
federal Regestery                             the 1980 or
2015 violation → All the RealeStats Hold by  2015
by EASTERN Real EStats Company
I hereby certify that the statements contained herein are true and correct to the best of my knowledge

and belief. I understand that if I knowingly make any false statement herein I am subject to such penalties as may

be prescribed by law or ordinance.

Gerard E. Sonntag
(Signature)
Consultant - Real Estate Division
Philadelphia Electric Company

82-127

FIRST AMENDMENT TO LEASE

This First Amendment to Lease is made as of this 30th day of January, 1979, by and between ANDREW L. LEWIS, JR. and JOSEPH L. CASTLE, Trustees of the property of Reading Company, Debtor, and the North Pennsylvania Railroad Company (herein collectively referred to as the "Lessor") and WILDER INDUSTRIES, INC. ("Lessee").

RECITALS:

A. By Lease dated December 29, 1967, the Reading Company, lessee of the North Pennsylvania Railroad, and Marie G. Brown and Gertrude S. Greberman, copartners, entered into a Lease Agreement (the "Lease") for premises (the "demised premises"), located at 2nd and Erie Avenues, Philadelphia, Pennsylvania (as more fully described in the Lease).

B. On the 23rd day of November, 1971, the Reading Company filed for reorganization under Section 77 of the Bankruptcy Act, as amended, and, subsequently, Andrew L. Lewis, Jr. and Joseph L. Castle were appointed Trustees of the property of the Reading Company.

C. By agreement dated April 1, 1976 between the North Pennsylvania Railroad Company and Andrew L. Lewis, Jr. and Joseph L. Castle, Trustees of the property of Reading Company, Debtor and The North Pennsylvania Railroad Company empowered the Trustees to perform all duties normally associated with the management, operation and maintenance of it's properties.

D. By agreement made November 1, 1976, between Andrew L. Lewis, Jr. and Joseph L. Castle, Trustees of the property of Reading Company, Debtor and Eastern Real Estate Company, the Trustees empowered Eastern Real Estate Company to operate and manage the real estate of Reading Company and its former Lessors.

E. By assignment dated January 30, 1979, Marie G. Brown and Gertrude S. Greberman assigned all of their right title and interest in and to the Lease to Lessee.

D-1871-571

### FORM OF CERTIFICATION TO BE USED
### AS REQUIRED BY CITY OF PHILADELPHIA
### REAL ESTATE TRANSFER TAX ORDINANCE

Kenneth J. Gettlin _____ certifies that he is connected with

(Name)

the transaction entered into between __Consolidated Rail Corporation__

Six Penn Center Plaza  Phila,  PA  19104 __and__  The North Pennsylvania Rail Road Company and

(Address of grantor)

2118 Two Girad Plaza  Phila., PA                    Trustees of Reading Company

(Address of grantee)   (Grantee)

with regard to which this certificate is given in the capacity of

_AGENT  FOR  GRANTEE_ _____ and that the true, full and complete consideration of such

transaction, including liens and other encumbrances, is __Two Hundred__ _____ Dollars.

($ __200.00__ ).

The highest assessed value of said real estate for local tax purposes is __Not Separately assessed__

_____ Dollars ($ _____ ).

The fair value of the property is __Two Hundred__ ____ Dollars ($ __200.00__ ).

If the above transaction is not taxable in whole or in part, give detailed explanation in this space.

*the North pensylVania RailRoad Company*

*Trusteos of*

*Reading Company*

I hereby certify that the statements contained herein are true and correct to the best of my knowledge and belief.  I understand that if I knowingly make any false statement herein I am subject to such penalties as may be prescribed by law or ordinance.

810-35-182

_____
(Signature)

009094

# City of Philadelphia  Water/Sewer Bill

Questions? Call: 215-686-6880

**Water Revenue Bureau**
Philadelphia Revenue Department
1401 JFK Boulevard Phila., PA 19102-1663

## Account Information

| | | | |
|---|---|---|---|
| Customer Name | IBRIHIM E ALY | Billing Date | 04/16/15 |
| Service Address | 425 N BROAD ST | Includes Payments through | 04/16/15 |
| Account Number | 011-19140-00425-A01 | | |

| Previous Balance | Payments/Adjustments | Charges | Account Balance | Payment Due |
|---|---|---|---|---|
| $587.65 | $3.31 | $13.01 | $603.97 | $603.97 |

## Service Information

| | | |
|---|---|---|
| Previous Account Balance | | **$587.65** |
| Payments/Adjustments | | **$3.31** |
| Late Payment Penalty | $3.31 | |
| **Current Charges** | | **$13.01** |
| Service Charge | $13.01 | |
| **Total Account Balance** | | **$603.97** |

Usage History

*(Usage History chart, vertical axis 0.0 to 1.0; horizontal axis A M J J A S O N D J F M A)*

| *Please Pay this Amount* | $603.97 |
|---|---|

| Meter Number | ERT Number | Service | From Reading | | To Reading | | Usage (ccf) |
|---|---|---|---|---|---|---|---|
| 0543380 | 0020494397 | 41R | 03/17/15 | 114 E | 04/16/15 | 114 E | 0 |

## Message

PAY BY PHONE (877) 309-3709; CREDIT CARD OR E-CHECK AT WWW.PHILA.GOV. Select Water Bill from Pay menu options.

If your check is returned unpaid for insufficient or uncollected funds, (1) you authorize eCollect, LLC to make a one-time electronic funds transfer from your account to collect a fee of $20; and (2) eCollect, LLC may re-present your check electronically to your depository institution for payment.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## Mail this portion with payment

**Water/Sewer Bill**

Account Number: 011-19140-00425-A01

| | |
|---|---|
| Total Due by 05/08/15 | $603.97 |
| Penalty | $3.61 |
| Total Due after 05/18/15 | $607.58 |

IBRIHIM E ALY
1/2
425 N BROAD ST
PHILADELPHIA PA 19123-3627

011  

3337205181500001914000425101100000607580000060397011000010000000019

Make checks payable to: Water Revenue Bureau

# West Virginia Secretary of State — Online Data Services

**Business and Licensing**

Online Data Services Help

# Business Organization Detail

*NOTICE: The West Virginia Secretary of State's Office makes every reasonable effort to ensure the accuracy of information. However, we make no representation or warranty as to the correctness or completeness of the information. If information is missing from this page, it is not in the The West Virginia Secretary of State's database.*

## AMERICAN PREMIER UNDERWRITERS, INC.

### Organization Information

| Org Type | Effective Date | Filing Date | Charter | Class | Sec Type | Termination Date | Termination Reason |
|---|---|---|---|---|---|---|---|
| C | Corporation | 9/5/1922 | 9/5/1922 | Foreign | Profit | | | |

### Organization Information

| | | | |
|---|---|---|---|
| **Business Purpose** | 5242 - Finance and Insurance - Insurance Carriers and Related Activities - Agencies, Brokerages and Other Insurance Related Activities | **Capital Stock** | 0.0000 |
| **Charter County** | | **Control Number** | 0 |
| **Charter State** | PA | **Excess Acres** | 276495 |
| **At Will Term** | | **Member Managed** | |
| **At Will Term Years** | | **Par Value** | 0.0000 |
| **Authorized Shares** | 0 | | |

## Addresses

| Type | Address |
|---|---|
| **Local Office Address** | 301 E. 4TH ST<br>15TH FLOOR<br>CINCINNATI, OH, 45202 |
| **Mailing Address** | 301 E. 4TH ST<br>15TH FLOOR<br>CINCINNATI, OH, 45202<br>USA |
| **Notice of Process Address** | CT CORPORATION SYSTEM<br>5400 D BIG TYLER ROAD<br>CHARLESTON, WV, 25313 |
| **Principal Office Address** | 301 E. 4TH ST<br>15TH FLOOR<br>CINCINNATI, OH, 45202<br>USA |
| **Type** | **Address** |


