IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IBRAHIM ALY, | : | CIVIL NO. 1:16-CV-281 |
| | : | |
| Plaintiff, | : | (Judge Jones) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| QUEEN OF ENGLAND, et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

Ibrahim Aly apparently wishes to sue the Queen of England, the Government of Canada, and all Common Pleas Court Judges in Pennsylvania.   (Doc. 1.) According to Aly this distinguished but disparate group of defendants should be held liable to him for "over one trlion [sic]" dollars. (Id.)

The precise reasons why these defendants would be liable to Aly for a sum in excess of $1,000,000,000,000, is entirely unclear but may be concealed somewhere within the 360 pages of pleadings, documents, exhibits and attachments which Aly has submitted along with his *pro se* complaint.   (Id.)  If a cause of action is buried within this pleadings, however, it eludes us since a preliminary examination of Aly's

complaint reveals that it lacks three things that we typically require in civil complaints: facts, legally cognizable claims and venue. Thus, the complaint itself is completely lacking in any coherent, comprehensible factual narrative. Instead, the complaint simply consists of an eclectic array of pleadings and other documents, including various pleadings filed in state criminal proceedings, all of which appear to have been resolved unfavorably for Aly by the state courts. (Id.) The complaint also reveals on its face that the Court lacks venue over many of the matters set forth by the plaintiff since these matters often appear to have occurred in Montgomery County Pennsylvania, within the jurisdiction and venue of the United States District Court for the Eastern District of Pennsylvania. (Id.)

Along with his complaint, Aly seeks leave to proceed *in forma pauperis*. (Doc. 2.) For the reasons set forth below, we will GRANT Aly leave to proceed *in forma pauperis* but as part of our legally-mandated duty to screen *pro se in forma pauperis* pleadings, we recommend that this complaint be dismissed.

## II. <u>Discussion</u>

### A. <u>Screening of *Pro Se In Forma Pauperis* Complaints–Standard of Review</u>

This Court has a statutory obligation to conduct a preliminary review of complaints filed by plaintiffs who seek leave to proceed *in forma pauperis,* and seek

redress against government officials.   See 28 U.S.C. §§1915 and 1915A. Specifically, we  must assess whether a *pro se, in forma pauperis* complaint "fails to state a claim upon which relief may be granted."  This statutory text, in turn, mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years.  Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal  –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have  seemingly  shifted  from  simple  notice  pleading  to  a  more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff.  Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,

20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged."  Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.  Rather, in conducting a

4

review of the adequacy of complaint, the Supreme Court has advised trial courts that

they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth.  While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations.  When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain

more than mere legal labels and conclusions.  Rather, a complaint must recite factual

allegations sufficient to raise the plaintiff's claimed right to relief beyond the level

of mere speculation.  As the United States Court of Appeals for the Third Circuit has

stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis.  First,
> the factual and legal elements of a claim should be separated.  The
> District Court must accept all of the complaint's well-pleaded facts as
> true, but may disregard any legal conclusions.  Second, a District Court
> must then determine whether the facts alleged in the complaint are
> sufficient to  show that the plaintiff has a 'plausible claim for relief.'  In
> other words, a complaint must do more than allege the plaintiff's
> entitlement to relief.  A complaint has to 'show' such an entitlement
> with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has also observed:  "The Supreme Court in <u>Twombly</u> set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in <u>Iqbal</u>.  The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.'  <u>Twombly</u>, 550 U.S. at 570, 127 S.Ct. 1955.  A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'  <u>Iqbal</u>, 129 S.Ct. at 1949 (citing <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. 1955).  This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' <u>Id</u>.  A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' "  <u>Burtch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 220-21 (3d Cir. 2011) <u>cert. denied,</u> 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' <u>Iqbal</u>, 129 S.Ct. at 1947.  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'  <u>Id.</u> at 1950.  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief.' Id." <u>Santiago v. Warminster Tp.</u>, 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

In this regard, one of the basic requisites for a civil complaint is that it must recites some essential facts tying the defendants to some alleged misconduct. This fundamental requirement is driven both by matters of principle, and by pragmatic considerations. As a matter of principle and practice, a basic factual recital is essential in a complaint because it is simply impossible without such averments to properly assign individual responsibility to a particular defendant without some factual description of what has transpired. Therefore, it is incumbent upon a plaintiff to describe who he seeks to sue, and what these parties did that violated the plaintiff's rights. When a plaintiff fails in this basic responsibility, it is the duty of the court to dismiss his claims. <u>See, e.g.</u>, <u>Moss v. United States</u>, 329 F. App'x 335 (3d Cir.