## Officers

| Type | Name/Address |
|---|---|
| **Director** | KARL J. GRAFE<br>301 E. 4TH ST<br>CINCINNATI, OH, 45202 |
| **Director** | VITO C. PERAINO<br>301 E. 4TH ST<br>CINCINNATI, OH, 45202 |
| **President** | VITO C. PERAINO<br>301 E. 4TH ST<br>CINCINNATI, OH, 45202 |
| **Secretary** | KARL J. GRAFE<br>301 E. 4TH ST<br>CINCINNATI, OH, 45202 |
| **Treasurer** | DAVID WITZGALL<br>301 E. 4TH ST<br>CINCINNATI, OH, 45202 |
| **Vice-President** | H. KIM BAIRD<br>301 E. 4TH ST<br>CINCINNATI, OH, 45202 |
| **Type** | **Name/Address** |

*Time for fraud + corruption*

| Date | Amendment |
|------|-----------|
| 4/19/1994 | CHANGE OF NAME TO AMERICAN PREMIER UNDERWRITERS, INC. FROM PENN CENTRAL CORPORTION (THE) |
| 5/17/1989 | AMENDMENT TO ARTICLES OF AMENDMENT |
| 7/20/1987 | AMENDMENT TO THE ARTICLES OF INCORPORTION: REDUCING STOCK TO 23,152,474 SHARES OF PERFERRED STOCK AND 100,000,000 SHARES OF COMMON STOCK AT $1.00 PAR VALUE. |
| 5/8/1986 | AMENDMENT: TO ARTICLES FILED |
| 4/30/1986 | AMENDMENT TO ARTICLES. |
| 5/9/1985 | AMENDMENT |
| 9/21/1983 | AMENDMENT: TO THE ARTICLES OF INCOROPRATION |
| 4/7/1983 | AMENDMENT: TO THE ARTICLES OF INCORPORATION 08/01/1983 2 AMENDMENTS FILED TO THE ARTICLES OF INCORPORATION |
| 1/31/1983 | MERGER: MERGING PENNSYLVANIA TUNNEL AND TERMINAL RAILROAD COMPANY, WITH AND INTO THE PENN CENTRAL CORPORATION, THE SURVIVOR |
| 8/2/1982 | AMENDMENT: TO THE ARTICLES OF INCORPORATION $85.00 FOR COPY OF CHARTER |
| 2/5/1982 | MERGER: MERGING UNION DEPOT COMPANY WITH AND INTO THE PENN CENTRAL CORPORATION, THE SURVIVOR ACTUALLY FILED ON 1-29-1982 |
| 2/4/1982 | MERGER: MERGING NORTHERN CENTRAL RAILWAY COMPANY WITH AND INTO THE PENN CENTRAL CORPORATION, THE SURVIVOR ACTUALLY FILED ON 1-29-1982 |
| 2/3/1982 | MERGER: MERGING PITTSBURGH, FORT WAYNE AND CHICAGO RAILWAY COMPANY WITHA ND INTO THE PENN CENTRAL CORPORATION, THE SURVIVOR ACTUALLY FILED ON 1-29-1982 |
| 2/2/1982 | MERGER: MERGING THE LITTLE MIAMI RAILROAD COMPANY WITH AND INTO THE PENN CENTRAL CORPORATION, THE SURVIVOR ACTUALLY FILED ON 1-29-1982 |
| 2/1/1982 | MERGER: MERGING NEW YORK CONNECTING RAIL ROAD COMPANY, WITH AND INTO THE PENN CENTRAL CORPORATION, THE SURVIVOR ACTUALLY FILED ON 1-29-1982 |
| 1/31/1982 | MERGER: MERGING THE HUDSON RIVER BRIDGE COMPANY AT ALBANY WITH AND INTO THE PENN CENTRAL CORPORATION, THE SURVIVOR ACTUALLY FILED ON 1-29-1982 |
| 1/30/1982 | MERGER: MERGING THE 51ST ST. REALTY CORPORATION, WITH AND INTO THE PENN CENTRAL CORPORATION, THE SURVIVOR ACTUALLY FILED ON 1-29-1982 |

*Audit*

| Date | Description |
|---|---|
| 1/29/1982 | MERGER: MERGING THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY, WITH AND INTO THE PENN CENTRAL CORPORATION, THE SURVIVOR |
| 7/27/1981 | AMENDMENT: TO THE ARTICLES OF INCORPORATION |
| 2/28/1980 | MERGER: MERGED SHAMOKIN VALLEY AND POTTSVILLE RAILROAD COMPANY, A PA CORP. NOT QUAL. IN WV, WITH AND INTO THE PENN CENTRAL CORPORATION ACTUALLY FILED ON 2-20-1980 |
| 2/27/1980 | MERGER: MERGED THE CONNECTING RAILWAY COMPANY, A PA CORP. NOT QUAL IN WV, WITH AND INTO THE PENN CENTRAL CORPORATION, THE SURVIVOR ACTUALLY FILED ON 2-20-1980 |
| 2/26/1980 | MERGER: MERGED THE DELAWARE RAILROAD COMPANY, A DE CORP., NOT QUAL IN WV, WITH AND INTO THE PENN CENTRAL CORPORATION, THE SURVIVOR ACTUALLY FILED ON 2-20-1980 |
| 2/25/1980 | MERGER: MERGED ERIE AND PITTSBURG RAILROAD COMPANY, A PA CORP., NOT QUAL IN WV, WITH AND INTO THE PENN CENTRAL CORPORATION, THE SURVIVOR--ACTUALLY FILED ON 2-20-1980 |
| 2/24/1980 | MERGER: MERGING NEW YORK GENERAL DEVELOPMENT CORPORATION, A DE CORP., NOT QUAL IN WV, WITH AND INTO THE PENN CENTRAL CORPORATION, THE SURVIVOR-- ACTUALLY FILED ON 2-20-1980 |
| 2/23/1980 | MERGER: MERGED PENNDEL COMPANY, A DE CORP., NOT QUAL IN WV, WITH AND INTO THE PENN CENTRAL CORPORATION, THE SURVIVOR ACTUALLY FILED ON 2-20-1980 |
| 2/22/1980 | MERGER: MERGED PENNDIANA IMPROVEMENT CORPORATION, AN IN CORP., NOT QUAL IN WV, WITH AND INTO THE PENN CENTRAL CORPORATION, THE SURVIVOR-- ACTUALLY FILED ON 2-20-1980 |
| 2/21/1980 | MERGER: MERGED PENNSYLVANIA AND ATLANTIC RAILROAD COMPANY, A NJ CORP., NOT QUAL IN WV, WITH AND INTO THE PENN CENTRAL CORPORATION, THE SURVIVOR--ACTUALLY FILED ON 2-20-1980 |
| 2/20/1980 | MERGER: MERGED THE PHILADELPHIA, BALTIMORE, AND WASH- INGTON RAILROAD COMPANY, A DEL CORP. NOT QUAL. IN WV, WITH AND INTO THE PENN CENTRAL CORPORATION, THE SURVIVOR |
| 2/19/1980 | MERGER: MERGED PITTSBURG, YOUNGSTOWN & ASHTUABULA RAILWAY COMPANY, AN OH CORP., NOT QUAL IN WV, WITH AND INTO THE PENN CENTRAL CORPORATION, THE SURVIVOR ACTUALLY FILED ON 2-20-1980 |
| 2/18/1980 | MERGER: MERGED THE CLEVELAND PITTSBURGH RAILROAD COMPANY, A PA CORP., NOT QUALIFIED IN WEST VIRGINIA WITH AND INTO THE PENN CENTRAL CORPORATION, THE SURVIVOR ACTUALLY FILED ON 2-20-1980 |