2009)(dismissing illegible complaint); <u>Radin v. Jersey City Medical Center</u>, 375 F. App'x 205 (3d Cir. 2010); <u>Earnest v. Ling</u>, 140 F. App'x 431 (3d Cir. 2005)(dismissing complaint where "complaint fails to clearly identify which parties [the plaintiff] seeks to sue"); <u>Oneal v. U.S. Fed. Prob.</u>, CIV.A. 05-5509 (MLC), 2006 WL 758301 (D.N.J. Mar. 22, 2006)(dismissing complaint consisting of approximately 50 pages of mostly-illegible handwriting); <u>Gearhart v. City of Philadelphia Police</u>, CIV.A.06-0130, 2006 WL 446071 (E.D. Pa. Feb. 21, 2006) dismissing illegible complaint). Further, in order to satisfy the strictures of Rule 8, a complaint must also contain a coherent prayer for relief, demanding relief from a defendant that lies within the power of the defendant to provide. <u>See</u> <u>Klein v. Pike Cnty. Comm'rs</u>, CIV.A. 11-278, 2011 WL 6097734 (M.D. Pa. Dec. 6, 2011)(failure to articulate a prayer for relief compels dismissal); <u>Snyder v. Snyder</u>, 4:12-CV-105, 2012 WL 512003 (M.D. Pa. Jan. 24, 2012) <u>report and recommendation adopted,</u> 4:12-CV-105, 2012 WL 511993 (M.D. Pa. Feb. 15, 2012)(same).

In our view, these pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in the amended complaint, and when examining whether a complaint properly invokes the jurisdiction of this Court.

### B.   This  Complaint Fails to State A Claim Upon Which Relief Can Be Granted

Applying these legal benchmarks in this case, dismissal of this complaint is warranted because the complaint fails on multiple scores to meet the substantive standards required by law, in that it does not set forth a "short and plain" statement of a cognizable violation of some right guaranteed by the Constitution or laws of the United States.  Some of the flaws in this particular *pro se* complaint are discussed separately below.

### 1.   This Complaint Violates Rule 8 of the Federal Rules of Civil Procedure

At the outset, dismissal of this complaint is warranted because the complaint fails to comply with Rule 8's basic injunction that:  "A pleading that states a claim for relief must contain . . . *a short and plain statement of the claim* showing that the pleader is entitled to relief."  Dismissal of this complaint is appropriate since it is well-settled that:  "[t]he  Federal Rules of Civil Procedure require that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2), and that each averment be 'concise, and direct,' Fed. R. Civ. P. 8(e)(1)."  <u>Scibelli v. Lebanon County</u>, 219 F. App'x 221, 222 (3d Cir. 2007).  Thus, when a complaint is "illegible or incomprehensible", <u>id.</u>, or when a complaint "is also largely unintelligible," <u>Stephanatos v. Cohen</u>,  236 F. App'x 785,

9

787 (3d Cir. 2007), an order dismissing a complaint under Rule 8 is clearly appropriate.  See, e.g., Mincy v. Klem, 303 F. App'x 106 (3d Cir. 2008); Rhett v. New Jersey State Superior Court, 260 F. App'x 513 (3d Cir. 2008); Stephanatos v. Cohen. supra; Scibelli v. Lebanon County, supra; Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448, 450 n.1 (5th Cir. 2005).  Furthermore, dismissal under Rule 8 is proper when a complaint "left the defendants having to guess what of the many things discussed constituted [a cause of action];" Binsack v. Lackawanna County Prison, 438 F. App'x 158 (3d Cir. 2011), or when the complaint is so "rambling and unclear" as to defy response.  Tillio v. Spiess, No. 11-1276, 2011 WL 3346787 (Aug. 4, 2011).  Finally, a complaint may be dismissed under Rule 8 when the pleading is simply illegible and cannot be understood.  See, e.g., Moss v. United States, 329 F. App'x 335 (3d Cir. 2009)(dismissing illegible complaint); Radin v. Jersey City Medical Center, 375 F. App'x 205 (3d Cir. 2010); Earnest v. Ling, 140 F. App'x 431 (3d Cir. 2005)(dismissing complaint where "complaint fails to clearly identify which parties [the plaintiff] seeks to sue"); Oneal v. U.S. Fed. Prob., CIV.A. 05-5509 (MLC), 2006 WL 758301 (D.N.J. Mar. 22, 2006)(dismissing complaint consisting of approximately 50 pages of mostly-illegible handwriting); Gearhart v. City of Philadelphia Police, CIV.A.06-0130, 2006 WL 446071 (E.D. Pa. Feb. 21, 2006) (dismissing illegible complaint).