*(Handwritten annotations in left and right margins: "2015", "Under this", "Right of Way authority", "line", "2010", "Awite")*

| Date | Amendment |
|---|---|
| 2/17/1980 | MERGER: MERGED CHICAGO AND HARRISBURG COAL COMPANY, AN IL CORP., NOT QUALIFIED IN WEST VIRGINIA WITH AND INTO THE PENN CENTRAL CORPORATION FILED ORIGINALLY ON 2-20-1980 |
| 7/25/1979 | AMENDMENT: RESTATING THE ARTICLES OF INCORPORATION |
| 6/22/1979 | MERGER: MERGING MANOR REAL ESTATE COMPANY, A PA CORP., WITH AND INTO THE PENN CENTRAL CORPORATION, THE SURVIVOR |
| 10/24/1978 | CHANGE OF NAME: NAME CHANGED FROM PENN CENTRAL TRANSPORATION COMPANY TO THE PENN CENTRAL CORPORATION FILED |
| 10/16/1978 | AMENDMENT: ARTICLES OF AMENDMENT |
| 11/17/1969 | CHANGE OF NAME: FROM PENN CENTRAL COMPANY TO PENN CENTRAL TRANSPORTATION COMPANY; AMENDMENT: RESTATED CERTIFICATE OF INCORPORATION (ROLL 29) |
| 5/16/1968 | CHANGE OF NAME: FROM PENNSYLVANIA NEW YORK CENTRAL TRANSPORTATION COMPANY TO PENN CENTRAL COMPANY (ROLL 11) |
| 2/10/1968 | (CONT'D FROM ABOVE) FROM THE PENNSYLVANIA RAILROAD COMPANY TO PENNSYLVANIA NEW YORK CENTRAL TRANSPORTATION COMPANY (ROLL 8) |
| 2/9/1968 | MERGER AND CHANGE OF NAME: THE NEW YORK CENTRAL RAILROAD COMPANY, A DE CORP., MERGED WITH AND INTO THE PENNSYLVANIA RAILROAD COMPANY, THE SURVIVOR, WHICH CHANGED ITS NAME IN SAID MERGER FROM (CONT'D) |
| 2/15/1962 | CONDITIONAL SALE AGREEMENT: PARAGON BRIDGES & STEEL CO. AGREEMENT & ASSIGNMENT (BOOK 205 PAGE 185) (TWO OF THESE CONDITIONAL SALE AGREEMENTS FILED) |
| 3/27/1958 | AMENDMENT: CERTIFICATE OF DECREASE OF AUTHORIZED CAPITAL STOCK (BOOK 224 PAGE 97) |
| Date | Amendment |

*(handwritten annotations: "No Right" next to 6/22/1979; "No Right to chang Name" next to 10/24/1978 entry)*

## Annual Reports

| Date | Filed For |
|---|---|
| 6/9/2014 | 2015 |
| 6/6/2013 | 2014 |
| 6/13/2012 | 2013 |
| 5/31/2011 | 2012 |

*(handwritten: "2016 U.S Right of Way Authority Sized all land grand Track Line for the owner Reading Company")*

Case 1:16-cv-00381-JEJ   Document 1-2   Filed 02/17/16   Page 69 of 90

| Date | Filed For |
|---|---|
| **6/2/2010** | 2011 |
| **6/9/2009** | 2010 |
| **8/21/2008** | 2009 |
| **10/17/2007** | 2008 |
| **5/23/2007** | 2007 |
| **10/5/2005** | 2006 |
| **9/22/2004** | 2005 |
| **7/22/2004** | 2004 |
| **10/9/2002** | 2003 |
| **8/10/2001** | 2002 |
| **9/30/2000** | 2001 |
| | 2000 |
| | 1999 |

For more information, please contact the Secretary of State's Office at 304-558-6000.

Monday, June 9, 2014 — 1:34 PM

© 2014 State of West Virginia

*words*

*Grantor + Grantee*

TOGETHER with all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in any wise appertaining and the reversion and reversions, remainder and remainders, rents, issues and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of the said Grantor, as well at law as in equity or otherwise howsoever, of, in and to the same and every part thereof.

TO HAVE AND TO HOLD all and singular the said premises together with the appurtenances, unto the Grantee, the heirs or successors and assigns of the Grantee forever, RESERVING AND SUBJECT as aforesaid.

Penn Central Properties, Inc. is the owner of the said premises and The Penn Central Corporation is the holder of record title thereto in order to secure the payment of the purchase price in a sale of said premises and other property in Pennsylvania by The Penn Central Corporation to Penn Central Properties, Inc.

The words "Grantor" and "Grantee" used herein shall be construed as if they read "Grantors" and "Grantees", respectively, whenever the sense of this Indenture so requires and whether singular or plural, such words shall be deemed to include in all cases the successors and assigns of the respective parties.

IN WITNESS WHEREOF, the Grantor has caused this *Indenture* to be executed the day and year first above written.

SEALED AND DELIVERED                PENN CENTRAL PROPERTIES, INC.
in the presence of us:

*Karen Plogsted*                By: _____
                                    HUGH J. W. BRANDT
*Ysette Carter*                     Vice President

                                Attest: _____
                                    PAMELA S. MEYERS
                                    Secretary

                                THE PENN CENTRAL CORPORATION

*Karen Plogsted*                By: _____
                                    HUGH J. W. BRANDT
*Ysette Carter*                     Director - Real Estate

                                Attest: _____
                                    PAMELA S. MEYERS
                                    Assistant Secretary

*Violation*

BOOK 1731 PAGE 492

-5-

THIS INDENTURE made the 16th day of April in the year of our Lord One Thousand Nine Hundred and Eighty-four (1984).

FROM PENN CENTRAL PROPERTIES, INC., a Pennsylvania corporation, having offices at 1700 Market Street, Philadelphia, Pennsylvania 19103, and THE PENN CENTRAL CORPORATION, a Pennsylvania corporation, having offices at 245 Park Avenue, New York, New York 10167 (both corporations being hereinafter sometimes collectively referred to as the "Grantor"), to YORK HAVEN POWER COMPANY, a Pennsylvania corporation, having a mailing address of P.O. Box 542, Reading, Pennsylvania 19640, (hereinafter referred to as the "Grantee");

WITNESSETH: That the Grantor, for and in consideration of the sum of THIRTY THOUSAND EIGHT HUNDRED DOLLARS ($30,800.) lawful money of the United States of America, unto the Grantor well and truly paid by the Grantee, at or before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, does by these presents, remise, release and forever quitclaim unto the Grantee, all right, title and interest of the Grantor of, in and to the premises described in Schedule "A" attached hereto and made a part hereof.

2015
End of the
quitclaim
Deed
to ALL parties

BOOK 495 PAGE 111

RECEIVED
RECORDER'S OFFICE
DAUPHIN COUNTY,
PENNA.
Mar 23  4 20 PM '84

*Violation*
*No Right*

Bargain and Sale - PA

THIS INDENTURE made the 27th day of May (1981), in the year of our Lord one thousand nine hundred and eighty-one (1981),

BETWEEN THE PENN CENTRAL CORPORATION, a Pennsylvania corporation, and THE NORTHERN CENTRAL RAILWAY COMPANY, a corporation of the States of Maryland and Pennsylvania, each having an office at 1700 Market Street, Philadelphia, Pennsylvania 19103,

hereinafter referred to as the Grantor, and AMOS E. SUNDY, Singleman, whose mailing address is 101 Erie Street, Dauphin, Pennsylvania 17018,

RECEIVED
RECORDER'S OFFICE
DAUPHIN COUNTY
PENNA.
Jun 19 2 46 PM '81
7070

hereinafter referred to as the Grantee;

WITNESSETH: That the said Grantor, for and in consideration of the sum of SEVEN THOUSAND DOLLARS ($7,000.00)-------------------- lawful money of the United States of America, unto the said Grantor well and truly paid by the said Grantee, at or before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, does by these presents convey, confirm, transfer and set over unto the said Grantee, the heirs or successors and assigns of the said Grantee, the premises described in Schedule "A" attached hereto and made a part hereof, without warranty or covenant, express or implied, of any kind whatsoever.