Here, the 360-page complaint is cryptic and incomprehensible.  The complaint, therefore, fails to "contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2), and [fails to meet Rule 8's requirement] that each averment be 'concise, and direct,' Fed. R. Civ. P. 8(e)(1)."  Scibelli v. Lebanon County, 219 F. App'x 221, 222 (3d Cir. 2007).  Further, the averments set forth in the pleading consist of an apparent, but incomprehensible, catalogue of complaints, a litany grievances that are presented without any context, content, coherence or continuity, making it virtually impossible to ascertain the legal and factual significance of these allegations.  Thus, we are "left . . . having to guess what of the many things discussed constituted [a cause of action]."  Binsack v. Lackawanna County Prison, 438 F. App'x 158 (3d Cir. 2011).  In such instances, Rule 8 calls for the dismissal of the complaint.

> **2.**   **To the Extent That The Complaint Seeks to Re-litigate Claims That Were Previously Ruled Upon, the Doctrine of Collateral Estoppel Applies and Bars Re-litigation of These Matters**

In addition, this complaint appears to attempt to re-litigate state matters  which have previously been conclusively resolved by the state courts.  In conducting an initial screening assessment of this aspect of Aly's complaint:  " We have the authority to apply the doctrine of claim preclusion or *res judicata sua sponte.*  Gleash

v. Yuswak, 308 F.3d 758, 760 (7th Cir.2002); Zekoye v. Ocwen Federal Bank FSB,

179 F.App'x 111, 114 (3d Cir.2006) (non precedential). [and] can . . .  invoke *res*

*judicata* 'if it is so plain from the language of the complaint and other documents in

the district court's files that it renders the suit frivolous.'  Gleash, 308 F.3d at 760."

Guider v. Mauer, CIVIL 1:CV-09-1915, 2009 WL 4015568 (M.D. Pa. Nov. 19,

2009).  In our view, upon a preliminary screening review of this lawsuit, the *res*

*judicata*, collateral estoppel and issue preclusion doctrines apply and compel

dismissal of any of the previously litigated claims that are made by the plaintiff in this

complaint relating to the past administrative processing of his state prosecutor

misconduct claim by the state courts.  Collateral estoppel, *res judicata* and issue

preclusion are doctrines which play a vital role in litigation.  It has long been

recognized that "[t]he doctrine[] of . . . collateral estoppel, now  . . termed . . . issue

preclusion, 'shar[es] the common goals of judicial economy, predictability, and

freedom from harassment....' Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir.1988).

Generally speaking, the . . . doctrine of issue preclusion, 'precludes the relitigation

of an issue that has been put in issue and directly determined adversely to the party

against whom the estoppel is asserted.'  Melikian v. Corradetti, 791 F.2d 274, 277 (3d

Cir.1986)."  Electro-Miniatures Corp. v. Wendon Co., Inc. 889 F.2d 41, 44 (3d.

Cir.1989)(citations omitted).