BOOK 222 PAGE 109



COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF REVENUE

REALTY
TRANSFER    DEC 27 '89
TAX         $40.00
PB. 31149

Lower Swatara Township & Middletown
Dauphin County, Penna.
Real Estate Transfer Tax
12-27-89    27.00
Mary E. Baum
Collecting Agent

C852347
Ex.D'

**DEED OF EASEMENT**

KNOW ALL MEN BY THESE PRESENTS, that PENN CENTRAL PROPERTIES, INC., a Pennsylvania corporation, having an office at 1700 Market Street, Philadelphia, Pennsylvania 19103, and THE PENN CENTRAL CORPORATION, a Pennsylvania corporation, having an office at 245 Park Avenue, New York, New York 10167 (hereinafter collectively called "Grantor"), in consideration of Ten Dollars ($10.00) and other good and valuable consideration, receipt of which is hereby acknowledged, and intending to be legally bound hereby, hereby grants, insofar as its title permits it so to do, and without covenants or warranties of any kind, unto ARCO PIPELINE COMPANY, a Delaware corporation, whose address is ARCO Building, Independence, Kansas 67301 (hereinafter called "Grantee"), its successors and assigns, the free, uninterrupted and perpetual right, privilege and easement (the "APL EASEMENT"), to use, maintain inspect, operate, repair, replace, and renew the existing 6 inch petroleum product pipeline, with existing fittings, valves, cathodic protection equipment and related appurtenances under and across that certain parcel of land situated in the Borough of Highspire and the Township of Lower Swatara, County of Dauphin and Commonwealth of Pennsylvania, together with those certain rights and powers to convey the APL EASEMENT heretofore reserved to Grantor; it being intended by Grantor to grant hereby all Grantor's right, title and interest in and to the APL EASEMENT and related rights and powers as it pertains to the occupation of Grantee herein only, and to convey the same pursuant

BOOK 450 PAGE 243



**KNOW ALL MEN BY THESE PRESENTS,** that THE PENN CENTRAL CORPORATION, a Pennsylvania corporation having offices at 1700 Market Street, Philadelphia, Pennsylvania 19103 (hereinafter called Grantor), for and in consideration of the sum of Two Thousand Five Hundred Dollars ($2,500.00) received to the Grantor's full satisfaction of BELL TELEPHONE COMPANY OF PENNSYLVANIA, a Pennsylvania corporation whose address is Strawberry Square, Harrisburg, Pennsylvania 17101 (hereinafter called Grantee), does hereby GRANT, insofar as it lawfully may, without warranties or covenants of any kind, unto said Grantee, its successors and assigns, forever, the perpetual right, privilege and easement to maintain, inspect, operate, replace, reconstruct, remove and repair the existing communication line together with existing fixtures, equipment and appurtenances for communication network purposes, above a portion of the premises, situated partly in the Township of Middle Paxton and partly in the Borough of Dauphin, County of Dauphin, Commonwealth of Pennsylvania, conveyed by The Penn Central Corporation and The Northern Central Railway Company to Amos E. Sundy by deed dated May 27, 1981, and recorded in the office of the Recorder of Deeds of Dauphin County, in Book 222, Page 109.

Said easement and right to convey same were reserved unto The Penn Central Corporation and The Northern Central Railway Company, which company did merge into The Penn Central Corporation on December 31, 1981, their successors and assigns, in said deed dated May 27, 1981.

THIS DEED is delivered by Grantor and accepted by Grantee upon the understanding and agreement that should any claim adverse to the title hereby quitclaimed be asserted and/or proved, no recourse shall be had against the Grantor.

APPROVED
General Manager-Operations

BOOK 275 PAGE 244

*(handwritten: 4/5  [203] AFEr   Right of way Authority)*

Home > Railroad & Trolley > Railroad and Trolley (R – T) > Reading Company

Reading Company

*(handwritten: Vil Reading Interlement   Name of the Insurance Company)*

The Reading Company, usually called the Reading Railroad, and officially known as the Philadelphia and Reading Rail Road and then the Philadelphia and Reading Railway until 1924, operated in southeast Pennsylvania and neighboring states. Contrary to its spelling, it is actually pronounced 'redding'. Until the decline in anthracite loadings in the Coal Region after World War II, it was one of the most prosperous corporations in the United States. However, the reduced coal traffic, coupled with highway competition and short hauls, forced it into bankruptcy in the 1970s. The Reading Company's railroad was merged into Conrail in 1976, but the corporation lasted into 2000 disposing of real estate holdings.

Since the railroad served Atlantic City, New Jersey, Reading Railroad is also a property in the popular board game Monopoly.

*(handwritten: Very Important)*

History

The Philadelphia and Reading Rail Road was chartered April 4, 1833 to build a line between its namesake cities, Philadelphia and Reading, alongside the Schuylkill River. The part from Reading to Norristown opened July 16, 1838, and the full line opened December 9, 1839. Its Philadelphia terminus was at the state-owned Philadelphia and Columbia Railroad on the west side of the Schuylkill River, from which it ran east on the P&C over the Columbia Bridge and onto the city-owned City Railroad to a depot at the southeast corner of Broad and Cherry Streets.

An extension northwest from Reading to Mount Carbon, also on the Schuylkill River, opened on January 13, 1842, allowing the railroad to compete with the Schuylkill Canal. At Mount Carbon it connected with the earlier Mount Carbon Railroad, continuing through Pottsville to several mines, and would be extended to Williamsport. On May 17 of that year, a freight branch from West Falls to Port Richmond on the Delaware River north of downtown Philadelphia opened. Port Richmond later became a very large coal terminal.

*(handwritten: Vi's the Landmark RR)*

On January 1, 1851 the Belmont Plane on the Philadelphia and Columbia Railroad, just west of the Reading's connection, was abandoned in favor of a new bypass, and the portion of the line east of it was sold to the Reading, the only company that would continue using the old route.

The Lebanon Valley Railroad was chartered in 1836 to build from Reading west to Harrisburg. The Reading took it over and began construction in 1854, opening the line in 1856. This gave the Reading a route from Philadelphia to Harrisburg, for the first time competing directly with the Pennsylvania Railroad, which would turn out to be its major rival.

*(handwritten: → Under the Right of way Authority)*

In 1859 the Reading leased the Chester Valley Railroad, providing a branch from Bridgeport west to Downingtown. It had formerly been operated by the Philadelphia, Germantown and Norristown Railroad.

A new Philadelphia terminal opened on December 24, 1859 at Broad and Callowhill Streets, north of the old one at Cherry Street.



knowledge services

# Penn Central Bankrupt

*Realty Hotels, Inc* [handwritten]

Judge signs order - keep trains going

Action is filed Sunday after Congress Balks at U.S. guaranteed loan.

PHILADELPHIA, June 21 (AP) - The Penn Central, the nations largest railroad, filed a bankruptcy petition today for reorganization, citing "a severe cash squeeze" because of heavy lossess in passenger and frieght operations.

The emergency actions by the directors of the Penn Central Transportation Co. followed the reversal of a promise by the Nixon administration, in the face of growing congressional opposition, for an immediate government guaranteed loan of $200 million.

The railroad said in the petition it was unable to borrow more money from any source.

**Signed at home**

The order was signed in the home of U.S. District Judge William Kraft Jr. at 5:35 p.m. after a morning and afternoon of secret conferences mixed with denials to newsman that anything important was going on.

Directors said in a terse statement that the court action "permits Penn Central to retain possession and continue operation of the railroad sustem and to conduct other normal buisness pending appointment of trustees by the court."

**There was no mention of millions of dollars of short term loans, reportadly due tommorow, or how creditors and 94,000 employees are to be paid.**

The directors said the petition, under section 77 of the U.S. Bankruptcy Act affects only the railroad and not any of the other Penn Central subsidaries - like the very profitable Buckeye Pipe Line Co., the Great Southwest Corp., Aruida Corp., Realty Hotels , Inc., and two tiny money making railroads: The Pittsburgh and Lake Erie, and the Detroit, Toledo, & Ironton.

Penn Central operates 35 per cent of the nations railroad passenger service and nearly two-third in the east. Last year it reported a loss of $182.3 million in passenger and freight business, while the other subsidaries earned a profit of $61 million. It was forced in Feburary of 1968 in the biggest transportation merger in the nations history combining the giant Pennsylvania Railroad and New York Central systems into a $6.5 billion corporation that ranks No. 6 in America.