The parameters of this doctrine, which precludes relitigation of certain issues, have been defined by the United States Court of Appeals for the Third Circuit in the following terms:

> Issue preclusion, or collateral estoppel, prevents parties from relitigating an issue that has already been actually litigated. "The prerequisites for the application of issue preclusion are satisfied when: '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.' " Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting In re Graham, 973 F.2d 1089, 1097 (3d Cir.1992)); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, n. 5(1979). In its classic form, collateral estoppel also required "mutuality"-i.e., that the parties on both sides of the current proceeding be bound by the judgment in the prior proceeding. Parklane Hosiery, 439 U.S. at 326-27. Under the modern doctrine of non-mutual issue preclusion, however, a litigant may also be estopped from advancing a position that he or she has presented and lost in a prior proceeding against a different adversary. See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 324 (1971); Parklane Hosiery, 439 U.S. at 329. For . . . non-mutual issue preclusion [] to apply, the party to be precluded must have had a "full and fair" opportunity to litigate the issue in the first action. See Parklane Hosiery, 439 U.S. at 328; Blonder-Tongue Labs., 402 U.S. at 331.

Peloro v. United States, 488 F.3d 163, 174-5 (3d Cir. 2007). Stated succinctly, principles of collateral estoppel compel a later court to honor the an earlier decision of a matter that was actually litigated. Dici v. Commonwealth of Pa., 91 F.3d 542 (3d Cir. 1997). This doctrine, which involves an assessment of the overlap between issues presented in separate lawsuits, raises essentially legal questions which are

often amenable to resolution by courts as a matter of law.  See, e.g., Peloro v. United States, supra; Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc, supra; Witkowski v. Welch, 173 F.3d 192, 198-205 (3d Cir. 1999); Burlington Northern Railroad Co. v. Hyundai Merchant Marine Co., Ltd.,, 63 F.3d 1227, 1231-9 (3d Cir. 1995)(summary judgment, offensive issue preclusion).

Here, we find that with respect to the claims made in the instant complaint, to the extent they can be understood, they appear to relate to other states cases which have concluded unsuccessfully for Aly.  In this setting, the legal requisites for issue preclusion are fully satisfied, since:  " '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.' "  Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting In re Graham, 973 F.2d 1089, 1097 (3d Cir.1992)); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, n. 5(1979).  Therefore, these claims should be dismissed.

### 3.   The Rooker-Feldman Doctrine Also Bars Consideration of This Case

Moreover, at this juncture, where Aly has filed a civil action which invites this Court to reject findings made by numerous state courts in the course of an array of

state litigation involving the plaintiff, the plaintiff also necessarily urges us to sit as

a state appellate court and review, re-examine and reject these state court rulings in

Aly's many state cases.  This we cannot do.  Indeed, the United States Supreme Court

has spoken to this issue and has announced a rule, the <u>Rooker-Feldman</u> doctrine,

which compels federal district courts to decline invitations to conduct what amounts

to appellate review of state trial court decisions.  As described by the Third Circuit:

> That doctrine takes its name from the two Supreme Court cases that
> gave rise to the doctrine.  <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 44
> S.Ct. 149, 68 L.Ed. 362 (1923); <u>District of Columbia Court of Appeals
> v. Feldman</u>, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).  The
> doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal
> judgments or decrees rendered by the highest court of a state in which
> a decision could be had, may be reviewed by the Supreme Court....".
> <u>See also</u> <u>Desi's Pizza, Inc. v. City of Wilkes Barre</u>, 321 F.3d 411, 419
> (3d Cir.2003).  "Since Congress has never conferred a similar power of
> review on the United States District Courts, the Supreme Court has
> inferred that Congress did not intend to empower District Courts to
> review state court decisions."  <u>Desi's Pizza</u>, 321 F.3d at 419.

<u>Gary v. Braddock Cemetery,</u> 517 F.3d 195, 200 (3d Cir. 2008).

Because federal district courts are not empowered by law to sit as reviewing courts,

reexamining state court decisions, "[t]he <u>Rooker-Feldman</u> doctrine deprives a federal

district court of jurisdiction in some circumstances to review a state court

adjudication."  <u>Turner v. Crawford Square Apartments III, LLP,</u>, 449 F.3d 542, 547

(3d Cir. 2006).  Cases construing this jurisdictional limit on the power of federal

courts have quite appropriately:

> [E]mphasized the narrow scope of the Rooker-Feldman doctrine,
> holding that it "is confined to cases of the kind from which the doctrine
> acquired its name:  cases brought by state-court losers complaining of
> injuries caused by state-court judgments rendered before the district
> court proceedings commenced and inviting district court review and
> rejection of those judgments."  [Exxon Mobil Corp. v. Saudi Basic
> Industries Corp.], 544 U.S. at 284, 125 S.Ct. at 1521-22; see also Lance
> v. Dennis, 546 U.S. 459, ----, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059
> (2006)

Id.