**Cash Tied Up**   *Realty Hotels, Inc* [handwritten]

But instead of modernizing the passenger and frieght lines, the merger anticipated when it was first proposed in 1957, Penn Central directors poured millions of dollars into diversification, tying up the cash it needed to pay off loans and bills in pipelines, hotels, and other real esate. That was the crisis that prompted a managment shake-up June 8, resulting in the firing of board chairman Stuart Saunders the architecht of ther merger , and his replacement by Paul A. Goreman, who had spent his entire 40 year buisness career with the Americant Telephone and Telegraph Corp. before retirement brought him to the Penn Central.

*is under investigation by Land & title North America Federal Rogestery* [handwritten]

COMMONWEALTH LAND
TITLE INSURANCE COMPANY
C602-610
(5)

# FIRST AMENDMENT TO LEASE

D-1871-572

This First Amendment to Lease is made as of this 31st day of January, 1979, by and between ANDREW L. LEWIS, JR. and JOSEPH L. CASTLE, Trustees of the property of Reading Company, Debtor, and the North Pennsylvania Railroad Company (herein collectively referred to as the "Lessor") and WILDER INDUSTRIES, INC. ("Lessee").

## RECITALS:

A.  By Lease dated December 29, 1967, the Reading Company, lessee of the North Pennsylvania Railroad, and Marie G. Brown and Gertrude S. Greberman, copartners, entered into a Lease Agreement (the "Lease") for premises (the "demised premises"), located at 2nd and Erie Avenues, Philadelphia, Pennsylvania (as more fully described in the Lease).

B.  On the 23rd day of November, 1971, the Reading Company filed for reorganization under Section 77 of the Bankruptcy Act, as amended, and, subsequently, Andrew L. Lewis, Jr. and Joseph L. Castle were appointed Trustees of the property of the Reading Company.

C.  By agreement dated April 1, 1976 between the North Pennsylvania Railroad Company and Andrew L. Lewis, Jr. and Joseph L. Castle, Trustees of the property of Reading Company, Debtor and The North Pennsylvania Railroad Company empowered the Trustees to perform all duties normally associated with the management, operation and maintenance of it's properties.

D.  By agreement made November 1, 1976, between Andrew L. Lewis, Jr. and Joseph L. Castle, Trustees of the property of Reading Company, Debtor and Eastern Real Estate Company, the Trustees empowered Eastern Real Estate Company to operate and manage the real estate of Reading Company and its former Lessors.

E.  By assignment dated January 30, 1979, Marie G. Brown and Gertrude S. Greberman assigned all of their right title and interest in and to the Lease to Lessee.

Read ___ ___ ___ nnnual Report on
forM 10-k filed with SEC

- Office Building at Arch + 12 st
Parking opration
- Conventien Center
- Hotel Site proposed
- one Reading Center %80
- ALP Co
- Gallery 11 Parking Garage
- AMerican Lignite

Property of Reading Company 5-5-15
under Land&title
federal Regestry system of North Americ
in A                      2015
+ Studay

Commercial Recording Division

Page 1 of 1

*Violation Not Right For the Name Reading Company*

## Business Inquiry

### Business Details

| | | | |
|---|---|---|---|
| Business Name: | **READING RAILROAD COMPANY LLC** | Citizenship/State Inc: | **Domestic/CT** |
| Business ID: | **1069942** | Last Report Filed Year: | **2014** |
| Business Address: | **218 HARTFORD RD, MANCHESTER, CT, 06040** | Business Type: | **Domestic Limited Liability Company** |
| Mailing Address: | **218 HARTFORD RD, MANCHESTER, CT, 06040** | Business Status: | **Active** |
| Date Inc/Registration: | **Apr 25, 2012** | | |

### Principals Details

| Name/Title | Business Address | Residence Address |
|---|---|---|
| GEORGE D. ATWOOD  MEMBER | 218 HARTFORD RD, MANCHESTER, CT, 06040 | 29 GROVE ST, PUTNAM, CT, 06260 |

### Agent Summary

Agent Name   **GEORGE D. ATWOOD**

Agent Business Address   **218 HARTFORD RD, MANCHESTER, CT, 06040**

Agent Residence Address   **29 GROVE ST, PUTNAM, CT, 06260**

[Back]   [View Filing History]   [View Name History]   [View Shares]

*U.S. Right of way Authority*

*Reading Company Name is a Trade Name protected by federal Law aginst any violation to fraud and or false claim*

A 44

but not restricted to Grantee, its officers, agents or employees, and for which such other individuals, entities or corporations shall seek to hold Grantor or Bethlehem, or both, or their respective officers, agents or employees, liable.

This grant is made pursuant to the reservation in said deed dated December 28, 1967, of the right to grant an easement to Magnolia Pipe Line Company, Penn Central Properties, Inc., being the owner of said reserved right as successor in interest to said The Pennsylvania Railroad Company, and The Penn Central Corporation being the holder of record title to said right in order to secure the payment of the purchase price in a sale of said right and other property in Pennsylvania by The Penn Central Corporation to Penn Central Properties, Inc., and Mobil Pipe Line Company being the successor in interest to Magnolia Pipe Line Company in the ownership of the Facilities.

Insofar as the Facilities are affected by said reservation, this grant cancels and supersedes the Agreement dated November 1, 1947, between The Pennsylvania Railroad Company and Socony-Vacuum Oil Company, Inc., which was assigned by the latter to Magnolia Pipe Line Company on November 30, 1959, but is referred to in said Deed dated December 28, 1967, as an Agreement between The Pennsylvania Railroad Company and Magnolia Pipe Line Company.

-3-

BOOK 753 PAGE 551

His Right of Way Authority in Matter of E. Reading Company Owner



37. The Bell System and Associated Companies *

Chart 16

# THE BELL TELEPHONE SYSTEM
## SHOWING TERRITORIES OF THE ASSOCIATED OPERATING COMPANIES

— KEY —

Ⓗ  Operating Headquarters
▬▬▬  Boundaries of Operating Units
▬▬▬  Corporate Boundaries
▬ ▬ ▬  State Boundaries

* American Telephone and Telegraph Company, *Annual Report to the Stockholders, 1927.*

## 12. Lines of the Bell System *

### Chart 6



LINES OF THE BELL TELEPHONE SYSTEM

INTERURBAN TELEPHONE LINES
CERTAIN LONG HAUL LINES

\* American Telephone & Telegraph Company, *Annual Report,* 1927.

100        PUBLIC UTILITY ECONOMICS

of this first era of rapid expansion culminated in 1911, along with the general decline of business that continued up to 1915. However, a number of new small power projects were built after 1910. Some of these were not well-placed as to the markets, others were expensively constructed and, as a consequence, had a top-heavy capitalization structure. The greater number of them had discounted the development of their markets too far in advance. Undoubtedly, but for the abnormal war demand for power a greater number of these companies would have gone into receivership than actually did.

## 27. A Holding Company and Subsidiaries *

### Chart 10

THE NORTH AMERICAN COMPANY OWNS AND CONTROLS THE FOLLOWING AS OF JUNE 30, 1927:

(1) North American Edison Company, controlling
    The Cleveland Electric Illuminating Co. (Cleveland, O.), controlling
    The Power and Light Building Company (Ohio)
    Union Electric Light and Power Company (St. Louis, Mo.), controlling
    The Light and Development Company of St. Louis
    Mississippi River Power Company (Keokuk, Ia.), controlling
    Missouri Transmission Company (Keokuk, Ia.)
    Cupples Station Light, Heat & Power Company (St. Louis, Mo.)
    St. Charles Electric Light & Power Company (St. Charles, Mo.)
    Union Colliery Company (Duquoin, Ill.), controlling
    Dowell Electric Company (Illinois)
    Central Mississippi Valley Electric Properties, controlling
    Keokuk Electric Company (Keokuk, Ia.)
    Fort Madison Electric Company (Ft. Madison, Ia.)
    Dallas City Light Company (Dallas City, Ill.)
    The Milwaukee Electric Railway and Light Company, controlling
    Milwaukee Northern Railway Company (Milwaukee, Sheboygan, Wis.)
    Badger Public Service Company (Elkhart, Wis.)
    Wisconsin Gas and Electric Company (Racine, Kenosha, Watertown, Wis.)
    Wisconsin Electric Power Company (Milwaukee, Wis.)
    Wisconsin Michigan Power Company (Appleton, Wis.), controlling
    Inter City Bus Company (Wisconsin)

(2) Union Electric Light & Power Company of Illinois (East St. Louis, Ill.)