However, even within these narrowly drawn confines, it has been consistently

recognized that the Rooker-Feldman doctrine prevents federal judges from

considering lawsuits "brought by state-court losers complaining of injuries caused by

state-court judgments rendered before the district court proceedings commenced and

inviting district court review and rejection of those judgments," particularly where

those lawsuits necessarily require us to re-examine the outcome of this state criminal

case.  As the United States Court of Appeals for the Third Circuit has observed in

dismissing a similar lawsuit which sought to make a federal case out of state court

rulings made in litigation relating to a prior state criminal case:

> The Rooker-Feldman doctrine divests federal courts of jurisdiction "if
> the relief requested effectively would reverse a state court decision or
> void its ruling."  Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181,

192 (3d Cir.2006) (internal citations omitted). The doctrine occupies "narrow ground." <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). It applies only where "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." <u>Id</u>. at 291, 125 S.Ct. 1517. . . . Ordering the relief he seeks, however, would require the District Court to effectively determine that the state courts' jurisdictional determinations were improper. Therefore, [Plaintiff] Sullivan's claims are barred by the <u>Rooker-Feldman</u> doctrine. To the extent Sullivan was not "appealing" to the District Court, but instead was attempting to relitigate issues previously determined by the Pennsylvania courts, review is barred by res judicata. <u>See</u> <u>Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.</u>, 571 F.3d 299, 310 (3d Cir.2009) (describing conditions in Pennsylvania under which collateral estoppel will bar a subsequent claim).

<u>Sullivan v. Linebaugh</u>, 362 F. App'x 248, 249-50 (3d Cir. 2010).

This principle applies here. Thus, in this case, as in <u>Sullivan</u>, the <u>Rooker-Feldman</u> and *res judicata* doctrines combine to compel dismissal of this case, to the extent that Aly improperly invites us to act as a Pennsylvania appellate court for matters and claims relating to a state litigation arising out of the plaintiff's state cases.

### 4. <u>This Court Should Abstain From Ruling Upon Claims for Injunctive Relief in This State Case</u>

Further, the complaint also seemingly invites us to issue wide-ranging injunctions in a number of state cases. To the extent that the complaint invites this Court to enjoin aspects of numerous pending state cases, and in effect calls upon us

17

to dictate the result of these pending state cases, this *pro se* pleading runs afoul of a settled tenet of federal law, the <u>Younger</u> abstention doctrine.

The <u>Younger</u> abstention doctrine is inspired by basic considerations of comity that are fundamental to our federal system of government.  As defined by the courts: "<u>Younger</u> abstention is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding.  <u>See</u> <u>Younger v. Harris</u>, 401 U.S. 37, 41 (1971) ('[W]e have concluded that the judgment of the District Court, enjoining appellant Younger from prosecuting under these California statutes, must be reversed as a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances.')."  <u>Kendall v. Russell</u>, 572 F.3d 126, 130 (3d Cir. 2009).

This doctrine, which is informed by principles of comity, is also guided by these same principles in its application.  As the United States Court of Appeals for the Third Circuit has observed:

> "A federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding."  <u>Addiction Specialists, Inc. v. Twp. of Hampton</u>, 411 F.3d 399, 408 (3d Cir.2005) (citing <u>Younger v. Harris</u>, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)).  As noted earlier, the

> Younger doctrine allows a district court to abstain, but that discretion
> can properly be exercised only when (1) there are ongoing state
> proceedings that are judicial in nature; (2) the state proceedings
> implicate important state interests; and (3) the state proceedings afford
> an adequate opportunity to raise federal claims.  Matusow v. Trans-
> County Title Agency, LLC, 545 F.3d 241, 248 (3d Cir.2008).

Kendall v. Russell, 572 F.3d at 131.

Once these three legal requirements for Younger abstention are met, the decision to abstain rests in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion.   Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004).  Moreover, applying these standards, federal courts frequently abstain from hearing matters which necessarily interfere with on-going state criminal cases.  Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004); Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002).