* Courtesy, North American Company, Statistical Department.

(3) Western Power Corporation, controlling

Great Western Power Company of California (San Francisco, Cal.), controlling

California Electric Generating Company (Oakland, Cal.)

Western Canal Company (California)

Napa Valley Electric Company (Napa, Cal.)

San Joaquin Light & Power Corporation (Fresno, Cal.), controlling

Bakersfield & Kern Electric Railway Company (Bakersfield, Kern, Cal.)

Valley Electrical Supply Company (Cal.)

Midland Counties Public Service Corporation (San Louis Obispo, Cal.)

(4) The St. Louis County Gas Company (Webster Groves, Mo.)

(5) The East St. Louis and Suburban Company (East St. Louis, Ill.), controlling

East St. Louis Light & Power Company (Ill.)

East St. Louis Railway Company (Ill.)

East St. Louis & Suburban Railway Company (Ill.), controlling

Blue Goose Motor Coach Company (Ill.)

Red Line Motor Company (Ill.)

St. Louis & Belleville Electric Railway Company (Ill.)

St. Louis & East St. Louis Electric Railway Company (Ill.)

(6) Alton Gas Company (Ill.)

(7) Alton Light & Power Company (Ill.)

(8) Alton Railway Company (Ill.)

(9) St. Louis & Alton Railway Company (Ill.)

(10) West Kentucky Coal Company (Sturgis, Ky.), controlling

St. Bernard Coal Company (Earlington, Ky.)

West Kentucky Property Company (Ky.)

West Kentucky Coal Company (Del.)

(11) Wired Radio, Inc. (Del.)

(12) Sixty Broadway Building Corporation (N. Y.)

(13) Edison Securities Corporation (N. Y.)

(14) North American Utility Securities Corporation (Md.)

The North American Company also has substantial, but not controlling, interest in the Detroit Edison Company (Detroit, Mich.), Washington Railway & Electric Company (Washington, D. C.), and North American Light & Power Company (Chicago, Ill.)



31. Principal Power Groups in United States *

Chart 13

FIELDS OF OPERATIONS OF PRINCIPAL POWER GROUPS
LOCATED BY COUNTIES, 1925

* Federal Trade Commission Report on the Electric Power Industry, *Control of Power Companies* (Washington, 1927), p. 176.

* From *Bankers' Monthly*, October, 1926, p. 7.



**PRINCIPAL INTERCONNECTED ELECTRIC SYSTEMS IN THE UNITED STATES**
JUNE 1926

Chart 12

## 30. Interconnected Electric Systems *

103

---

## 29. Distribution of Control *

### TABLE 13

#### ELECTRIC POWER INDUSTRY GROUPS, 1924

| | Percentage to Total in United States | | | |
|---|---|---|---|---|
| | Energy Generated | Installed Capacity | No. of Customers | Revenue |
| *General Electric Interests* ..... | 12.30 | 12.40 | 11.21 | 13.20 |
| *Service Groups* | | | | |
| Stone & Webster.......... | 2.28 | 2.16 | 2.21 | 2.14 |
| Byllesby ................. | 5.02 | 5.30 | 5.34 | 5.23 |
| Hodenpyl-Hardy .......... | 2.76 | 2.72 | 2.49 | 2.74 |
| Doherty ................. | 2.24 | 2.45 | 2.28 | 2.50 |
| Others .................. | 7.24 | 10.72 | 10.41 | 10.10 |
| *Large Combinations* | | | | |
| North American Co......... | 7.28 | 6.39 | 5.58 | 6.06 |
| Insull Interests .......... | 8.74 | 8.65 | 11.52 | 9.62 |
| Public Service Corporation of New Jersey ....... | 2.16 | 2.04 | .... | 3.04 |
| Others .................. | 3.92 | 3.84 | 3.12 | 2.22 |
| *Extensive Unit Developments* | | | | |
| Pacific Gas & Electric Co... | 3.26 | 2.71 | 2.68 | 2.31 |
| Montana Power Co........ | 2.24 | 1.17 | .32 | .63 |
| Duke Power Co........... | 2.57 | 1.31 | .03 | .96 |
| Other Unit Developments... | 1.70 | 1.30 | .33 | .62 |
| *Other Holding Company Groups* | 13.70 | 13.00 | 12.90 | 14.80 |
| *Independent Companies* | | | | |
| New York Edison & United Electric Light and Power. | | | | |
| Southern California Edison Co. ..................... | 3.96 | 4.01 | 4.02 | 5.15 |
| Detroit Edison Co......... | 2.81 | 2.50 | 2.06 | 1.78 |
| Philadelphia Electric Co.... | 2.80 | 2.56 | 2.89 | 2.70 |
| Brooklyn Edison Co....... | 2.51 | 2.39 | 2.56 | 2.54 |
| Others ................... | 1.20 | 1.70 | 3.52 | 2.20 |
| All other Independents...... | 1.80 | 2.10 | 1.30 | 2.02 |
| Municipally owned ......... | 4.85 | 5.28 | 7.50 | 6.87 |
| | 2.24 | 3.00 | 5.34 | .... |
| *Totals* [a] ............... | 99.58 | 99.70 | 99.61 | 99.43 |

* As of December 31, 1924—computed from figures in Federal Trade Commission Report (Senate Document No. 213) *Control of Power Companies* (Washington: United States Government Printing Office, 1927), Chap. III, pp. 36-37.

[a] Note: Percentages do not total 100 per cent as several almost negligible groups were omitted.

102

4. That the 5½ per cent rate of return[12] which Congress has fixed as fair for the railroads is inadequate, for at no time did the market rate for even these select companies reach that low level on an earning basis (Item 3B), while on a dividend basis (Item 3A), if the cost of financing is properly included, 1916 is the only year which would permit the companies to show a surplus.

[12] See H. B. Doran, "The Cost of Railway Capital Under the Transportation Act," included in Chapter XIV. (Section 166.) Since this rate is to apply generally to all railway companies and not specifically to any it would appear that the twelve selected companies should show something in excess of such returns, at least on a dividend basis if the more marginal firms are to be kept in business.

## 148.   Chronological Table of Cases Bearing on Rate of Return *

| CASE | NATURE OF | PER CENT RATES | REMARKS |
|---|---|---|---|
| Milwaukee Electric R. & Light Co. v. Milwaukee, 87 Fed. 577 (1898)........ | Street Ry. | 4½ | Confiscatory |
| Chicago Union Traction Co. v. State Board of Equalization, 114 Fed. 557 (1902) ................................................ | Street Ry. | 6 | Fair return |
| Cedar Rapids Water Co. v. Cedar Rapids, 118 Iowa 234, 91 N.W. 1081 (1902) | Water | 4.4 to 5½ | Not confiscatory |
| Spring Valley Waterworks v. San Francisco, 124 Fed. 574 (1902)........... | Water | 5 | Minimum rate |
| Louisville & N. R. Co. v. Brown, 123 Fed. 946 (1903)..................... | Railroad | 6 | Legal rate minimum |
| Stanislaus County v. San Joaquin & Kings River Canal & Irrig. Co., 192 U.S. 201, 48L. ed. 406, 24 Sup. Ct. Rep. 241 (1904).......................... | Irrigation | 6 | Not confiscatory |
| Contra Costa Water Co. v. Oakland, 165 Fed. 518 (1904)................... | Water | 5 | Minimum rate |
| Cumberland Teleph. & Teleg. Co. v. Louisiana R. Commission, 156 Fed. 823 (1907) ................................................ | Electric | 7 | Fair return |
| Pennsylvania R. Co. v. Philadelphia, 220 Pa. 100, 68 Atl. 676 (1908)....... | Railroad | 6 | Legal rate minimum |
| Central of Georgia R. Co. v. Ala. R. Commission, 161 Fed. 925 (1908)...... | Railroad | 8 | Legal rate minimum |
| Spring Valley Water Co. v. San Francisco, 165 Fed. 667 (1908)............. | Water | 5 | Reasonable return |
| Consolidated Gas Co., 157 Fed. 849 (1907)................................ | Gas | 6 | Fair return |
| Willcox v. Consolidated Gas Co., 212 U.S. 19, 53L ed. 382, 48 L. R. A. (N.S.) 1134, 29 Sup. Ct. Rep. 192, 15 Ann. Cas. 1034 (1909).................... | Gas | 6 | Fair return |
| Knoxville v. Knoxville Water Co., 212 U.S. 1, 53 L. ed. 371, 29 Sup. Ct. Rep. 148 (1909) ................................................ | Water | 4 | Not decided unfair |
| St. Louis & S. F. R. Co. v. Hadley, 168 Fed. 317 (1909).................... | Railroad | 6 | Fair return |
| Lincoln Gas & E. L. Co. v. Lincoln, 182 Fed. 926 (1909).................... | Gas | 6 | Minimum return |