In this case, the plaintiff's *pro se* complaint reveals that all of the legal prerequisites for Younger abstention are present here with respect to those claims that seek to enjoin on-going state cases.  First, it is evident that there are state proceedings in this case.  Second, it is also apparent that those proceedings afford Aly a full and fair opportunity to litigate the issues raised in this lawsuit in this state case.  See Sullivan v. Linebaugh, 362 F. App'x 248, 249-50 (3d Cir. 2010).  Finally, it is clear

19

that the state proceedings implicate important state interests, since these matters involve state criminal law enforcement, an issue of paramount importance to the state. See, e.g., Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004); Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002).

Since the legal requirements for Younger abstention are fully met here, the decision to abstain rests in the sound discretion of this Court.  Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004).  However, given the important state interest in enforcement of its criminal laws, and recognizing that the state courts are prepared to fully address the merits of these matters, we believe that the proper exercise of this discretion weighs in favor of abstention and dismissal of this federal case at the present time.  Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004); Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002).

### 5.  The Judges and Judicial Staff  Named in this Lawsuit Are Entitled to Immunity

Further, in its current form, the *pro se* complaint fails to state a claim against the numerous state judges, and courthouse staff named as defendants in this action. Liberally construed, this *pro se* complaint seeks to hold a host of state court judges personally liable for alleged civil rights violations arising out of the performance of

20

judicial acts in prior lawsuits and criminal cases. To the extent that Aly seeks in this complaint to hold any judge personally liable for civil rights violations, based upon an alleged failure to act favorably in ruling upon a prior lawsuits, it is well-settled that such officials are individually cloaked with immunity from liability. The United States Supreme Court has long recognized that those officials performing judicial, quasi-judicial, and prosecutorial functions in our adversarial system must be entitled to some measure of protection from personal liability for acts taken in their official capacities. In order to provide this degree of protection from liability for judicial officials, the courts have held that judges, Mireless v. Waco, 502 U.S. 9, 13 (1991); prosecutors, Imbler v. Pachtman, 424 U.S. 409, 427 (1976); and those who perform adjudicative functions, Imbler, 424 U.S. at 423 n. 20  (grand jurors); Harper v. Jeffries, 808 F.2d 281, 284 (3d. Cir. 1986)(parole board adjudicators); are entitled to immunity from personal liability for actions they take in our adversarial system of justice.

These longstanding common law immunities apply here and prevent Aly from maintaining this civil action against any state judges named in this complaint since these judges are entitled to judicial immunity for their actions in these state and federal proceedings and are absolutely immune from personal liability for any judicial acts, including presiding over a criminal case or sentencing a defendant. See, e.g.,

Arsad v. Means, 365 F.App'x 327 (3d Cir. 2010);  Figueroa v. Blackburn, 208 F.3d

435 (3d Cir. 2000).  As we have explained when rejecting a similar efforts to impose

personal civil rights liability on a judge, this immunity is both broad and absolute:

> "It is a well-settled principle of law that judges are generally 'immune
> from a suit for money damages.' " Figueroa v. Blackburn, 208 F.3d 435,
> 440 (3d Cir.2000) (quoting Mireles v. Waco, 502 U.S. 9, 9, 112 S.Ct.
> 286, 116 L.Ed.2d 9 (1991) (per curiam), and citing Randall v. Brigham,
> 74 U.S. (7 Wall.) 523, 536, 19 L.Ed. 285 (1868)).  "The doctrine of
> judicial immunity is founded upon the premise that a judge, in
> performing his or her judicial duties, should be free to act upon his or
> her convictions without threat of suit for damages."  Id. (citations
> omitted).  Therefore, "[a] judge is absolutely immune from liability for
> his [or her] judicial acts even if his [or her] exercise of authority is
> flawed by the commission of grave procedural errors," Stump v.
> Sparkman, 435 U.S. 349, 359, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978),
> and "[j]udicial immunity cannot be overcome by allegations of bad faith
> or malice" Goldhaber v. Higgins, 576 F.Supp.2d 694, 703
> (W.D.Pa.2007).  Such immunity can be overcome only where a judge's
> acts are nonjudicial in nature, or where such actions, while judicial in
> nature, are "taken in the complete absence of all jurisdiction." Mireles,
> 502 U.S. at 12.