* Cases from 1898 to 1923 reprinted from the table prepared in re Pacific Telephone & Telegraph Company as it appeared in *Public Utility Reports* annotated 1924-D 69. Cases from 1923 to 1927 compiled from succeeding volumes of *Public Utility Reports* annotated from cases indexed under Reasonableness of Return—Specific Allowances. (Buffalo, *Public Utility Reports, Inc.*)

| CASE | NATURE OF | PER CENT RATES | REMARKS |
|---|---|---|---|
| Monroe Gas Light & Fuel Co. v. Mich. P. U. Com. (U.S. Dist. Ct.), P.U.R. 1923-E 661 (292F139) (1923) | Gas | 5⅝ | Confiscatory |
| Columbus Gaslight Co. v. Pub. Serv. Com. (Ind. Sup. Ct.) P.U.R. 1923-E 602, 140 Ga. 338 (1923) | Gas | 6.58 | Fair — no proof to contrary |
| Bluefield Water Works & Improvement Co. v. W. Va. Pub. Serv. Com. (U.S. Sup. Ct.) P.U.R. 1923-D 11, 262 U.S. 679 (1923) | Water | 6 | Not just compensation |
| Georgia R. & Power Co. v. R.R. Com. (U.S. Sup. Ct.) P.U.R. 1923-D 1, 262 U.S. 625 (1923) | Gas | 7¼ | Non-confiscatory, exempt from Federal Income Tax |
| Mo. ex. rel. S.W. Bell Teleph. Co. v. Mo. Pub. Serv. Com. (U.S. Sup. Ct.) P.U.R. 1923-C 193, 262 U.S. 276 (1923) | Telephone | 5⅝ | Inadequate |
| Bronx Gas & Electric Co. v. Pub. Serv. Com. (N.Y. Sup. Ct.) P.U.R. 1923-A 355, 28 N.Y. Off. Dept. R. 329 | Gas | 8 | Minimum |
| Minneapolis v. Rand, 285 Fed. 818 (1923) P.U.R. 1923-A 686, P.U.R. 1923-B 478 (1922) | Gas | 7¼ | Minimum Reasonable return |
| Home Teleph. & Teleg. Co. v. Public Service Commission, 276 Fed. 573, 43 Sup. Ct. Rep. 606 (1923) | Telephone | 8 | Reasonable return |
| Brush Electric Co. v. Galveston, 262 U.S. 443, 67 L. ed. 1076, P.U.R. 1923-D | Electric | 8 | Fair return |
| Willcox v. Consolidated Gas Co., 212 U.S. 19, 53 L. ed. 382, 48 L.R.A. (N.S.) 1134, 89 Sup. Ct. Rep. 192 (1909) | Gas | 6 | Not confiscatory |
| Des Moines Gas Co. v. Des Moines, 238 U.S. 153, 59 L. ed. 1244, P.U.R. 1915-D 577, 35 Sup. Ct. Rep. 811 (1915) | Gas | 6 | Not confiscatory |
| Pacific Gas & E. Co. v. San Francisco, 273 Fed. 937, P.U.R. 1921-D 464 (1921) | Gas | 7 | Reasonable return |
| Galveston Electric Co. v. Galveston, 258 U.S. 388, 66 L. ed. 678, P.U.R. 1922-D 159, 42 Sup. Ct. Rep. 351 (1922) | Railway | 6.8 | Not confiscatory |

### 148. Chronological Table of Cases Bearing on Rate of Return, Cont'd

| CASE | NATURE OF | PER CENT RATES | REMARKS |
|---|---|---|---|
| Galveston Electric Co. v. Galveston, 272 Fed. 147, P.U.R. 1921-D 547 (1921) | Railway | 5 | Not confiscatory not confiscatory |
| Lincoln Gas & E. L. Co. v. Lincoln, 250 U.S. 256, 63 L. ed. 968, 39 Sup. Ct. Rep. 454 (1919) | Gas | 7 | Reasonable return 6% |
| Common Council of Green Bay v. Green Bay Water Co., 11 Wis. R.C.R. 236 (1919) | Water | 7 | Reasonable return |
| The Lincoln Teleph. & Teleg. Co., (2nd Dist. N.Y.) 553 (1918) | Gas | 6 | Fair return |
| Buffalo Gas Co. v. Buffalo, P.S.G.R. 134 (1913) | Telephone | 7 | Not unfair |
| De Alabama Rate Cases, 196 Fed. 800, 197 Fed. 954 (1912) | Railroad | 8 | Fair return |
| The Alabama Rate Cases, 187 Fed. 290 | Telephone | 5–8 | Fair return |
| Louisville v. Cumberland Teleph. & Teleg. Co., 225 U.S. 430, 56 L. ed. 1151, 32 Sup. Ct. Rep. 741 (reversing 187 Fed. 290) | Telephone | 8 | Fair return |
| Spring Valley Waterworks v. San Francisco, 192 Fed. 137 (1911) | Water | 7 | Fair return |
| Des Moines Water Co. v. Des Moines, 192 Fed. 193 (1911) | Water | 3.97 | Confiscatory |
| Re Arkansas Rate Cases, 187 Fed. 290 (1911) | Railroad | 6½ | For lean years fair return |
| Cumberland Teleph. & Teleg. Co. v. Louisville, 187 Fed. 637 (1911) | Telephone | 7 | Minimum return |
| Shepard v. Northern P. R. Co., 184 Fed. 765 (1911) | Railroad | 6 | Reasonable return |
| Cedar Rapids Gas Light Co. v. Cedar Rapids, 223 U.S. 655, 56 L. ed. 594, 32 Sup. Ct. Rep. 389 (1912) | Gas | 6 to 6 | Minimum return |
| Cedar Rapids Gas Light Co. v. Cedar Rapids, 144 Iowa 426, 138 Am. St. Rep. 299, 120 N.W. 966 (1909) | Telephone | 6 | Reasonable return |
| Owensboro v. Cumberland Teleph. & Teleg. Co., 174 Fed. 739 (1909) | Water | 6 | Reasonable return |
| Venner v. Urbana Waterworks, 174 Fed. 348 (1909) | Water | 6 | Fair return |
| People ex rel. Jamaica Water Supply Co. v. Tax Comrs., 196 N.Y. 39, 89 N.E. 581 (1909) | | | |

## 755 — THE RATE OF RETURN

| CASE | NATURE OF | PER CENT RATES | REMARKS |
|---|---|---|---|
| Pacific Coast Elevator Co. v. Dept. of Public Works (Wash. Sup. Ct.) P.U.R. 1925-B 618, 228 P 1022 | Warehousing | 10 | Non-confiscatory |
| Cons. Gas Co. v. Prendergast (U.S. Dist. Ct.) P.U.R. 1925-B 773, 6 F (2d) 243 | | | |
| Spear v. Van Dyke (Ariz.) P.U.R. 1925-C 59 | Electric | 6 | Reasonable — mining district |
| Ohio Util. Co. v. P. U. Com. (U.S. Sup. Ct.) P.U.R. 1925-C 699, 267 U.S. 359 | Electric | 10 | Confiscatory |
| Kings Co. Lighting Co. v. Prendergast (U.S. Dist. Ct.) P.U.R. 1925-C 705, 1 F (2d) 192 | Gas & Electric | 5 | Confiscatory district |
| Consolidated Gas Co. v. Prendergast (U.S. Dist. Ct.) P.U.R. 1925-C 744, 6 F (2d) 243 | Gas | 2.48 | Confiscatory |
| Duluth St. Ry. Co. v. Minn. R.R. & Warehouse Com. (U.S. Dist. Ct.) P.U.R. 1925-D 226, 4 F (2d) 543 | Gas | 8 | Customary and reasonable |
| Chesapeake & P. Teleph. Co. v. Whitman (U.S. Dist. Ct.) P.U.R. 1925-D 407, 3 F (2d) 77 | Street Ry. | 7½ | Approved |
| S.W. Bell Teleph. & Teleg. Co. v. R.R. Com. of S. C. (U.S. Dist. Ct.), 5 F (2d) 38 | Telephone | 6 | Minimum |
| N.W. Bell Teleph. & Teleg. Co. v. Spillman (U.S. Dist. Ct.) P.U.R. 1926-A 330, 6 F (2d) 663 | Telephone | 8 | Fair return |
| Brooklyn Union Gas Co. v. Prendergast (U.S. Dist. Ct.) P.U.R. 1926-A 412, 7 F (2d) 628 | Telephone | 5½ | Unreasonable and confiscatory |
| | Gas | 8, 9 | Reasonable and confiscatory |
| State ex rel. St. Joseph v. Busby (Mo. Sup. Ct.) P.U.R. 1926-A 803, 274 S.W. 1067 | Gas | 7½ | Reasonable. Temporary. Commission retained control. |

## 754 — PUBLIC UTILITY ECONOMICS

### 148.   Chronological Table of Cases Bearing on Rate of Return, Cont'd

| CASE | NATURE OF | PER CENT RATES | REMARKS |
|---|---|---|---|
| Mobile Gas Co. v. Patterson (U.S. Dist. Ct.) P.U.R. 1924-B 644, 293F208 (1924) | Gas | 4.69 | Confiscatory |
| Arkansas Water Co. v. Little Rock (U.S. Dist. Ct.) P.U.R. 1924-C 73 | Water | 7½ | Reasonable |
| Louisiana Water Co. v. Mo. Pub. Serv. Com. (U.S. Dist. Ct.) P.U.R. 1924-C 293, 298F954 | Water | 8 | Reasonable |
| Wis.-Minn. Light & Power Co. v. Wis. R.R. Com., P.U.R. 1924-C 534, 197 N.W. 359 | Gas | 5.8 | Non-confiscatory |
| Joplin Gas Co. v. Mo. Pub. Serv. Com. (U.S. Dist. Ct.) P.U.R. 1924-D 137 | Nat. Gas | 6 | Confiscatory |
| Stratton Aqueduct Co. v. Smith (U.S. Dist. Ct.) P.U.R. 1924-D 261 (296F385) (296F911) | Nat. Gas | 4.62 | Inadequate |
| Pacific Gas & Electric Co. v. San Francisco, U.S. Sup. Ct. P.U.R. 1924-D 817, 44 S. Ct. 537 | Telephone | 7 | Minimum fair |
| Colorado Power Co. v. Halderman (U.S. Dist. Ct.) P.U.R. 1924-D 789, 298F178 | Electric | 8 | Reasonable |
| Aquackanonk Water Co. v. P. U. Comrs. (N.J. Err. & App.) P.U.R. 1924-E 36 (125 Atl 33) | Water | 8 | Not excessive |
| Georgia R. & Power Co. v. R.R. (U.S. Dist. Ct.) P.U.R. 1924-A 546 | Gas | 7 | Non-confiscatory |
| N. Y. Teleph. Co. v. Prendergast (U.S. Dist. Ct.) P.U.R. 1924-A 491, 300F822 | Telephone | 8 | Customary and reasonable. Will increase when it appears it |
| R.R. Comrs. v. Hughes Electric Co. (N.D.) P.U.R. 1925-A 18 | Electric | 7½ | Plus Federal Income Taxes Allowed efficient company |
| Modoc Co. Dev. Board v. Almas El. Power Co. (Calif.) P.U.R. 1925-A 823 | Electric | 8 | Allowed subject to deduction for poor service and interest on depreciation reserve |

## 148. Chronological Table of Cases Bearing on Rate of Return, Cont'd

| Case | Nature of | Per Cent Rates | Remarks |
|---|---|---|---|
| Ashland Water Co. v. R.R. Com. (U.S. Dist. Ct.) P.U.R. 1926-B 293, 7 F (2d) 924 | Water | 7 | Not sustained—argument presented to effect that rate base under evaluated with 6% as an adequate return. |
| N. Y. & Richmond Gas Co. v. Prendergast (U.S. Dist. Ct.) P.U.R. 1926-B 759, 10 F (2d) 167 | Gas | 8 | Customary and reasonable |
| Springfield Gas & Electric Co. v. Public Service Com. (U.S. Dist. Ct.) P.U.R. 1926-C 858, 10 F (2d) 252 | Gas | 8 | Minimum |
| Monroe Gas Light & Fuel Co. v. Mich. Pub. Util. Com. (U.S. Dist. Ct.) P.U.R. 1926-D 13, 11 F (2d) 319 | Gas | 7<br>6 | Non-confiscatory<br>Confiscatory |
| Pittsburgh & W. V. Gas Co. v. Pub. Serv. Com. (W. Va. Ct. App.) P.U.R. 1926-D 280, 132 S.E. 497 | Nat. Gas | 16.71 | Return, Deprec. and Depletion—not confiscatory |
| Pacific Teleph. & Teleg. Co. v. Whitcomb (U.S. Dist. Ct.) P.U.R. 1926-D 815, 12 F (2d) 279 | Telephone | 7½ | Minimum |
| P. U. Com. v. E. Providence Water Co. (R.I.) P.U.R. 1926-E 641, 133 Atl. 804 | Water | 5 | Maximum obtainable under any rate schedule |

| Case | Nature of | Per Cent Rates | Remarks |
|---|---|---|---|
| McCardle v. Indianapolis Water Co. (U.S. Sup. Ct.) P.U.R. 1927-A 15, 272 U.S. 400 | Water | 7 | Minimum |
| Attinger v. Cons. Gas Co. (U.S. Sup. Ct.) P.U.R. 1927-A 37, 272 U.S. 576 | Gas | 6 | Confiscatory |
| Brooklyn Borough Gas Co. v. Prendergast (U.S. Dist. Ct.) P.U.R. 1927-A 200, 16 F (2d) 651 | Gas | 8 | Minimum |
| United Fuel & Gas Co. v. Pub. Serv. Com. (U.S. Dist. Ct.) P.U.R. 1927-A 707 | Nat. Gas | 8 | Reasonable after allowance of 3.65% to amortize plant |
| Aluminum Goods Mfg. Co. v. Laclede Gas Light Co. (Mo.) P.U.R. 1927-B 1 | Electric & Gas | 8<br>7 | Maximum<br>Minimum |
| Chesapeake & P. Teleph. Co. v. Vir. (Va. Ct. App.) P.U.R. 1927-B 484 | Telephone | 6 | Non-confiscatory |
| State ex rel. St. Louis Water Co. v. Pub. Serv. Com. (Mo. Sup. Ct.) P.U.R. 1927-C 473 | Water | 7½ | Allowed |
| Columbus Gas & Fuel Co. v. Columbus (U.S. Dist. Ct.) P.U.R. 1927-C 639 | Nat. Gas | 7.087 | Non-confiscatory |
| Idaho Power Co. v. Thompson (U.S. Dist. Ct.) P.U.R. 1927-D 388 | Electric | 7 | Non-confiscatory |
| Follett v. Seneca Water Co. (N.Y. Sup. Ct.) P.U.R. 1927-D 761 | Water | 7½ | Not excessive |
| Celina v. P. U. Com. (Ohio Sup. Ct.) P.U.R. 1927-D 796, 116 Ohio 596 | Nat. Gas | 8 | Allowed |