Catanzaro v. Collins, CIV. A. 09-922, 2010 WL 1754765 (M.D. Pa. Apr. 27, 2010),

aff'd, 447 F. App'x 397 (3d Cir. 2011); Kwasnik v. Leblon, 228 F. App'x 238, 243

(3d Cir. 2007) ("A judicial officer in the performance of his or her duties has absolute

immunity from suit.  Mireles v. Waco, 502 U.S. 9, 12, 112 S.Ct. 286, 116 L.Ed.2d 9

(1991).  "A judge will not be deprived of immunity because the action he took was

in error, was done maliciously, or was in excess of his authority; rather, he will be

subject to liability only when he has acted in the 'clear absence of all jurisdiction.' "

Stump v. Sparkman, 435 U.S. 349, 356-57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) ).

Therefore, these judges should be dismissed as defendants.

### 7.    The Queen of England and Government of Canada Also Appear to Be Immune from Civil Liability in Federal Court

Likewise, it appears that the Queen of England and the Government of Canada

may be immune from civil liability in federal court Pursuant to the Foreign State

Immunity Act, 28 U.S.C. §§1602-1608.  Indeed, we note that federal courts have in

the past dismissed claims brought against reigning monarchs like the Queen on

immunity grounds.  See Leutwyler v. Office of Her Majesty Queen Rania Al-

Abdullah, 184 F. Supp. 2d 277, 280 (S.D.N.Y. 2001).  Therefore, these defendants

are also entitled to be dismissed from this action.

### 8.    Venue Does Not Lie in This District

Further, in this case it is apparent from the face of the complaint that venue

does not lie here over the defendants named in the complaint, whatever the nature of

that complaint might be.  28 U.S.C. § 1391(b) defines the proper venue for a lawsuit

and provides that an action should:

> be brought only in (1) a judicial district where any defendant resides, if
> all defendants reside in the same State, (2) a judicial district in which a

23

substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

In this case, it is impossible to determine where "a substantial part of the events or omissions giving rise to the claim occurred" since the complaint does not recite any intelligible factual narrative but it appears that many of the events alluded to in this pleading took place in Montgomery County Pennsylvania, within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania.  Further, it appears that none of the named defendants reside in, or may be found in, the Middle District of Pennsylvania.  Therefore, it is evident from the plaintiff's complaint that venue over much of what is alleged here simply does not lie in this Court.

While an objection to venue may be waived by a defendant, this Court is permitted *sua sponte* to raise the issue of an apparent lack of venue, provided the Court gives the plaintiff notice of its concerns and an opportunity to be heard on the issue.  See e.g., Stjernholm v. Peterson, 83 F.3d 347, 349 (10th Cir. 1996)(" a district court may raise on its own motion an issue of defective venue or lack of personal jurisdiction; but the court may not dismiss without first giving the parties an

opportunity to present their views on the issue."); <u>Costlow v. Weeks</u>, 790 F.2d 1486, 1488 (9th Cir. 1986). By this Report and Recommendation we are providing the plaintiff this notice in the instant case.

When it appears that a case has been brought in the wrong venue, the Court may dismiss the action for lack of venue pursuant to 28 U.S.C. §1406, and Rule 12(b)(3) of the Federal Rules of Civil Procedure. In this case, given the other manifest flaws in his pleadings, it is submitted that dismissal of this *pro se* complaint is the appropriate course to follow. Of course, nothing about this dismissal in this Court would prevent Aly from later endeavoring to assert these amorphous claims against in a more appropriate venue if he chose to do so.

While civil rights *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, <u>see</u> <u>Fletcher-Hardee Corp. v. Pote  Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007), dismissal with leave to amend is not necessary when granting further leave to amend would be futile or result in undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). Here, taken together, the structural flaws in this complaint are beyond any form of repair. Therefore, granting leave to amend would, in our view, be futile. Accordingly, this complaint should be dismissed without any further leave to amend.

### III.   Recommendation

Accordingly, for the foregoing reasons, the plaintiff is GRANTED leave to proceed *in forma pauperis*, (Doc. 2.), and IT IS RECOMMENDED that the plaintiff's complaint be dismissed with prejudice.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 19th day of February, 2016.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge